1

**GREENBERG TRAURIG, LLP**
2   Valerie W. Ho (SBN 200505) (hov@gtlaw.com)
   Michael S. Lawrence (SBN 255897) (lawrencem@gtlaw.com)
3   Robert S. Freund (SBN 287566) (freundr@gtlaw.com)
   1840 Century Park East, Suite 1900
4   Los Angeles, California 90067
   Telephone: (310) 586-7700
5   Facsimile: (310) 586-7800

6
   Attorneys for Plaintiff
7   Tech-4-Kids, Inc.

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                         **WESTERN DIVISION**

11

12   TECH-4-KIDS, INC.,                    CASE NO. 2:12-CV-06769-PA-AJW

13                    Plaintiff,            **[REDACTED] SEPARATE
                                           STATEMENT OF UNDISPUTED
14   vs.                                   FACTS AND CONCLUSIONS OF
                                           LAW IN SUPPORT OF PLAINTIFF
15   SPORT DIMENSION, INC.,                TECH-4-KIDS, INC.'S MOTION
                                           FOR PARTIAL SUMMARY
16                    Defendant.           JUDGMENT

17

18
   _____
19   SPORT DIMENSION, INC.,              **Judge: Hon. Percy Anderson
                                           Magistrate: Hon. Andrew J. Wistrich**
20                    Counterclaimant,

21   vs.

22   TECH-4-KIDS, INC.,

23                    Counterdefendant.

24

25

26

27

28

[REDACTED] Separate Statement of Undisputed Facts and Conclusions of Law in Support of Tech-4-Kids, Inc.'s Partial Motion for Summary Judgment

LA 130872422v1

Plaintiff and Counterdefendant Tech-4-Kids, Inc. ("Tech-4-Kids") hereby submits this Separate Statement of Undisputed Facts and Conclusions of Law in Support of its Motion for Partial Summary Judgment pursuant to this Court's Order dated Nov. 27, 2012 [Dkt. No. 50] and applicable Local Rule 56-1.  Any of the following statements of fact which are deemed to constitute conclusions of law are hereby adopted as conclusions of law; any of the following conclusions of law which are deemed to constitute statements of fact are hereby adopted as statements of fact.

## I.   STATEMENT OF UNDISPUTED FACTS

### A.   Background

| Statement of Undisputed Fact | Supporting Evidence |
| --- | --- |
| 1.  Tech-4-Kids' snow bikes, also referred to as the Snow Moto, were the first of their kind in that they are sleds featuring three small skis on the bottom and are designed and modeled after full-sized motorized snowmobiles. | Declaration of Brad Pedersen ("Pedersen Decl.") ¶ 2. |
| 2.  The Snow Moto has an adjustable seat, protective handle bars, a primarily decorative nose piece, suspension, braking system and licensed graphics. | Pedersen Decl. ¶ 3. |
| 3.  The Snow Moto is licensed under three brands: Ski-Doo, Polaris, and X-Games, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Lawrence Decl. Ex. X (T4KP001305-06); Pedersen Decl. ¶ 4. |

