1  YURI MIKULKA, SBN 185926
   (ymikulka@sycr.com)
2  SARAH S. BROOKS, SBN 266292
   (sbrooks@sycr.com)
3  **STRADLING YOCCA CARLSON & RAUTH**
   660 Newport Center Drive, Suite 1600
4  Newport Beach, CA  92660-6422
   Telephone:  (949) 725-4000
5  Facsimile:  (949) 725-4100

6  Attorneys for Defendant and
   Counter-Claimant
7  SPORT DIMENSION, INC. and KURT RIOS

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10                  **WESTERN DIVISION**

11  TECH-4-KIDS, INC.                  CASE NO.:  2:12-cv-06769-PA-AJW

12        Plaintiff,                   Honorable Percy Anderson

13        vs.                          **DEFENDANTS' NOTICE OF MOTION
                                        AND MOTION FOR SUMMARY**
14  SPORT DIMENSION, INC.,             **JUDGMENT**

15  KURT RIOS                          Hearing Date: June 3, 2013
                                        Time: 1:30 p.m.
16        Defendants.                  Courtroom: 15

17

18  SPORT DIMENSION, INC.,             **Initial Complaint Filed:**
                                        December 6, 2011
19        Counter-Claimant,
                                        **First Amended Complaint Filed:**
20        vs.                          August 17, 2012

21  TECH-4-KIDS, Inc.,                 **Second Amended Complaint Filed:**
                                        March 4, 2013
22        Counter-Defendant.

23                                     **Trial:**  August 6, 2013

24

25

26                      ███████████████

27

28

STRADLING YOCCA
CARLSON & RAUTH
   LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 3, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 15 of the above-entitled court, located at 312 North Spring Street, Los Angeles, CA 90012-4701, defendant Sport Dimension, Inc. ("Sport Dimension") will, and hereby does, move for summary judgment on all claims asserted in the Second Amended Complaint in this action.

The Motion is made pursuant to Fed. R. Civ. P. 56(a) because there is no genuine issue as to any material fact and Sport Dimension is entitled to summary judgment as a matter of law.

Sport Dimension's counsel contacted Plaintiff's counsel on April 22, 2013 pursuant to local rule 7-3 and on April 23, 2013, the parties discussed by telephone the substance of the present Motion and the potential for resolution. During that call, Plaintiff's counsel indicated that it would oppose this Motion.

This Motion is based upon this notice; the accompanying Memorandum of Points and Authorities served and filed herewith; the Statement of Uncontroverted Facts and Conclusions of Law; the declarations of Sarah S. Brooks and Jim Nelson; the [Proposed] Judgment; all pleadings, records, and files herein; such oral and documentary evidence as may be presented at the hearing of the Motion; and such matters which shall or may be judicially noticed.

Dated: May 6, 2013                    Respectfully submitted,

                                       STRADLING YOCCA CARLSON & RAUTH
                                       A Professional Corporation

                                       By: /s/ Sarah S. Brooks
                                            Yuri Mikulka
                                            Sarah S. Brooks
                                            Attorneys for Defendant and Counter-
                                            Claimant SPORT DIMENSION, INC.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-i-                                                            CV07-6811-JVS

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   PROCEDURAL HISTORY ......................................................................... 3

III.  SUMMARY OF RELEVANT FACTS........................................................ 4

    A.    The Parties are Known Competitors ................................................. 4

    B.    T4K did not invent the Snow Bike.................................................... 4

    C.    The 2009 Discussions Between the Parties Were To Explore A
         Potential Business Arrangement ........................................................ 5

         1.    The Parties Did Not Discuss or Finalize Material Terms........... 6

                a.   The Parties did not discuss duration or termination terms 6

                b.   The parties did not finalize what accounts were off limits 6

                c.   There parties did not agree on minimum quantity ........... 6

                d.   T4K's product was not market ready ............................... 6

                e.   Sport Dimension agreed to just one thing: purchasing
                    samples ................................................................... 7

         2.    The parties never memorialized the terms in writing................. 7

         3.    T4K did not identify any information as confidential or
            a trade secret ........................................................................ 7

    D.    Sport Dimension Determined And Notified T4K that customers
         were uninterested ............................................................................. 8

    E.    T4K assumed there was no agreement and sold directly in the
         U.S.................................................................................................. 8

    F.    Two Years After The Discussions Between The Parties, Sport
         Dimensions Introduces the Yamaha Snow Bike................................ 9

    G.    T4K filed this action to stop the competition..................................... 9

IV.   STANDARD OF REVIEW......................................................................... 10

V.    ARGUMENT............................................................................................. 11

    A.    T4K'S MISAPPROPRATION OF TRADE SECRET CLAIM
         MUST FAIL................................................................................... 11

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CV07-6811-JVS

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

1.   T4K's Alleged Trade Secret Was Either Publicly
Available Or Could Be Reasonably Calculated ...................... 11

2.   T4K Presents No Evidence That It Took Reasonable
Steps To Maintain The Secrecy ................................................ 13

3.   There is No Evidence That Sport Dimension Used Or
Disclosed The Trade Secret ..................................................... 14

B.   THE BREACH OF CONTRACT CLAIM MUST FAIL ................. 14

1.   The Contract Claim is Barred by the Statute of Frauds ........... 15

2.   There Is No Valid Contract Because The Parties
Intended the Contract To be Written and Signed ..................... 15

3.   There Was No Meeting of The Minds on Material
Terms ....................................................................................... 16

4.   T4K Did Not Provide Value Or Perform Under the
Alleged Contract ...................................................................... 17

5.   There is no evidence of breach ................................................ 18

C.   THE PROMISSORY ESTOPPEL CLAIM MUST FAIL .................. 18

D.   THE FRAUD CLAIMS MUST FAIL ................................................. 19

1.   There is no evidence of material misrepresentation,
knowledge of falsity or intent to defraud ................................ 20

2.   There Is No Evidence That T4K Relied on the Alleged
Statements ................................................................................ 22

E.   THE INTERFERENCE WITH PROSECTIVE ECONOMIC
ADVANTAGE CLAIM MUST FAIL ................................................. 22

1.   T4K Cannot Meet Its Burden of Proving Wrongful
Conduct .................................................................................... 23

2.   T4K cannot show reasonable expectation of prospective
economic advantage ................................................................ 23

F.   T4K FAILS TO PRESENT EVIDENCE OF CAUSATION OR
DAMAGE ........................................................................................... 24

VI.  CONCLUSION .............................................................................................. 25

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)............................................................................11

*Apablasa v. Merrit & Co.,*
    176 Cal. App. 2d 719 (1959) ...............................................................17

*AT&T Communs. of Cal., Inc. v. Pacific Bell,*
    2000 U.S. App. LEXIS 23215 (9th Cir. Cal. Sept. 8, 2000) ..............14

*Banner Entm't, Inc. v. Super. Ct.,*
    62 Cal. App. 4th 348 (1998).................................................................17

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture*
    *Partners*
    (1997) 52 Cal.App.4th 867 [60 Cal.Rptr.2d 830] ..............................25