1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| ███████████████ | |
| 4.   The Snow Moto was a highly successful product for Tech-4-Kids, which was a small company when the product first launched in 2007. At that time, Tech-4-Kids had only a few employees and generated a small amount of revenue. | Pedersen Decl. ¶ 4, 5. |
| 5.   ████████████████████ | Lawrence Decl. Ex. A (Pedersen Tr. 52:18-25, 53:1-7); Ex. B (Weenink Tr.137:16-25; 138:1-4); Ex. C (Smick Tr. 112:7-25); |
| 6.   The following year, in 2010, ████ originally purchased ████ Snow Moto units. Because it was on pace to sell out of its Snow Moto inventory, ██████ subsequently ordered approximately ████ more Snow Moto units that same season. | Pedersen Decl. ¶ 7. |
| 7.   Early point-of-sales statistics in 2010 indicated that ██████ would sell out of the Snow Moto even before reaching the peak sales period in December. | Lawrence Decl. Ex. B (Weenink Tr. 154:5-12). |
| 8.   In order to meet demand, ████ ████ ordered additional units at the last minute, purchasing a total of | Lawrence Decl. Ex. B (Weenink Tr. 154:1-12). |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| approximately ███ units of the Polaris model in 2010. | |
| 9. ████████ | Lawrence Decl. Ex. D (Lin Tr.55:24-25). |
| 10. ████████ | Lawrence Decl. Ex. E (Rios Tr. 22:5-7). |
| 11. ████████ | Lawrence Decl. Ex. D (Lin Tr. 64:14-22). |
| 12. ████████ | Lawrence Decl. Ex. E (Rios Tr. 39:9-23). |
| 13. ████████ | Lawrence Decl. Ex. E (Rios Tr. 215:7-12); Lawrence Decl. Ex. F (Rios Ex. 51). |
| 14. ████████ | Lawrence Decl. Ex. E (Rios Tr. 215:7-12); Lawrence Decl. Ex. F (Rios Ex. 51). |
| 15. By 2009, Tech-4-Kids had already experienced substantial success in | Pedersen Decl. ¶ 6. |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| selling its snow bike products in ███████, due in part to its existing relationship ████████████ ████████████████ Tech-4-Kids also successfully sold its snow bikes to ████████████ ██████ | |
| 16.  When discussions began, Pedersen explained to Rios that Tech-4-Kids would only enter into a distribution agreement that exposed it to new U.S. retailers as opposed to retailers with whom Tech-4-Kids had a preexisting relationship. | Lawrence Decl. Ex. G (SDI 001240). |
| 17.  A two-week email dialogue ensued, with the subject line "USA Distribution." | Lawrence Decl. Ex. G (SDI 001240-47). |
| 18.  In his initial March 3, 2009 email, Rios stated to Pedersen that Sport Dimension "would hope that we could come to some agreement so that we could make sales calls this year before all commitments have been made." | Lawrence Decl. Ex. G (SDI 001247). |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| 19.  In a subsequent March 4, 2009 email in the same chain, Rios stated to Pedersen that Sport Dimension "would like to offer all three of [Tech-4-Kids' snow bike] brands as it makes sense for your existing distribution and where it would make sense to us if we had to offer an exclusive." Rios also stated that Sport Dimension "would like to get started as soon as [it] can." | Lawrence Decl. Ex. G (SDI001246). |
| 20.  In the same email, Rios stated that "I look forward to us being able to speak tomorrow and hopefully put an agreement together." Rios also stated "We reviewed the cost sheet that you sent us and worked from Retail to a Cost or back to see if we could put some sort of deal in place or arrangement." | Lawrence Decl. Ex. G (SDI 001244). |
| 21.  In a subsequent March 10, 2009 email, Rios again stated "I hope that we can put a deal together." | Lawrence Decl. Ex. G (SDI 001242). |
| 22.  In a March 9, 2009 email, Pedersen rejected Rios's previous proposal of ▮▮▮ per unit and counter-proposed ▮▮▮ for the X-Games Snow | Lawrence Decl. Ex. G (SDI 001243). |

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| Moto and ███ for the Ski-Doo and Polaris brands. | |
| 23.  On March 10, Rios accepted these prices. | Lawrence Decl. Ex. G (SDI 001243). |
| 24.  However, in light of Rios's refusal to ███, Pedersen proposed increased pricing of ███ for the X-Games brand and ███ for the Ski-Doo and Polaris models. | Lawrence Decl. Ex. G (SDI 001241). |
| 25.  Rios accepted the new pricing on March 17, 2009. | Lawrence Decl. Ex. G (SDI 001240). |
| 26.  In response to Pedersen's expressed intention to exclude from the distribution deal any U.S. retailers with whom Tech-4-Kids already had a relationship, in his March 9 email, Pedersen identified as "off limits" to Sport Dimension the following retailers: ███ | Lawrence Decl. Ex. G (SDI 001243). |
| 27.  On March 10, Rios confirmed this list of off limit accounts with the single variation ███ | Lawrence Decl. Ex. G (SDI 001242). |