*Bekele v. Ford,*
    2011 WL 4368566 (N.D. Cal. Sept. 17, 2011).....................................25

*Bustamante v. Intuit, Inc.,*
    141 Cal. App. 4th 199 (2006)...............................................................17

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..............................................................................11

*Cooper v. State Farm Mut. Auto. Ins. Co.,*
    177 Cal. App. 4th 876 (2009)...............................................................20

*CRST Van Expedited v. Werner Enter., Inc.*
    479 F.3d 1099 (9th Cir. 2007) .............................................................24

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Circ. 2001) .........................................................11

*Diediker v. Peelle Financial Corp.*
    (1997) 60 Cal. App. 4th 288, 297-298..................................................21

*Gabana Gulf Distrib., Ltd. v. Gap Int'l Sales, Inc.,*
    2008 U.S. Dist. LEXIS 1658 (N.D. Cal. Jan. 9, 2008).......................21

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CV07-6811-JVS

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

*Hills Transportation Co. v. Southwest Forest Industries, Inc.,*
   266 Cal. App. 2d 702 (1968) ........................................................................22

*Laks v. Coast Fed. Sav. & Loan Ass'n,*
   60 Cal. App. 3d 885 (1976) ..........................................................................20

*Lazar v. Super. Ct.,*
   12 Cal. 4th 631 (1996) ..................................................................................21

*Magpali v. Farmers Group, Inc.*
   (1996) 48 Cal. App. 4th 471, 481 ..................................................................21

*Magpali v. Farmers Group, Inc.,*
   48 Cal. App. 4th 471, 55 Cal. Rptr. 2d 225 (Cal. Ct. App. 1996).....................21

*Matsushita Electric Industry Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ......................................................................................11

*Nathanson v. Murphy*
   (1955) 132 Cal. App. 2d 363, 369-70 .............................................................21

*Nissan Fire & Marine Ins. Co. v. Firtz Cos.,*
   210 F.3d 1099 (9th Circ. 2000) .....................................................................11

*Reichert v. Gen. Ins. Co. of Am.,*
   68 Cal. 2d 822, 69 Cal. Rptr. 321, 442 P.2d 377 (1968).............................15, 18

*Roddenberry v. Roddenberry*
   (1996) 44 Cal. App. 4th 634, 665 ..................................................................21

*San Francisco Design Ctr. Assocs. v. Portman Cos.,*
   41 Cal. App. 4th 29 (1995) ...........................................................................22

*Serv. By Medallion v. Clorox Co.,*
   44 Cal. App. 4th 1807 (1996) ........................................................................22

*Steinberg Moorad & Dunn, Inc. v. Dunn,*
   136 Fed. Appx. 6 (9th Cir. Cal. 2005) ............................................................13

*Tarmann v. State Farm Mut. Auto. Ins. Co.,*
   2 Cal. App. 4th 153 (1991) ............................................................................22

*Thommeny v. Paramount Pictures Corp.,*
   No. CV 10-6951, 2011 U.S. Dist. LEXIS 80291 (C.D. Cal. July 13,
   2011) ..........................................................................................................16, 17

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iv-                                                     CV07-6811-JVS

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

*Venhaus v. Shultz*
    (2007) 155 Cal.App.4th 1072 .............................................................25

*Whyte v. Schlage Lock Co.,*
    101 Cal. App. 4th 1443 (2002) ..........................................................12

*Wilhelm v. Pray, Price, Williams & Russell,*
    186 Cal. App. 3d 1324 (1986) ...........................................................22

*Yourish v. California Amplifier,*
    191 F.3d 983 (9th Cir. 1999) .............................................................21

**STATUTES**

CA Civ. Code § 1709.......................................................................21

Cal. Civ. Code § 3426......................................................................12

Cal. Civ. Code § 3426.1...................................................................15

Cal Civil Code Section 1624 ...........................................................16

**OTHER AUTHORITIES**

1 Witkin, *Summ. Cal. Law, Contracts* § 245 (2010) ......................20

CACI §302 ................................................................................16, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CV07-6811-JVS

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case is about competition, pure and simple.  It has nothing to do with any cognizable claim, and instead is an attempt by Tech-4-Kids, Inc. ("Plaintiff" or "T4K") to improperly use the judicial system to try to stop its competitor, Defendant Sport Dimension, Inc. ("Defendant" or "Sport Dimension"), from offering a better and more competitively priced snow bike to customers.

The product at issue is a children's snow bike, a product that has been available for years, but which T4K is trying to claim as its own.  In 2011, when Costco U.S. selected Sport Dimension's snow bike over T4K's, T4K filed this action against Costco and Sport Dimension for patent infringement among other things.  Having now dropped the claims against Costco, and its frivolous patent infringement claims, T4K filed another amended complaint this year, asserting for the first time that the parties' brief discussions in 2009 indefinitely bound Sport Dimension to serve as T4K's distributor, and prevented it from competing.  Although T4K asserts numerous claims, T4K can identify no valid contract or obligation that would have restricted Sport Dimension from competing.

First, T4K claims Sport Dimension misappropriated its alleged trade secrets related to its snow bikes.  Yet, it is undisputed that this information about T4K's snow bike, which is widely available in Wal-Mart, Costco, and other large retailers, was either publicly available, reasonably calculated from publicly available information, or as T4K admits, disclosed to prospective customers and others without restriction.  T4K also concedes it did nothing to protect the information.  It did not ask a competitor that it claimed it did not trust to sign a non-disclosure agreement, or identify which information would constitute a trade secret.  Instead, it just assumed that Sport Dimension and others would keep the information secret.  T4K also cites no evidence that the information derived independent economic value or that it was improperly disclosed or used.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

Second, T4K's breach of contract claim and related claims of promissory estoppel and implied covenant of good faith and fair dealing must fail as a matter of law because they violate statue of frauds and/or there is no evidence of an agreement or promise.  In its second amended complaint, T4K conjured up a theory for the first time that brief discussions between the parties four years ago constituted a contract whereby Sport Dimension would distribute T4K snow bikes in the U.S.  It is undisputed, however, that key terms were never agreed upon or even discussed, no written agreement was exchanged or signed, and the parties spoke no further until the filing of this action several years later.  In fact, having not heard from Sport Dimension, T4K admits that it assumed Sport Dimension was not interested and pursued the U.S. accounts themselves within months of the discussion, which would have breached the distribution agreement had there been one.

Third, T4K's fraud claims are based on the alleged promise of future performance by Sport Dimension President Kurt Rios to market and sell T4K's snow bike to customers in the U.S.  Other than conclusory allegations, T4K however, failed to present any evidence that Sport Dimension and Mr. Rios lacked intent to perform at the time the statement was made.  To the contrary, the only evidence on this point confirms that Sport Dimension did subsequently make efforts to explore the market for T4K, but there was no interest.  T4K complains that these efforts were inadequate, but this has no bearing on Sport Dimension's intent at the time of the alleged representation.