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| ██████████ | |
| 28. Later that same day, Pedersen corrected Rios ████████████ ██████████ | Lawrence Decl. Ex. G (SDI 001242). |
| 29. Pedersen stated that "your list of accounts is correct except as it stands now we will also handle ██████████████ | Lawrence Decl. Ex. G (SDI 001241). |
| 30. In his March 9 email, Pedersen asked for a minimum purchase commitment of ███ Snow Moto units. On March 10, Rios rejected the minimum purchase request but committed to "try and sell as much as we can." | Lawrence Decl. Ex. G (SDI 001243). |
| 31. Multi-year distribution relationships are standard in the industry. | Lawrence Decl. Ex. C (Smick Tr. 19:1-21:23); Pedersen Decl. ¶ 8. |
| 32. Manufacturers and wholesalers generally schedule their product pitches to retailers in December through March (sometimes going into May) for the next snow season. Winter products are typically shipped to retailers around August and the merchandise is generally shelved in September for the upcoming winter season. | Pedersen Decl. ¶ 9. |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| 33. Pedersen also offered to make marketing information available to assist Sport Dimension in its distribution efforts.  Rios responded to the marketing information offer on March 10, stating: "Thanks and appreciated, any support to help us become experts in your category of products would be appreciated. In closing, we see this as a great opportunity to help get more exposure for your product in the market." | Lawrence Decl. Ex. G (SDI 001244). |
| 34. Following a request by Rios for samples of the various Snow Moto models, on March 17, 2009 Rios wrote: "Brad, We are good to go. We accept your new higher prices listed below ██████ ████████ | Lawrence Decl. Ex. G (SDI 001240). |
| 35. In the same March 17, 2009 email, Rios stated "I will update [sic] you as we progress." | Lawrence Decl. Ex. G (SDI 001240). |
| 36. Pedersen responded to that March 17, 2009 email from Rios stating that he was "[g]lad to move forward." | Lawrence Decl. Ex. G (SDI 001240). |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| 37. The pricing that the parties ultimately agreed upon is, to date, the lowest special wholesale pricing that Tech-4-Kids has offered to any distributor or retailer for the Snow Moto product. | Pedersen Decl. ¶ 10. |
| 38. On March 27, 2009, Sport Dimension prepared a ███ quote sheet with the pricing for the Ski-Doo brand Snow Moto. | Lawrence Decl. Ex. N (SDI 015731). |
| 39. Todd Richards, Vice President of Sales for Sport Dimension, testified ████████████████ | Lawrence Decl. Ex. I (Richards Tr. 108:21-109:17); Lawrence Decl. Ex. J (Sport Dimension's response to Tech-4-Kids' Interrogatory No. 17.) |
| 40. On April 2, 2009, Rios sent an email with a price quote ████ ████████ | Lawrence Decl. Ex. K (SDI 015723). |
| 41. In that email, Rios wrote: "Please see the quote sheet for the Ski-Doo snow bike . . . As a vendor we are always being tasked with bringing ████ new exciting items, this is one of those." Rios also proposed that ████ sell the product in | Lawrence Decl. Ex. K (SDI 015724). |