Fourth, T4K's claim for interference with prospective business advantage has no merit because T4K can show no wrongful conduct, probability of future economic benefit, or disruption.  To the contrary, T4K acknowledges that Costco reviews its buying decisions every year and never promised it would buy its product for any subsequent snow season.  Moreover, T4K benefitted from Sport Dimension's preliminary efforts to test the market.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

1    For this reason, T4K cannot establish causation or damage for any of the
2    claims.  T4K sought Sport Dimension's help because as a Canadian company, it
3    admittedly was having difficulty gaining entry to the U.S. market.  After the talks
4    ended, T4K gained, not lost, significant sales in the U.S., including Costco U.S. as
5    a customer.  In fact, T4K experienced record sales worldwide and yet unreasonably
6    filed this action.

7    Despite three attempts to amend the complaint, T4K has been unable to
8    come up with claims with any merit.  The Court should grant the Motion to avoid
9    further waste of time and resources on untenable claims.

10   **II.    PROCEDURAL HISTORY**

11   On December 6, 2011, T4K filed its initial complaint in this action, in the
12   District of Maryland, asserting claims of patent infringement and misappropriation
13   of confidential business information against Sport Dimension and its customer
14   Costco.  (Separate Statement of Uncontroverted Facts ("SSF") ¶ 1.)

15   On August 17, 2012, T4K transferred this case to the Central District of
16   California and filed the First Amended Complaint ("FAC"), abandoning the
17   frivolous claim for patent infringement and claims against Costco, and asserted for
18   the first time common law claims of fraud and interference with prospective
19   economic advantage, as well as misappropriation of trade secrets.  (SSF ¶ 2.)

20   On March 4, 2013, more than a year after filing its initial complaint, T4K
21   filed the Second Amended Complaint ("SAC").  (SSF ¶ 3.)  Through the SAC,
22   T4K added four entirely new claims and added as defendant Kurt Rios, the
23   President of Sport Dimension.  (SSF ¶ 4.)  The SAC alleged for the first time that a
24   contract existed between the parties and that Sport Dimension breached that
25   contract.  (SSF ¶ 5.)  T4K also added related claims for breach of the implied
26   covenant of good faith and fair dealing, promissory estoppel and a second claim
27   for fraud.  (SSF ¶ 6.)

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 3 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

III.    **SUMMARY OF RELEVANT FACTS**[1]

    A.    **The Parties are Known Competitors**

       Sport Dimension has been in business for 16 years, and is located in Carson, California. (SSF ¶ 7.)  It sells and distributes well-known water-sports and snow-sports equipment and apparel in the United States and worldwide, including Body Glove™ wetsuits and apparel, Body Glove™ body boards, Body Glove personal floatation devices, Snow Slider, Yamaha™ Snow bike, and Sea-doo™ sea scooters..  (SSF ¶ 9.)  Sport Dimension's President is Kurt Rios.  (SSF ¶ 8.)

       Sport Dimension sells its products through retailers such as Costco USA, Sam's Club, The Sport Authority, and Dick Sporting's Goods.  (SSF ¶ 11.)  These relationships existed prior to Sport Dimension's discussions with T4K.  (SSF ¶ 12.)

       In 2002, long before its discussions with T4K, Sport Dimension launched its snow-related product line.  (SSF ¶ 10.)

       T4K is a Canadian company that has been in business for 5 years. (SSF ¶ 13.)  It designs, manufacturers, and sells toys and other products for children. (SSF 17.)   The President of T4K is Brad Pedersen.  (SSF ¶15.) T4K began selling snow related products in 2007-2008, after Sport Dimension – in 2002. (SSF ¶¶ 16, 30).

       T4K and Sport Dimension are competitors in the snow related products. (SSF ¶ 29.)

    B.    **T4K did not invent the Snow Bike**

       The product at issue is a snow bike product for children, which are similar to snow sleds but have three skis.  (SSF ¶ 18.)

       In 2007 or 2008, T4K began selling snow bikes.  (SSF ¶ 30.)  T4K sells at least three different versions of its snow bike – the X-Games, Ski-doo and Polaris.

---

[1] This section provides background facts, some of which are material to the motion and the remainder of which are provided for information and context.  Citations to the evidence supporting the only material facts are set forth in the separately filed Separate Statement of Uncontroverted Facts and Conclusions of Law.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1   (SSF ¶ 33.)  Both the X-Games and Ski-doo snow bikes were on sale in 2007 or

2   2008 prior to discussions with Sport Dimension.  (SSF ¶34.)

3          In 2011, Sport Dimension began selling a snow bike ("the Yamaha Snow

4   Bike") that was designed in cooperation with, and licensed from, Yamaha

5   Corporation to replicate the popular Yamaha snow mobile.  ("the Yamaha Snow

6   Bike").  (SSF ¶ 94.)  For this reason, the Yamaha Snow Bike was intentionally

7   designed to look different than T4K's snow bikes.  (SSF ¶ 19.)  The Yamaha Snow

8   Bike is covered by U.S. Patent No. D662010 (SSF ¶ 20.)

9   **C.     The 2009 Discussions Between the Parties Were To Explore A**

10  **         Potential Business Arrangement**

11         During March to July 2009, the parties explored the possibility of entering

12  into a distributing agreement.  (SSF ¶35.)  Most of these conversations took place

13  by email and some by phone.  (SSF ¶ 21.)  The parties however do not recall what

14  contract terms were proposed on the phone, if at all, and hence the emails control.

15  (SSF ¶ 21.)  The emails between the parties reflect the following:

16         In March 2009, Mr. Rios and T4K's President, Brad Pedersen, began

17  discussing the possibility of the companies working together to sell T4K's snow

18  bike in the United States ("U.S.")  (SSF ¶ 35.)  Mr. Rios proposed several different

19  ways the companies may work together, including distributing T4K's product in

20  the U.S., or obtaining a sub-license or buying directly from T4K at a pre-

21  determined price. (SSF ¶ 36.)  Mr. Pedersen stated that ███████████████

22  ██████████████████████████████████████████████

23  ██████████     (SSF ¶37.)  The parties, however, never finalized their discussion

24  on material terms, or memorialize the terms in writing. (SSF ¶¶ 77-79; 110.)

25  //

26  //

27  //

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1            **1.**     **The Parties Did Not Discuss or Finalize Material Terms**

2                   **a.**     **The Parties did not discuss duration or termination**

3                         **terms**

4       The emails reflect that, and T4K concedes, that the parties never discussed

5 material terms such as duration of the contract or how the contract would be

6 terminated.  (SSF ¶¶ 77-79; 110.)

7                   **b.**     **The parties did not finalize what accounts were off**

8                         **limits**

9       In a March 9 email, Mr. Pedersen stated that certain accounts would be "off

10 limits" under the arrangement, but never clarified whether Costco US was off

11 limits. (SSF ¶ 46.) On March 26, 2009 Mr. Rios asked for clarification on Costco

12 US. (SSF ¶ 57.)  Mr. Pedersen responded that "in regards to Costco I will revert

13 back."  (SSF ¶ 58.)  Mr. Rios replied and asked that he advise as soon as he could

14 about Costco USA.  (SSF ¶59.)  Mr. Pedersen never clarified whether Costco US

15 was "off limits."