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| its ███████████ | |
| 42.  When Rios told Pedersen in July 2009 that the ██████ sale had not gone through, he stated he hoped to "have better luck next year." | Lawrence Decl. Ex. H (T4KP000668); Lawrence Decl. Ex. E (Rios Tr. 269:20-25, 270:1-19). |
| 43.  In late March 2009, Tech-4-Kids' Director of Sales, Evert Weenink, learned that Todd Richards had approached ████████ one of the retailers on the "off limits" list and offered for sale one of Tech-4-Kids' Snow Motos. | Lawrence Decl. Ex. O (Richards Ex. 14) (T4KP000004-5). |
| 44.  In an email string dated March 26, 2009, Pedersen informed Rios that Richards had approached an "off limits" retailer and Rios apologized for the confusion stating that "it was clearly an error, we apologize and will clarify with the buyer that this is your business." | Lawrence Decl. Ex. O (Richards Ex. 14) (T4KP000004-5). |
| 45.  ████████████████████ | Lawrence Decl. Ex. I (Richards Tr. 104:12-21). |
| 46.  At Rios's instruction, Richards went | Lawrence Decl. Ex. I (Richards Tr. 106:12- |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| back to ███████ indicated that he could not offer the product and, instead, the product could be procured from Tech-4-Kids. | 24). |
| 47. Sport Dimension had hoped to earn a ██████████ profit margin on its sales. | Lawrence Decl. Ex. G (SDI 001246); Lawrence Decl. Ex I (Richards Tr. 142:13-17). |
| 48. | |
| 49. ███████████████ | Lawrence Decl. Ex. D (Lin Tr. 240:13-18). |
| 50. Pedersen offered to make marketing information available to assist Sport Dimension in its distribution efforts. | Lawrence Decl. Ex. G (SDI 001244). |
| 51. Pedersen provided Rios and Sport Dimension with additional materials meant to help Sport Dimension and market and sell the Snow Motos. | Lawrence Decl. Ex. P (Pedersen Ex. 5) (SDI 007034-35); Lawrence Decl. Ex. Q (Pedersen Ex. 3) (SDI 001203-4); Lawrence Decl. Ex. R (SDI 001186-92). |
| 52. ███████████████ | Lawrence Decl. Ex. D (Lin Tr. 240:4-25). |

11

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| ■■■■■■■ | |
| 53. After it entered into the distribution agreement with Sport Dimension, Tech-4-Kids substantially reduced its efforts to sell the Snow Moto to U.S. retailers because it believed that Sport Dimension was pursuing those opportunities. | Pedersen Decl. ¶ 11. |
| 54. During 2009 and 2010, Tech-4-Kids only quoted pricing for the Snow Moto to two additional U.S. retailers. | Pedersen Decl. ¶ 12. |
| 55. ■■■■■■■ | Lawrence Decl. Ex. C (Smick Tr. 163:5-164: 16). |
| 56. ■■■■■■■ | Lawrence Decl. Ex. C (Smick Tr. 163:5-164: 16). |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| ███████████████ | |
| 57. On April 15, 2009, Pedersen emailed Rios with licensing information from X-Games and stated: "Could be interesting for sharing with your ███ buyer. I know you are looking at Ski Doo but we could do a different version for ███ of Xgames." | Lawrence Decl. Ex. M (T4KP000615). |
| 58. On May 5, 2009, Pedersen wrote to Rios: "We are gearing up for production and I wanted to check in with you on the status of the program for year. Let me know how you are making out and when you intend to start placing orders for ship dates." Rios responded by indicating that Sport Dimension had some success in selling the Ski-Doo ████████ | Lawrence Decl. Ex. M (T4KP000614). |
| 59. On May 6, 2009, Pedersen asked Rios: "How are you making out at the other [accounts]?" Rios responded that "Price has been an issue" but asked Richards to provide a more complete update. Richards | Lawrence Decl. Ex. M (T4KP000615); Lawrence Decl. Ex. I (Richards Tr. 121:25, 127:1-7). |

13

| | Statement of Undisputed Fact | Supporting Evidence |
|---|---|---|
| | responded on May 8 by telling Pedersen that he had done "presentations" with "several" accounts who "all noted the same thing. There is not enough margin in the item and $██ is definitely the ceiling retail place. Most buyers commented that they liked the item." | |
| 60. | On July 10, 2009, Pedersen asked Rios about the status of the Sam's Club Test. Rios responded: "Sorry for the lack of communication, the response time from ██ club has been very slow as well. They only confirmed last week that they will not be going forward with a test of the snow bike." | Lawrence Decl. Ex. H (Richards Ex. 16) (T4KP00667-68). |
| 61. | ████████████████ | Lawrence Decl. Ex. I (Richards Tr. 119:9-11, 15-16). |
| 62. | ████████████████ | Lawrence Decl. Ex. I (Richards Tr. 111:2-25, 113:18-24, 114:218). |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| ███████████████████ | |
| 63. ███████████████ | Lawrence Decl. Ex. I (Richards Tr. 137:25, 138:8). |
| 64. When Sport Dimension was selling its own competing product to retailers, it provided the retailers with detailed presentation materials. | Lawrence Decl. Ex. Y (SDI 006996-7003). |
| 65. Rios offered the Snow Moto to only a single customer, ███████, and priced the product at ███. | Lawrence Decl. Ex. L (Rios Ex. 50) (SDI 015731-33). |
| 66. ███████████████ | Lawrence Decl. Ex. I (Richards Tr. 188:10-19). |
| 67. When Pedersen asked Rios for an update on sales, Rios stated that the retailers to whom Sport Dimension | Pedersen decl.; Lawrence Decl. Ex. M (T4KP000613). |