16                   **c.**     **There parties did not agree on minimum quantity**

17       On March 9, 2009, Mr. Pedersen states ███████████████████

18 ████████████████████████████████████████████(SSF

19 ¶45).  Mr. Rios did not agree and stated "we will try and sell as many as we can."

20 (SSF ¶48.)  Mr. Pederson nonetheless expected ███████████████████

21 ████████████ (SSF ¶79.)

22                   **d.**     **T4K's product was not market ready**

23       On March 31, 2009 Mr. Rios asked whether the T4K snow bikes are CPSIA

24 approved.  (SSF ¶64.)  Consumer Product Safety Improvement Act ("CPSIA")

25 testing and compliance is a requirement in the U.S. for the protection of children.

26 (SSF ¶65.)  Sport Dimension could not sell the product in the U.S. market without

27 confirmation of that the product was CPSIA approved nor would have entered into

28 an agreement without such confirmation. (SSF ¶ 66.)  Mr. Pedersen responded that

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

1  the snow bike was not CPSIA approved and would not be until the following year.

2  (SSF ¶ 67.)

3            e.       **Sport Dimension agreed to just one thing: purchasing**

4                     **samples**

5        On March 16, 2009, in order to evaluate the product, Mr. Rios asks for

6  samples of the snow bikes and asked what are the differences between the models,

7  and discussed sample pricing. (SSF ¶ 53.)  The following day, Mr. Rios followed

8  up stating that "we are good to go", and that an assistant will contact Mr. Pedersen

9  regarding a credit card for the snow bike samples.  (SSF ¶ 54.)  Mr. Pedersen

10 responded to Mr. Rios that T4K does not have enough samples of the Ski-doo

11 snow bike and are going to Canadian Tire to purchase samples.  (SSF ¶ 56.)

12           2.       **The parties never memorialized the terms in writing**

13       On March 9, 2009 Mr. Pedersen stated, ██████████████████████

14 ███████████████████████████████████████████████

15 █████████████████████████████ (SSF 47.)  No such

16 MOU was sent or signed.  (SSF ¶ 61.)

17           3.       **T4K did not identify any information as confidential or a**

18                    **trade secret**

19       T4K identifies the following as the trade secret information that Mr.

20 Pedersen conveyed to Mr. Rios: (1) a March 27, 2009 email with a marketing

21 power point titled "Moto X Recap.doc" of sales at Wal-Mart; (2) an email chain

22 with attachment titled "Quote Sheet.xls"; and (3) contents of email chain with

23 subject line "USA Distribution". (SSF ¶ 96.)  On March 27, 2009, Mr. Rios was

24 emailed a power point presentation that contains an image and a short description

25 of the key features of all three of T4K's snow bikes - the Ski-doo, X-Games and

26 Polaris.  (SSF ¶ 62.)

27       None of the emails or attachment identifies the information discussed

28 between the parties as confidential or trade secret.  T4K did not ask Sport

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 7 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1  Dimension to sign a non-disclosure agreement or expressly ask any specific

2  information must be treated as a trade secret.  (SSF ¶23.)  Likewise, T4K also

3  provided the alleged confidential information to customers and distributors,

4  without requiring that they keep the information confidential. (SSF ¶¶ 105; 107.)

5      **D.     Sport Dimension Determined and Notified T4K that customers**

6              **were uninterested**

7          To explore the feasibility of the arrangement, starting April 2009, Sport

8  Dimension made inquiries to test out the market.  (SSF ¶¶ 68, 70.)

9          In April 2009, Mr. Rios requested the ███████████████████████

10 ████████████████████████████████████████████████████████████

11 █████  (SSF ¶¶ 68; 69.)

12         Mr. Rios also asked Todd Richards, Sport Dimension's VP of sales to

13 contact various potential customers in the U.S. regarding T4K's snow bikes

14 including ██████████████████████  (SSF ¶70.)  Mr. Richards followed

15 up with preliminary calls but reported that T4K's price was an issue.  (SSF ¶ 72.)

16         On July 10, 2009 Mr. Pedersen wrote stating that he assumes that nothing is

17 happening because of the lack of communication.  (SSF ¶73.)  Mr. Rios responded

18 that ████████████████████████████████████████████████  (SSF ¶

19 74.)

20     **E.     T4K assumed there was no agreement and sold directly in the**

21             **U.S.**

22         Having not heard from Sport Dimension, Mr. Pedersen testified that he

23 assumed Sport Dimension was not interested in pursuing the business.  (SSF ¶ 76.)

24 Within months, in 2009, Mr. Pedersen began selling directly in the U.S., and by

25 ████████████████████████████████████████████████████████████

26 ███████████████████████████████████████  (SSF ¶¶ 80, 86.)

27         For instance, ████████████████████████████████████████████

28 ██████████████████████  (SSF ¶80.)  Subsequently, in the spring of 2010, ██████

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

1 ████████████████████████████████████████████████████

2 (SSF ¶ 81.)  In the spring of 2011, Costco U.S. did not purchase new units from

3 T4K.  (SSF ¶ 82.)  During the time of Costco's buying decision in 2011, however,

4 another version of T4K's snow bike was subject to ████████████████████

5 ██████████████████████████████████████ (SSF ¶ 24.)

6          Despite that T4K did not sell new snow bike units to Costco U.S. in 2011,

7 T4K consistently sold its snow bike to ████████████████████████████

8 ███████████ (SSF ¶92.) ███████████████████████████████

9 ████████████████████████████████████████████████████

10 ███████████████████████████ (SSF ¶¶ 25; 26.)

11          T4K also marketed to other customers, such as █████████████████

12 others, which would have been ██████████████████ had there been a

13 distribution agreement.  (SSF ¶ 86.)  Moreover, in April 2010, T4K submitted a

14 ██████████████████████████ (SSF ¶87; 89.)  In

15 March 2011, T4K submitted ████████████████████████████████

16 ████████████████████████████████ (SSF ¶¶

17 90;91).

18     **F.     Two Years After The Discussions Between The Parties, Sport**

19          **Dimensions Introduces the Yamaha Snow Bike**

20          After T4K and Sport Dimension had ceased their discussions, Sport

21 Dimension entered into discussions with Yamaha Corporation ("Yamaha") to

22 design and develop its own snow bike, entering into a licensing agreement with

23 Yamaha in 2011.  (SSF ¶ 93.)   In 2011, Sport Dimension launched its snow bikes

24 ("the Yamaha Snow Bike").  (SSF ¶ 94.)

25     **G.     T4K filed this action to stop the competition**

26          T4K's motives in bringing and in aggressively pursuing this meritless action

27 are for the purposes of stopping the competition.

28

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1  In spring 2011, Sport Dimension sold the snow bikes to Costco U.S. for the
2  2011/2012 winter season.  (SSF ¶ 94).  Afterwards, T4K promptly filed this action
3  against Sport Dimension and Costco, claiming patent infringement among other
4  things.  (SSF ¶1.)
5      In June 2012, T4K wrote to ███████████████████████████████
6  ████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████
9  ██████████████  (SSF ¶ 27.)
10     In addition, T4K served subpoenas on all of Sport Dimension's important
11 customers, ███████████████████████████████████████████████████
12 ██████████████████████  (SSF ¶ 28.)