LA 130872422v1

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| offered the product liked the product but felt "price was an issue." | |
| 68. In the end, Sport Dimension failed to sell a single Snow Moto to any of Sport Dimension's customers. | Pedersen Decl. ¶ 13. |
| 69. When Sport Dimension attempted to sell its own Yamaha product to ▮▮▮▮, it offered the snow bike for the substantially lower price of ▮▮▮ | Lawrence Decl. Ex. V (SDI 013449). |
| 70. At no time from March 2009 to December 2009 did Rios or anyone at Sport Dimension disclose to Tech-4-Kids that Sport Dimension was contemplating developing a competing product. | Pedersen Decl. ¶ 14. |
| 71. Had Tech-4-Kids known of Sport Dimension's duplicity, it never would have allowed Sport Dimension to pass itself off as Tech-4-Kids' distributor, much less provide it with confidential and commercially sensitive information. | Pedersen Decl. ¶ 15. |
| 72. In January 2010, less than nine months after the parties entered into the distribution agreement and only | Lawrence Decl. Ex. S (Rios Ex. 37) (SDI 001132). |

16

| Statement of Undisputed Fact | Supporting Evidence |
|---|---|
| five months after Rios told Pedersen that not a single retailer in the United States was interested in Tech-4-Kids' snow bikes, Sport Dimension had completed 90% of its development of a competing snow bike. | |
| 73.  In early 2010, Sport Dimension shipped samples to ████████, but because it was unable to brand the product in time, it did not successfully sell the Yamaha snow bike to ████████ until the 2011 season. | Lawrence Decl. Ex. S (Rios Ex. 37) (SDI 001132 – 35); Lawrence Decl. Ex. AA (SDI 001008). |
| 74.  Once it had a branded product for ████████ stopped buying from Tech-4-Kids. | Pedersen Decl. ¶ 17. |
| 75.  In his March 9, 2009 email, Pedersen offered terms to Rios under specific headings ████████ | Lawrence Decl. Ex. A (Pedersen Tr. 150:15-23); Lawrence Decl. Ex. G (SDI 001243). |
| 76.  ████████ | Lawrence Decl. Ex. I (Richards Tr. 212:12-18). |

LA 130872422v1

| | Statement of Undisputed Fact | Supporting Evidence |
|---|---|---|
| 77. | ███████████████ | Lawrence Decl. Ex. E (Rios Tr. 39:11-13). |
| 78. | Rios tried to sell Sport Dimension's competing snow bike product to ████████ | Lawrence Decl. Ex. T (Rios Ex. 45) (SDI 015735 – 43). |
| 79. | Sport Dimension began pursuing Yamaha for a license in February 2010. | Lawrence Decl. Ex. Z (SDI 001079-80); Lawrence Decl. Ex. AA (SDI 001008-09); Lawrence Decl. Ex. BB (SDI 001012-13). |
| 80. | Tech-4-Kids lost U.S. sales opportunities in 2009 and 2010 because it relied on Sport Dimension to make those sales. | Pedersen Decl. at ¶ 16. |
| 81. | Tech-4-Kids lost the ██████ business because ██████ was selling Sport Dimension's Yamaha snow bike instead. | Pedersen Decl. at ¶ 17. |
| 82. | As a result of Sport Dimension's conduct, Tech-4-Kids sustained damage, including in the form of lost sales to U.S. retailers in 2009 and 2010 and lost sales to ██████ | Pedersen Decl. at ¶ 18. |

LA 130872422v1

## II.   **CONCLUSIONS OF LAW**

1.     On summary judgment, a court can decide whether a contract exists as a matter of law if there are no genuine issues of material fact. *See Warehousemen's Union Local No. 206 v. Continental Can Co.*, 821 F.2d 1348, 1350 (9th Cir. 1987) (finding existence of contract on summary judgment); *Safadi v. Citibank, N.A.*, No. 12–1356 PSG, 2012 WL 47147875, at *2 (N.D. Cal. Oct. 2, 2012) (finding as a matter of law that parties entered into a binding arbitration agreement).