**IV.   STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) is designed to isolate and dispose of
factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24
(1986).   Summary judgment shall be granted "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not "genuine" unless
"the evidence is such that a reasonable jury could return a verdict for the
nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);
*Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
("[w]here the record taken as a whole could not lead a rational trier of fact to find
for the non-moving party, there is no 'genuine issue for trial.'").

Summary judgment is appropriate against a party who has failed "to make a
showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477
U.S. at 322.  When the nonmoving party has the burden of proof at trial, the
moving party need only point out "that there is an absence of evidence to support

- 10 -

1  the nonmoving party's case' ", which it may do by "pointing out through argument

2  [ ] the absence of evidence to support plaintiff's claim.' ". *Devereaux v. Abbey,*

3  263 F.3d 1070, 1076 (9th Cir. 2001).  If the nonmoving party fails to produce

4  enough evidence to create a genuine issue of material fact, the moving party wins

5  the motion for summary judgment.  *Nissan Fire & Marine Ins. Co. v. Firtz Cos.,*

6  210 F.3d 1099, 1103 (9th Cir. 2000).

7       The Court may grant summary judgment on "each claim or defense – or the

8  part of each claim or defense" on which it is sought.  Fed. R. Civ. P. 56(a).

9  **V.     ARGUMENT**

10     **A.     T4K'S MISAPPROPRATION OF TRADE SECRET CLAIM**

11           **MUST FAIL**

12       To establish a prima facie case of trade secret misappropriation, T4K first

13  must prove that the information qualifies as "trade secret."  Cal. Civ. Code § 3426.

14  This T4K cannot do.  Section 3426 defines trade secret as information that:

15  "(1) derives economic value, actual or potential, from not being generally known

16  to the public or to other persons who can obtain economic value from its disclosure

17  or use;" and (2) "is the subject of efforts that are reasonable under the

18  circumstances to maintain its secrecy."  S*ee Whyte v. Schlage Lock Co.,* 101 Cal.

19  App. 4th 1443, 1354 (2002).

20           **1.     T4K's Alleged Trade Secret Was Either Publicly Available**

21                 **Or Could Be Reasonably Calculated**

22       T4K identifies the following as trade secret that Mr. Pedersen allegedly

23  conveyed to Sport Dimension: (1) an email with attachment titled "Moto X

24  Recap.doc" (Bates No. SDI 001193-4); (2) an email chain with attachment titled

25  "Quote Sheet.xls" (Bates No. SDI 001196-1200); and (3) contents of email chain

26  with subject line "USA Distribution" (Bates No T4KP000067-80). (SSF ¶ 96.)

27       None of this information qualifies as "trade secret" information.  Much of

28  this information was either publicly available or readily accessible in the industry.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1       First, the Moto X Recap document was actually Wal-Mart's, not T4K's,

2   marketing and sales information.  In fact, T4K testified that ███████████████

3   ████████████████████████████████████████████ (SSF ¶ 102.)

4       Second, the Quote Sheet is actually a specification sheet for the X-games

5   snow bike that was already on the market, and was provided to prospective

6   customers. (SSF ¶¶ 98-100; 105.)  This sheet included the dimensions of the X-

7   Games snow bike product itself, which is publicly available.  The carton size or

8   container quantities referenced therein are exchanged with third parties such as

9   factories and buyers who specify how the containers must be loaded.  (SSF ¶ ¶ 98-

10  100.)  Moreover, the reference to the factory is unimportant; the identity of snow

11  bike suppliers is readily and instantly identifiable on public websites such as

12  Alibaba.com.  (SSF ¶ .119.)

13      Third, the USA Distribution email identified above discusses T4K's snow

14  bikes, pricing, and purchase price—information which were publicly available,

15  was provided to prospective customers, or can be reasonably calculated from

16  public sources.  For instance, at the time of the parties' discussion, the Ski-doo and

17  X-Games snow bikes were already being sold at retail, and the Polaris snow bike

18  was marketed in a Power Point presentation presented to potential customers.

19  (SSF ¶ 30; 34.)  The discussion of retail prices cannot be a trade secret since it was

20  publicly available.  The price at which Sport Dimension may purchase the snow

21  bike from T4K likewise cannot be a trade secret.  This was calculated by Mr. Rios

22  of Sport Dimension who did so using a "work back" calculation based on retail

23  price, a method customarily used in the industry, and also used by T4K.  (SSF ¶¶

24  41; 103.)  Moreover, to the extent that T4K argues that data related to costs,

25  margins, or projections is a trade secret, case law is clear that such data would not

26  qualify for trade secret protection. *See Steinberg Moorad & Dunn, Inc. v. Dunn*,

27  136 Fed. Appx. 6, 12-14 (9th Cir. Cal. 2005) (affirming the lower court's summary

28  judgment stating that "internal data about costs, budgets, profit margins and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 12 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

1    projections" is only protectable "if the methods for setting such prices are not

2    commonly-used industry formulas.").

3          **2.    T4K Presents No Evidence That It Took Reasonable Steps**

4                  **To Maintain The Secrecy**

5          In order to gain trade secret protection, T4K must prove that it took

6    reasonable steps to maintain the secrecy of its so called trade secrets.  This includes

7    requiring "confidentiality agreements with those who will have access to the

8    information, or at least notice that the disclosed information is a trade secret."

9    *AT&T Communs. of Cal., Inc. v. Pacific Bell,* No. 99-15668, 2000 U.S. App.

10   LEXIS 23215, *12 (9th Cir. Cal. Sept. 8, 2000) (stating that "the proprietor of a

11   trade secret may not unilaterally create a confidential relationship without the

12   knowledge or consent of the party to whom he discloses the secret.")  T4K failed

13   to do either.

14         Failing to do so is unreasonable under the circumstances considering that

15   T4K considered Sport Dimension to be a competitor.  (SSF ¶ 29.)

16         Here, Mr. Pedersen testified that he was ███████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████ (SSF ¶ 104.)  Despite these

19   concerns, and despite that T4K has used non-disclosure agreements with other

20   companies, T4K never asked Sport Dimension to sign a non-disclosure agreement

21   or notified Sport Dimension that any of the information as a trade secret.  (SSF ¶¶

22   23; 107.)  In fact, T4K asserted this claim despite Mr. Pedersen's admission that he

23   ████████████████████████████████████████████████████████████████

24   ██████████████  Instead, Mr. Pedersen testified that ███████████████████

25   ████████████████████████████████████████████████████████████████

26   ██████████████████(SSF ¶ 115.)

27         Mr. Pedersen and Mr. Weenink of T4K also testified that they routinely

28   ████████████████████████████████████████████████████████████████

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 13 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

████████████████████████████████████████

██████████████████████████████ (SSF ¶ 105.)

Of course, the fact that T4K assumed that Sport Dimension or others will keep the information confidential is not enough.  Under the circumstances, no reasonable person could conclude that T4K made reasonable efforts to protect this information.