2.     When a contract is not ambiguous, summary judgment may be entered based on the court's interpretation of clear and unambiguous provisions which present only questions of law." *Travelers Cas. And Sur. Co. v. American Intern. Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1012 (S.D. Cal. 2006).

3.     In a contract dispute, summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *CEC Entertainment, Inc. v. Kobra Properties*, No. 2:06-CV-00639-JAM-EFB, 2008 WL 4779567 at *2 (E.D. Cal. Oct. 27, 2008) (interpreting contract and its remedies on summary judgment as a matter of law); *U.S. v. Dahan*, 369 F. Supp. 2d 1187, 1193 (C.D. Cal. 2005) ("Since the Court has determined that the language of the contract is clear and unambiguous, interpretation of the contract is a question of law.").

4.     "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *See* Cal. Comm. Code § 2204(1).

5.     There is no dispute of material fact that the March 2009 email exchange between Kurt Rios and Brad Pedersen was a writing sufficient to show the material terms of an agreement as a matter of law. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115, 1129 (E.D. Cal. 2006) judgment entered, CVF050101AWILJO, 2007 WL 333386 (E.D. Cal. Jan. 31, 2007) (quoting *Westoil Terminals Co. v. Industrial Indemnity Co.*, 110 Cal. App. 4th 139, 145-146 (2003)) ("[t]he fundamental goal of

19

contractual interpretation is to give effect to the mutual intention of the parties. Such intent is to be inferred, if possible, solely from the written provisions of the contract. If contractual language is clear and explicit, it governs.").

6.      While in email form, the terms of the written agreement between Rios and Pedersen are unambiguous on their face and the Court can therefore determine them as a matter of law. *See United Brotherhood of Carpenters and Joiners of America, Lathers Local 42-L v. United Brotherhood of Carpenters and Joiners of America,* 73 F.3d 958, 961 (9th Cir. 1996) (upholding granting Plaintiff's summary judgment claim as to breach of contract because contract terms are unambiguous despite parties' disagreement as to meaning); *Waterbury v. T.G. & Y. Stores Co.,* 820 F.2d 1479, 1481 (9th Cir. 1987) (upholding summary judgment regarding breach of contract where language "specific and unambiguous.").

7.      The terms of the distribution agreement include:  (a) Sport Dimension would sell as many of Tech-4-Kids' Snow Motos as it could in the United States; (b) Tech-4-Kids would extend special wholesale pricing to Sport Dimension of $33.50 for the X-Games Snow Moto and $35.50 for the Ski-Doo and Polaris Snow Motos; (c) Tech-4-Kids would provide marketing assistance and materials to Sport Dimension; (d) Sport Dimension could offer the products to any retailers other than ██████████████ ████████████████████████; and (e) the distribution arrangement would be a multi-year deal. *See* Cal. Comm. Code § 2202(a) (final writing may be explained by "usage of trade").

8.      The above deal terms reflect a bargain for the exchange of adequate consideration needed to form an agreement. *Gallagher v. Holt,* 2:08-CV-03071 JFM C, 2012 WL 3205175 (E.D. Cal. Aug. 3, 2012) (the "price agreed to be paid" is either a benefit conferred on the defendants or a prejudice suffered by the plaintiffs).

9.      The parties' subsequent conduct further demonstrates the lack of a disputed issue regarding the existence of a distribution agreement. *See also Investment Service Co. v. Roper,* 588 F.2d 764, 767 (9th Cir. 1978) (reversing district court decision for

20

failure to determine whether implied contract formed through parties' conduct); *Hua v. MEMC Electronic Materials, Inc.*, No. C 09-555 JF (RS), 2009 WL 1363545 (N.D. Cal. May 14, 2009) (determining contract formed on summary judgment by conduct where letter indicated manufacturing of goods would begin); *Apex LLC v. Sharing World, Inc.*, 206 Cal. App. 4th 999, 1011 (2012) (reversing trial court's determination of lack of mutual assent because "parties engaged in conduct recognizing the existence of the contracts" including shipping of goods).