### 3. There is No Evidence That Sport Dimension Used Or Disclosed The Trade Secret

T4K must also prove that Sport Dimension improperly used or disclosed the trade secret.  Cal. Civ. Code § 3426.1.  Other than conclusory allegations, T4K has failed to present any admissible evidence to that effect.  In fact, Costco U.S., the customer that T4K claims it lost as a result of Sport Dimension's conduct confirmed in a Declaration that it received no T4K information and that Costco's buying decision is based entirely on neutral factors such as price, performance and value to the customer. (SSF 109; Nelson Decl. ¶ 9.)  Indeed, given that Sport Dimension launched the Yamaha snow bike two years after the brief discussions with T4K, it is unclear what information, if anything, could have been protected after such a long time has passed.  (SSF ¶ 94.)

T4K had no basis for seeking a claim for misappropriation of trade secret and it should be dismissed.

### B. THE BREACH OF CONTRACT CLAIM MUST FAIL

To state a claim for breach of contract under California law, T4K must prove (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance of a contract; (3) defendant's breach of the contract; and (4) resulting damages. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (1968).

To prove the existence of a contract, T4K must prove each of the following: (1) that the contract terms were clear enough that the parties could understand what

- 14 -

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1   each was required to do; (2) that the parties agreed to give each other something of

2   value; and (3) that the parties agreed to the terms of the contract.  CACI §302.

3          T4K claims that the parties entered into an agreement by way of emails and

4   oral discussions.  (SSF ¶ 116).  The only communication that T4K identifies as

5   reflecting contract terms, however, is the March 2009 email chain ("the March

6   2009 emails"), which is insufficient to prove the existence of a contrach.

7                    **1.     The Contract Claim is Barred by the Statute of Frauds**

8          The statute of frauds requires contracts intended to be performed for more

9   than a year to be in writing and include all pertinent terms.  Cal Civil Code Section

10  1624 provides that an agreement that by its terms is not to be performed within a

11  year is "invalid, unless they, or some note or memorandum thereof, are in writing

12  and subscribed by the party to be charged or by the party's agent."  *Thommeny v.*

13  *Paramount Pictures Corp.*, No. CV 10-6951, 2011 U.S. Dist. LEXIS 80291 *9-11

14  (C.D. Cal. July 13, 2011) (granting summary judgment where benefits,

15  termination, and dispute resolution were material terms of the contract).

16         Here, T4K admits that there was no discussion to limit the contract period to

17  a year.  (SSF ¶ 77.)  Therefore, the contract needed to be in writing and include all

18  pertinent terms.  The March 2009 emails, however, do not include discussion of

19  essential terms, such as duration or termination, and reflect un-finalized

20  discussions regarding quantity, which customers are "off limit", market readiness,

21  among other things.  Hence, as a matter of law, T4K's breach of contract claim is

22  barred by the states of frauds.

23                    **2.     There Is No Valid Contract Because The Parties Intended**

24                             **the Contract To be Written and Signed**

25         In contract law, when an understanding between parties is contingent upon

26  entering into a definitive written agreement, the understanding is not binding until

27  the written agreement is actually executed.  *See Banner Entm't, Inc. v. Super. Ct.*,

28  62 Cal. App. 4th 348, 359 (1998*); Apablasa v. Merrit & Co.*, 176 Cal. App. 2d

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

719, 730 (1959) (stating that preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself).

Fatal to T4K's attempt to portray the March 2009 emails discussions as a binding contract is Mr. Pederson's statement that if the parties reached an agreement, ███████████████████████████████████████ (SSF ¶ 47.)[2].  He did not, and none were provided to SD.  (SSF ¶ 61.)  Given the parties' understanding that the contract would be contingent upon entering into a definitive written and signed agreement, there can be no valid contract without one.

### 3.   There Was No Meeting of The Minds on Material Terms

For a valid contract, there must be an offer and acceptance on all material terms.  *See* 1 B.E. Witkin, *Summ. of Cal. Law, Contracts* §§ 116-17 (2010); *Banner Entm't v. Super Ct.,* 62 Cal. App. 4th 348, 357-58 (1998)  ("there is no contract until there has been a meeting of the minds on all material points."); *Bustamante v. Intuit, Inc.,* 141 Cal. App. 4th 199, 215 (2006).  Summary judgment is appropriate where, as here, there is no showing that there was meeting of the minds with respect to key terms of the contract.  In *Thommeny,* 2011 U.S. Dist. LEXIS 80291 *9-11, the court granted summary judgment on plaintiff's breach of contract claim because there was no meeting of the minds on the material terms of "benefits, termination, and dispute resolution, were never discussed or agreed on by the parties."  *see also Krasley v. Superior Court*, 101 Cal. App. 3d 425, 431 (Cal. App. 4th Dist. 1980) (granting a writ of mandate requiring the trial court to enter summary judgment on the grounds that that contract at issue was unenforceable as a matter of law because the parties failed to agree on key terms.)

This situation is worse in that the parties never even discussed material terms such as such as duration or termination, and failed to finalize others regarding quantity, which customers are "off limit", and market readiness.  (SSF ¶¶

---

[2] Mr. Pedersen clarified that by MOU he meant "memorandum of understanding." (SSF ¶60.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1   77-79.)  At most, the parties' discussions were exploratory in nature regarding a

2   potential re-distribution agreement, which never came to fruition.  (SSF ¶ 110.)

3   Had it been more than that, T4K would have continued ███████████████████

4   ███████████████████████████████████████████████████████████████████

5           **4.      T4K Did Not Provide Value Or Perform Under the Alleged**

6                     **Contract**

7           To state a claim for breach of contract, T4K must prove that it provided

8   value to Sport Dimension, or performed under the contract.  *Reichert*, 68 Cal. 2d at

9   830; CACI §302.   The benefit to Sport Dimension would have been the

10  opportunity to exclusively distribute in the U.S., with the exception of certain

11  agreed upon "off limits customers".

12          T4K, however, did not provide value to Sport Dimension or perform the

13  most basic obligations under the alleged contract.  Instead, having not heard from

14  Sport Dimension as of July 2009, T4K assumed Sport Dimension was uninterested

15  and within months, directly marketed, offered or sold the snow bikes in the U.S. to

16  customers that would have been Sport Dimension's accounts under the alleged

17  contract.

18          For instance, in the Fall 2009, T4K sold ██████████████████████████

19  ██████████ (SSF ¶80.)  In the spring of 2010, T4K again sold ████████████

20  ████████████████████████████████████ (SSF ¶81.)  T4K also

21  marketed to other ████████████████████████████████████ which

22  would have been Sport Dimension's accounts.  (SSF ¶ 86).  In April 2010, T4K

23  even marketed ████████████████████████████████████████████

24  (SSF ¶ 87), and in March 2011, ████████████████████ which Sport

25  Dimension has previously contacted on behalf of T4K.  (SSF ¶ 90.)

26          The history of this case is telling.  It shows that even T4K did not believe a

27  contract exists between the parties.  If so, it would have attempted to perform

28  under the contract.  It would have also asserted a breach of contract claim from the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 17 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1   very start when it filed this action.  Yet, it did not do so.  Instead, T4K sold directly

2   in the U.S. within the same year of the parties' discussions, and claimed there was

3   a contract for the first time in 2013, some four years after the alleged discussions

4   and more than a year after the filing of the original complaint.