10.    There is no dispute of material fact that Tech-4-Kids performed or was willing and able to perform the distribution agreement. *See Seaman v. Pyramid Technologies, Inc.*, SACV 10-00070 DOC, 2011 WL 5508971 (C.D. Cal. Nov. 7, 2011) (quoting *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745, 108 Cal.Rptr.2d 23 (2001)) (granting Plaintiff's motion for summary judgment of breach of contract claim when "Defendants have pointed to absolutely no factual support for their contentions opposing Plaintiff's Motion for Summary Judgment.").

11.    Sport Dimension breached the agreement by failing to make commercially reasonable efforts to sell Tech-4-Kids' products in 2009. *See Samica Enterprises, LLC v. Mail Boxes Etc. USA, Inc.*, 637 F. Supp. 2d 712, 717 (C.D. Cal. 2008) (citing *Celotex Corp.*, 477 U.S. at 325) (no disputed factual issue as to question of whether efforts were reasonable); *see also Hershey Foods Corp. v. Collegiate Marketing, Inc.*, Case No. 95 Civ. 10526(SAS), 1997 WL 772768, at *4 (S.D.N.Y. Dec. 15, 1997) (granting summary judgment in plaintiff's favor on finding that there  was no disputed issue of material fact that defendant breached contractual obligation to use "best efforts" to distribute products).

12.    Sport Dimension breached the agreement by failing to make any efforts to sell Tech-4-Kids' products after 2009. *See Seaman v. Pyramid Technologies, Inc.*, SACV 10-00070 DOC, 2011 WL 5508971 (C.D. Cal. Nov. 7, 2011) (quoting *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745, 108 Cal.Rptr.2d 23 (2001)) (granting Plaintiff's motion for summary judgment of breach of contract claim

21

when "Defendants have pointed to absolutely no factual support for their contentions opposing Plaintiff's Motion for Summary Judgment.").

13.     Sport Dimension breached the agreement by selling snow bike products to ███ *See Seaman v. Pyramid Technologies, Inc.*, SACV 10-00070 DOC, 2011 WL 5508971 (C.D. Cal. Nov. 7, 2011) (quoting *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745, 108 Cal.Rptr.2d 23 (2001)) (granting Plaintiff's motion for summary judgment of breach of contract claim when "Defendants have pointed to absolutely no factual support for their contentions opposing Plaintiff's Motion for Summary Judgment.").

14.     There is no dispute of material fact that Tech-4-Kids was damaged.  *See Seaman v. Pyramid Technologies, Inc.*, SACV 10-00070 DOC, 2011 WL 5508971 (C.D. Cal. Nov. 7, 2011) (quoting *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745, 108 Cal.Rptr.2d 23 (2001)) (granting Plaintiff's motion for summary judgment of breach of contract claim when "Defendants have pointed to absolutely no factual support for their contentions opposing Plaintiff's Motion for Summary Judgment.") Thus, liability can be established as a matter of law. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought.") (emphasis added); Fed. R. Civ. P. 56(g) (If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."); *Liang v. Cal-Bay Intern., Inc.*, No. 06cv1082–WMc, 2012 WL 1282984, at *1 (S.D. Cal. Apr. 13, 2012) (granting plaintiff summary judgment as to breach of contract and ordering subsequent calculation of damages); Schwarzer et al., Federal Civil Procedure Before Trial (Rutter 2013) §14:36, p. 14-13 ("These provisions make clear that summary judgment may be requested as to any *issue*.") (emphasis in original).

Dated: May 3, 2013

**GREENBERG TRAURIG, LLP**

By:   _/s/ Valerie W. Ho_
          Valerie W. Ho
          Michael S. Lawrence
          Robert S. Freund

Attorneys for Plaintiff and Counterdefendant
TECH-4-KIDS, INC.

23