5              **5.       There is no evidence of breach**

6         Sport Dimension claims there was breach based on Sport Dimension's

7   competing activity and/or its failure to sell T4K's snow bikes.  This cannot provide

8   basis for breach.

9         That Sport Dimension sold a competing snow bike cannot constitute a

10  breach because the alleged contract did not prevent Sport Dimension from selling a

11  competing product.  As Mr. Pedersen acknowledged, the only products that the

12  parties discussed were T4K's snow bikes, not Sport Dimension's snow bikes.

13        Moreover, it is undisputed that the parties never agreed on the minimum

14  quantity that SD must purchase from T4K.  Hence, that Sport Dimension did not

15  purchase or sell T4K's snow bikes cannot demonstrate breach.

16        The claim for breach of covenant of good faith and fair dealing must

17  likewise fail because it is premised on formation of a contract, T4K's performance

18  under the contract, and damages, none of which T4K can prove here.

19  **C.    THE PROMISSORY ESTOPPEL CLAIM MUST FAIL**

20        For promissory estoppel, T4K must establish the existence of a clear and

21  unambiguous terms of promise, reasonable reliance and damages.  *Cooper v. State*

22  *Farm Mut. Auto. Ins. Co.*, 177 Cal. App. 4th 876 (2009).  Because promissory

23  estoppel requires "a promise clear and unambiguous in its terms,"

24  A "conditional commitment" to enter into an agreement cannot support a

25  promissory estoppel theory.  *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App.

26  3d 885, 891 (1976) (a "conditional commitment" to make a loan is not "a clear and

27  unambiguous offer," and so cannot support a promissory estoppel theory); *see* 1

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 18 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

Witkin, *Summ. Cal. Law, Contracts* § 245 (2010) ("[t]he doctrine [of promissory estoppel] is inapplicable where no clear promise is made").

T4K's promissory estoppel claim is based on the same exploratory email exchange that is the basis for T4K's contract claim. (SSF ¶ 112.) As discussed above, there was no clear and unambiguous offer regarding quantity, duration, customers, market readiness, or terms of the contract—terms material to any distributor relationship. Moreover, Sport Dimension's statements were subject to a condition precedent, namely, the parties entering into a written and signed MOU, which never occurred. (SSF ¶ 61.) Therefore, T4K's claim for promissory estoppel should be dismissed.

## D.   THE FRAUD CLAIMS MUST FAIL

To state a fraud claim, T4K must establish: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.,* to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996); *see also* CA Civ. Code § 1709.

To be actionable, the misrepresentation must be of a material fact, essential to the analysis undertaken by the T4K and such that the T4K would not have acted as he did without it.[3]  T4K cannot read something into a neutral statement in order to justify a claim for misrepresentation.[4] Moreover, T4K must prove that the statements were false and misleading at the time it was made.[5]  A promise of future conduct is only actionable if T4K can prove it was made without a present intent to

[3] *See Roddenberry v. Roddenberry* (1996) 44 Cal.App. 4th 634, 665.
[4] *See Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App. 4th 288, 297-298.
[5] *See Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (fraudulent misrepresentations or omissions must be fraudulent or misleading when made). *See also Gabana Gulf Distrib., Ltd. v. Gap Int'l Sales, Inc.*, No. C 06-02584, 2008 U.S. Dist. LEXIS 1658 (N.D. Cal. Jan. 9, 2008)(Defendant granted summary judgment on its fraud claim where Plaintiff did not prove that Defendant had no intent to approve retailers at the time the statement in question was made); *see also Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 55 Cal. Rptr. 2d 225, 231 (Cal. Ct. App. 1996) ("A promise of future conduct is actionable as fraud only if made without a present intent to perform.")

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 19 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1  perform.[6]  T4K must also prove that Sport Dimension made a misrepresentation

2  with a contemporaneous intent to cause T4K to alter their position.[7]  T4K cannot

3  prove any of these factors.

### 1. There is no evidence of material misrepresentation, knowledge of falsity or intent to defraud

6  T4K brings two fraud claims against Mr. Rios and Sport Dimension.  T4K's

7  first claim for fraud is based on the following representations that Mr. Rios

8  allegedly made during his negotiations with T4K: (1) that Sport Dimension was

9  interested in partnering with T4K to distribute its snow bikes; (2) that Sport

10  Dimension would distribute Plaintiff's snow bikes in the United States; and (3) that

11  Sport Dimension would not market the snow bikes to certain retailers, including

12  Costco U.S. and Costco Canada.  (SSF ¶ 117.)

13  The second fraud claim is also based on the same March 2009 email

14  exchange: (1) that Sport Dimension was making efforts to market and sell T4K's

15  snow bike to U.S. retailers; (2) that Sport Dimension had made efforts to sell

16  T4K's snow bike to Sam's Club; (3) that Sam's Club was interested in conducting

17  a 100 club test of the snow bike; (4) that there was no interest in T4K's products;

18  and (5) that Sam's Club ultimately decided that it was uninterested.  (SSF ¶ 118.)

19  First, each of these alleged statements are based on future performance.  In

20  the case of promissory fraud, T4K must establish that "the promisor did not intend

21  to perform at the time he or she made the promise."[8]  T4K presents no evidence

22  whatsoever that Mr. Rios and Sport Dimension intended to defraud T4K.  In fact, it

23  is undisputed that Sport Dimension thereafter called on potential customers about

24

25  [6] *See Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App. 4th 471, 481.
[7] *Nathanson v. Murphy* (1955) 132 Cal.App. 2d 363, 369-70.

26  [8] *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991). *See, e.g., Serv. By Medallion v. Clorox Co.*, 44 Cal. App. 4th 1807, 1817 (1996)

27  (affirming demurrer, finding allegations did not support a lack of an intention to perform); *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324,

28  1331 (1986) (same); *Hills Transportation Co. v. Southwest Forest Industries, Inc.*, 266 Cal. App. 2d 702, 708 (1968).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 20 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT
LITIOC/2070774v3/102566-0001

1  T4K's snow bikes.  (SSF ¶¶68; 70).[9]  While T4K claims this effort was

2  insufficient, it has no bearing on Sport Dimension's intent at the time of the

3  statements.

4      Second, to the extent the statements were based on condition precedent of

5  entering into a contract that never occurred, they are not actionable.  *See San*

6  *Francisco Design Ctr. Assocs. v. Portman Cos.,* 41 Cal. App. 4th 29, 43-44 (1995)

7  (no actionable misrepresentation regarding plaintiff's contract exists where

8  contract was subject to conditions precedent which had not been satisfied).  Hence,

9  to the extent the contract claim is dismissed, the fraud claim must also be

10 dismissed.

11     Third, T4K cannot point to any representation by Mr. Rios that he would not

12 approach Costco U.S. regarding Sport Dimension's snow bikes.  T4K never

13 confirmed that Sport Dimension could not approach Costco U.S., and Sport

14 Dimension never stated it would not.  (SSF ¶ 59.)  Moreover, as Mr. Pederson

15 acknowledged, the parties only discussed Sport Dimension's potential sales of

16 T4K's product, not sales of Sport Dimension's own product.  (SSF ¶ 120.)  Hence,

17 that Sport Dimension approached Costco, or any of the customers regarding its

18 own product is no basis for fraud.

19     Finally, as to the second claim, the claim fails for the additional reason that

20 the alleged statements were not false.  It is undisputed that SD did, in fact make

21 efforts to sell T4K's snow bike to U.S. retailers, ███████████████  As noted

22 above, █████████████████████████████████████████████████

23 ██████████████████████  (SSF ¶68)  Moreover, Mr. Rios asked

24 that Todd Richards, Sport Dimension's VP of sales contact various potential

25 customers in the U.S. regarding ████████████████████████████

_____

[9] For example, in April, 2009 Mr. Rios emailed Sam's Club regarding T4K's Ski-
doo snow bike.  (SSF ___ SDI 15723-24.)  Moreover, Mr. Rios asked that Todd
Richards, Sport Dimension's VP of sales contact various potential customers in the
U.S. regarding T4K's snow bike including Big 5, Academy Sport, among others.
(Richards dep.. at 108-109 and responses to T4K 2nd set of rogs).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

among others.  (SSF ¶70.)  It also remains uncontradicted that the customers expressed no interest in the product at the time.  In fact, this is consistent with T4K's purported experience that it was also having difficulty breaking into the U.S Market.

Based on the foregoing, Sport Dimension respectfully submits that T4K's second claim for fraud should be dismissed.

### 2.    There Is No Evidence That T4K Relied on the Alleged Statements

There is no evidence that T4K detrimentally relied on Mr. Rios' statements. To the contrary, Mr. Pederson testified that he assumed T4K was not interested, and directly marketed and sold the snow bikes to customers in the U.S. within months of the discussion.  (SSF ¶ 76)

In particular, Mr. Rios' alleged misrepresentations took place in May and July of 2009.  By the fall of 2009, ███████████████████████ ███████████████████████████████████████████████ and others customers, which would have been Sport Dimension's accounts.  (SSF ¶¶ 80; 86.) ████████████████████████████ (SSF ¶ 26.)

Sport Dimension respectfully submits that T4K's first and second claims for fraud should be dismissed and Sport Dimension's Motion be granted.

### E.    THE INTERFERENCE WITH PROSECTIVE ECONOMIC ADVANTAGE CLAIM MUST FAIL

Under California law, to prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must establish:  (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to plaintiffs; (2) the defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 22 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

1  (5) economic harm to plaintiff proximately caused by the acts of defendant. *CRST*

2  *Van Expedited v. Werner Enter., Inc.* 479 F.3d 1099, 1108 (9th Cir. 2007).

3  **1.  T4K Cannot Meet Its Burden of Proving Wrongful Conduct**

4  Interference with prospective economic advantage requires a plaintiff to

5  allege an act that is wrongful independent of the interference itself. *Bekele v. Ford,*

6  2011 WL 4368566, at 11 (N.D. Cal. Sept. 17, 2011) (*citing Della Penna v. Toyota*

7  *Motor Sales,* 11 Cal. 4th 376, 392-93 (2007)).  This requires that T4K prove as an

8  element of the claim itself that the Sport Dimension's conduct was independently

9  wrongful and, therefore, was not privileged. *See Bed, Bath & Beyond of La Jolla,*

10  *Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 881

11  [60 Cal.Rptr.2d 830].)  To be sufficient, wrongful conduct must rise to the level of

12  misrepresentation or "violation of statute". *Venhaus v. Shultz* (2007) 155

13  Cal.App.4th 1072, 1079-1080.  Hence, if T4K cannot demonstrate that Sport

14  Dimension intentionally disclosed or used any protectable trade secret or fraud,

15  the tortious interference claims must also fail.

16  **2.  T4K cannot show reasonable expectation of prospective**

17  **economic advantage**

18  The tort of interference with prospective economic advantage does not

19  protect mere "potential" relationships that are "at most a hope for an economic

20  relationship and a desire for a future benefit." *Westside Ctr. Assoc. v. Safeway*

21  *Stores* 23, Inc., 42 Cal. App. 4th 507, 527 (1996).

22  Here, the customers that T4K claims it lost were mere hope and an economic

23  relationship and a desire for a future benefit.  At the time the parties began its

24  discussion in 2009, T4K informed Sport Dimension it had difficulty penetrating

25  the U.S. market, and that customers ████████████████████████

26  ████████████ (SSF ¶¶ 37; 47.)  Moreover, it is undisputed and T4K

27  admits that Costco reviews its buying decisions every year and Costco U.S. did not

28  tell T4K that it would purchase its snow bike for the 2011/2012 snow season.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 23 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

1  (SSF ¶¶ 83; 84.)  Hence, T4K cannot, as a matter of law, prove an economic

2  relationship with, or the probability of future economic benefit, with any customers

3  in the U.S.

4      In fact, at the time of the parties' discussion in 2009, the only customer with

5  which T4K had an economic relationship and a chance to sell the snow bikes was

6  ████████████ (SSF ¶ 92).  T4K, however, cannot show actual disruption as this

7  customer, because it is undisputed that T4K has continued selling snow bikes to

8  them without interruption.  (SSF ¶ 92). ████████████████████████████

9  ████████████████████████████ (SSF ¶ 92)

10      Moreover, T4K cannot show any disruption from Sport Dimension's alleged

11  conduct.  Since its 2009 discussions with Sport Dimension, T4K's sales in the U.S.

12  and overall snow bike sales ████████████ (SSF ¶ 25.) ████████████████████

13  ████████████████ (SSF ¶ 26.)

14      Sport Dimension respectfully submits that T4K's claims for interference

15  with prospective economic advantage should be dismissed.

16    **F.**    **T4K FAILS TO PRESENT EVIDENCE OF CAUSATION OR**

17          **DAMAGE**

18      The Motion should be granted to each of the claims because there is no

19  evidence of causation or that T4K was harmed by any of Sport Dimension's

20  conduct.

21      To the contrary, since T4K's discussions with Sport Dimension in early

22  2009, T4K's snow bike business increased, not decreased.  In the U.S., T4K's

23  snow bike business has increased, with sales rising ████████████████████

24  ████████████████████████████ (SSF ¶ 25.) ████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████ (SSF ¶ 26.)

27

28

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001

1   **VI.   CONCLUSION**

2          Defendants respectfully submits that no genuine issues of material fact exist

3   with respect to any of T4K's claims and that Sport Dimension is entitled to

4   summary judgment as a matter of law as to all of T4K's claims.

5

6   Dated:  May 6, 2013                    Respectfully submitted,

7                                          STRADLING YOCCA CARLSON & RAUTH

8                                          A Professional Corporation

9                                          By: /s/ Sarah S. Brooks_____

10                                             Yuri Mikulka
                                               Sarah S. Brooks
11                                             Attorneys for Defendant SPORT
                                               DIMENSIONS, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 25 -

DEFENDANTS' NOTICE OF AND MOTION FOR SUMMARY JUDGMENT

LITIOC/2070774v3/102566-0001