1  YURI MIKULKA, SBN 185926
   (ymikulka@sycr.com)
2  SARAH S. BROOKS, SBN 266292
   (sbrooks@sycr.com)
3  **STRADLING YOCCA CARLSON & RAUTH**
   660 Newport Center Drive, Suite 1600
4  Newport Beach, CA 92660-6422
   Telephone: (949) 725-4000
5  Facsimile: (949) 725-4100

6  Attorneys for Defendant and
   Counter-Claimant
7  SPORT DIMENSION, INC. and KURT RIOS

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10                  **WESTERN DIVISION**

11  TECH-4-KIDS, INC.                  CASE NO.: 2:12-cv-06769-PA-AJW

12              Plaintiff,             Honorable Percy Anderson

13         vs.                         **DEFENDANT'S OPPOSITION TO**
                                       **PLAINTIFF'S MOTION FOR**
14  SPORT DIMENSION, INC.,             **SUMMARY JUDGMENT**

15  KURT RIOS                          Hearing Date: June 3, 2013
                                       Time: 1:30 p.m.
16              Defendants.            Courtroom: 15

17

18  SPORT DIMENSION, INC.,             **Initial Complaint Filed:**
                                       December 6, 2011
19              Counter-Claimant,
                                       **First Amended Complaint Filed:**
20         vs.                         August 17, 2012

21  TECH-4-KIDS, Inc.,                 **Second Amended Complaint Filed:**
                                       March 4, 2013
22              Counter-Defendant.
                                       **Trial:** August 6, 2013
23

24

25

26                  **[FILED UNDER SEAL]**

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................ 1

II. PROCEDURAL HISTORY ............................................................. 3

III. SUMMARY OF RELEVANT FACTS ........................................... 3

    A. The Parties ............................................................................... 3

    B. T4K did not "Pioneer" the Snow Bike ................................... 4

    C. The Parties Discussed A Potential Business Arrangement ...... 5

    D. The Parties Did Not Discuss or Finalize Material Terms ....... 5

        1. The parties did not discuss duration or termination
            terms ........................................................................... 5

        2. The parties did not agree on minimum quantity ......... 5

        3. The parties did not finalize who would handle which
            account ........................................................................ 6

        4. The parties did not discuss whether Sport Dimension
            could sell a competing product .................................... 6

    E. Sport Dimension was "good to go" on just one thing:
       purchasing samples ................................................................. 6

    F. The parties never memorialized the terms in writing .............. 6

    G. The parties' subsequent actions reflect lack of agreement ...... 7

        1. Sport Dimension approached retailers to gauge market
            interest ........................................................................ 7

        2. The parties part ways and cease communication .......... 7

        3. T4K assumed there was no agreement and sold directly
            in the U.S. ................................................................... 8

            a. T4K increased its sales efforts in the U.S. ....... 8

            b. T4K's snow bike sales have drastically increased since
               2009  8

    H. Two Years After The Discussions Between The Parties, Sport
       Dimensions Introduces the Yamaha Snow Bike ...................... 9

        1. Sport Dimension saw the need for a better product at a
            lower price point ......................................................... 9

CV07-6811-JVS

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2071344v3/102566-0001

I.      T4K files this action when it loses a bid to Sport Dimension............9

IV.     STANDARD OF REVIEW................................................................9

V.      ARGUMENT..............................................................................10

        A.      Plaintiff Is Not Entitled To Summary Judgment On Its Breach
                Of Contract Claim.......................................................10

                1.      The undisputed evidence shows that there was never a
                        contract between the parties....................................10

                        a.      The Contract Claim is Barred by the Statute of Frauds . 10

                        b.      There Is No Valid Contract Because The Parties Intended
                                the Contract To be Written and Signed..........................11

                        c.      There Was No Meeting of The Minds on Material Terms 12

                        d.      The Parties' Subsequent Conduct Demonstrates the Lack
                                of Contract and Performance..........................................14

                        e.      The Contract is Unenforceable under California Statutory
                                Bar Against Non-Compete Covenants ..........................15

                2.      There is No Evidence of Breach ...........................................155

                        a.      There was no obligation to use best efforts...................16

                        b.      There can be no breach based on selling competing snow
                                bike    166

        B.      T4K FAILS TO PRESENT EVIDENCE OF CAUSATION .............17

VI.     CONCLUSION ...........................................................................177

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- ii -                                                  CV07-6811-JVS

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Apablasa v. Merrit & Co.,*
    176 Cal. App. 2d 719 (1959).............................................................11

*Banner Entm't, Inc. v. Super. Ct.,*
    62 Cal. App. 4th 348 (1998)......................................................11, 12

*Bustamante v. Intuit, Inc.,*
    141 Cal. App. 4th 199 (2006) .........................................................12

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).................................................................9, 10

*Color Match Pool Fittings, Inc. v. Aquastar Pool Prods.,*
    No. CV 06-781, 2007 U.S. Dist. LEXIS 98094, (C.D. Cal. Aug. 10, 2007)..........15

*E. & J. Gallo Winery v. Andina Licores S.A.,*
    440 F. Supp. 2d 1115 (E.D. Cal. 2006) ...............................................12

*Krasley. v. Superior Court,*
    101 Cal. App. 3d 425 ( Cal. App. 4th Dist. 1980)...................................12

*Reichert v. Gen. Ins. Co. of Am.,*
    68 Cal. 2d 822, 69 Cal. Rptr. 321, 442 P.2d 377 (1968)...........................10

*Thommeny v. Paramount Pictures Corp.,*
    No. CV 10-6951, 2011 U.S. Dist. LEXIS 80291 (C.D. Cal. July 13,
    2011)...........................................................................11, 12

*Warehousemen's Union Local No. 206 v. Continental Can Co.,,*
    821 F.3d 1348 (9th Cir. 1987) .......................................................3

*Westoil Terminals Co. v. Industrial Indemnity Co.,*
    110 Cal. App. 4th 139 (2003) .......................................................12

STATUTES

Cal. Bus. & Prof. Code Section 16600...................................................15

Cal. Civ. Code Section 1624...........................................................10

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LITIOC/2071344v3/102566-0001



OTHER AUTHORITIES

CACI §302 .............................................................................................................10

1 B.E. Witkin, *Summ. Of Cal. Law, Contracts* §§ 116-17 (2010) ...............................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iv-                                                CV07-6811-JVS

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LITIOC/2071344v3/102566-0001

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In its Motion for Summary Judgment (the "Motion"), Tech-4-Kids, Inc. ("Plaintiff" or "T4K") urges the Court to convert a purely exploratory discussion between competitors T4K and Defendant Sport Dimension, Inc. ("Sport Dimension") into an oppressive contract, whereby Sport Dimension would be forced to indefinitely serve as T4K's distributor and foreclosed from selling its own competing snow bikes worldwide.  Not only are such restrictive non-compete covenants illegal in California, T4K can cite to no evidence that Sport Dimension agreed to enter into such unreasonable terms, or any agreement at all.  T4K's Motion should be denied for the following reasons.

First, T4K cobbles together tentative email discussions in March 2009 as forming a firm and unequivocal contract that required Sport Dimension to serve as T4K's distributor for the past four years.  Far from establishing a contract with clear and unambiguous terms, the emails reflect that the parties never finalized discussions, or even discussed terms material to any distribution agreement—such as quantity, market readiness, customers, sublicensing, contract time period, or termination procedure.  Moreover, despite the parties' expectation that a memorandum of understanding ("MOU") would be signed if they could agree to terms, the parties never exchanged or signed one.  Also, T4K did not provide consideration.  Under the circumstances, T4K cannot establish the existence of a contract, or overcome the statute of frauds.

Second, T4K claims that the parties' subsequent conduct demonstrates that a contract was formed.  In contrast, it shows that even T4K did not believe the parties reached an agreement.  Despite the allegation that Sport Dimension was contractually obligated to serve as T4K's U.S. distributor, T4K never contacted Sport Dimension after the talks ended in July 2009.  Worse, within months, T4K pursued the U.S. accounts directly, which, had the agreement been in place, it

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 1 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1   would have breached.  In fact, T4K had no communications with Sport Dimension

2   at all until more than two years later, in late 2011, when upon discovering that

3   Costco U.S. chose Sport Dimension's Yamaha Snow Bike over T4K's, T4K filed

4   this action against Sport Dimension.  Also telling is that T4K's initial Complaint

5   never mentioned the existence of an agreement at all, which T4K asserted for the

6   first time more than a year later and after two amendments to the Complaint.  Had

7   T4K actually believed there was an agreement, it would have been the first claim

8   to assert–not the frivolous claim for patent infringement, which it ultimately

9   abandoned.

10       Third, T4K claims that the contract required Sport Dimension to stop selling

11   Sport Dimension's competing snow bikes.  Even if Sport Dimension agreed to do

12   so, which it did not, such contract would be unenforceable under California's

13   statutory bar against non-compete covenants. *See* Cal. Bus. & Prof. Code Section

14   16600.

15       Fourth, there can be no breach for failing to use best efforts to sell or selling

16   competing snow bikes because there is no evidence that the parties discussed "best

17   efforts", or what Sport Dimension could do with its own snow bike.

18       Finally, T4K cannot show how Sport Dimension's alleged breach caused

19   T4K any damages, when T4K began selling the snow bikes directly in the U.S.

20   within months of the alleged contract discussion.  As a result, during the alleged

21   contract period, T4K's snow bike business increased, not decreased, ██████████

22   ███████████████████████████████

23       The undisputed evidence shows that the parties never entered into an

24   agreement, never acted as if there was an agreement, there was no breach, and T4K

25   was not damaged as a result of Sport Dimension's conduct.  Sport Dimension

26   respectfully asks that the Court deny T4K's Motion.

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 2 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

## II.   PROCEDURAL HISTORY[1]

On December 6, 2011, T4K filed a Complaint in this action, in the District of Maryland, asserting claims of patent infringement and misappropriation of confidential business information against Sport Dimension and its customer Costco.  (Separate Statement of Uncontroverted Facts ("SSF") ¶ 83.)

On August 17, 2012, T4K transferred this case to the Central District of California and filed the First Amended Complaint ("FAC"), abandoning the frivolous claim for patent infringement and claims against Costco, and asserted for the first time common law claims of fraud and interference with prospective economic advantage, as well as misappropriation of trade secrets. (SSF ¶ 84.)

On March 4, 2013, more than a year after filing its initial complaint, T4K filed the Second Amended Complaint ("SAC").  (SSF ¶ 85.)  Through the SAC, T4K added four entirely new claims including the breach of contract, breach of the covenant of good faith and fair dealing and promissory estoppel claims at issue in the Motion.  (SSF ¶ 86.) The SAC alleged for the first time that a contract existed between the parties and that Sport Dimension breached that contract.  (SSF ¶ 87.)

## III.   SUMMARY OF RELEVANT FACTS[2]

### A.   The Parties

Sport Dimension has been in business for 16 years, and is located in Carson, California. (SSF ¶ 89.)  It sells and distributes well-known water-sports and snow-sports equipment and apparel in the United States and worldwide, including Body Glove™ wetsuits and apparel, Body Glove™ body boards, Body Glove personal floatation devices, Snow Slider, Yamaha™ Snow bike, and Sea-doo™ sea scooters.. (SSF ¶ 90.)  Sport Dimension's President is Kurt Rios.  (SSF ¶ 10.)

---

[1] Most of these facts are included in Sport Dimension's Motion for Summary Judgment (Docket Entry ("DE") 116), but is repeated here for the Court's convenience.

[2] This section provides background facts, some of which are material to the motion and the remainder of which are provided for information and context.  Citations to the evidence supporting the only material facts are set forth in the separately filed Separate Statement and Objections to Plaintiff's Separate Statement.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 3 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1    Sport Dimension sells its products through retailers such as Costco U.S.,

2  Sam's Club, The Sport Authority, and Dick Sporting's Goods.  (SSF ¶ 92.)  These

3  relationships existed prior to Sport Dimension's discussions with T4K.  (SSF ¶ 93.)

4    In 2002, long before its discussions with T4K, Sport Dimension launched its

5  snow-related product line.  (SSF ¶ 91.)

6    T4K is a Canadian company that began its operations about a year before the

7  parties' alleged contract discussion.  (SSF ¶ 94.)  It designs, manufacturers, and

8  sells toys and other products for children.  (SSF ¶ 98.)  The President of T4K is

9  Brad Pedersen.  (SSF ¶96.)  T4K began selling snow related products in 2007-

10  2008, after Sport Dimension – in 2002. (SSF ¶¶ 97, 105).  T4K ███████████

11  ███████████████████ (SSF ¶¶ 110).

12    T4K and Sport Dimension are competitors in the snow related products.

13  (SSF ¶ 104.)  T4K ████████████████████ when it knew that

14  Sport Dimension was already supplying Costco with foam sleds.  (SSF ¶ 146.)

15    **B.    T4K did not "Pioneer" the Snow Bike**

16    The product at issue is a snow bike product for children, which is similar to

17  snow sleds but has three skis.  (SSF ¶ 99.)  T4K's representative testified that ███

18  ████████████████████ (SSF ¶ 147.)

19    In 2007 or 2008, T4K began selling snow bikes.  (SSF ¶ 105.)  T4K sells at

20  least three different versions of its snow bike – the X-Games, Ski-doo and Polaris.

21  (SSF ¶ 106.)  Both the X-Games and Ski-doo snow bikes were on sale in 2007 or

22  2008 prior to discussions with Sport Dimension.  (SSF ¶107.)

23    In 2011, Sport Dimension began selling a snow bike ("the Yamaha Snow

24  Bike") that was designed in cooperation with, and licensed from, Yamaha

25  Corporation to replicate the popular Yamaha snow mobile.  (SSF ¶¶ 141, 142.)

26  For this reason, the Yamaha Snow Bike was intentionally designed to look

27  different than T4K's snow bikes.  (SSF ¶100.)  The Yamaha Snow Bike is covered

28  by U.S. Patent No. D662010 (SSF ¶ 101.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 4 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LITIOC/2071344v3/102566-0001

C.      **The Parties Discussed A Potential Business Arrangement**

During March to July 2009, the parties explored the possibility of entering into a distribution agreement.  (SSF ¶102.)  Most of these conversations took place by email and some by phone.  (SSF ¶ 102.)  The parties however do not recall what contract terms were proposed on the phone, if at all, and hence the emails control.  (SSF ¶ 102.)  The emails between the parties reflect the following:

In March 2009, Mr. Rios and T4K's President, Brad Pedersen, began discussing the possibility of the companies working together to sell T4K's snow bike in the United States ("U.S.").  (SSF ¶ 108.)  Mr. Rios proposed several different ways the companies may work together, including distributing T4K's product in the U.S., or obtaining a sub-license or buying directly from T4K at a pre-determined price. (SSF ¶ 109.)  Mr. Pedersen stated that ███████████ █████████████████████████████████████████████████████████ ██████████ (SSF ¶110.)  The parties, however, never finalized their discussion on material terms, or memorialize the terms in writing. (SSF ¶¶ 130-132.)

D.      **The Parties Did Not Discuss or Finalize Material Terms**

1.      **The parties did not discuss duration or termination terms**

The emails reflect, and T4K concedes, that the parties never discussed material terms such as duration of the contract or how the contract would be terminated, or the issue of sublicensing.  (SSF ¶¶ 130-132, 158.)

2.      **The parties did not agree on minimum quantity**

On March 9, 2009, Mr. Pedersen demanded that ██████████████ ████████████████████████████████████████ (SSF ¶ 111, 132).  Mr. Rios refused and stated, "we will try and sell as many as we can." (SSF ¶114.)  Mr. Pederson nonetheless testified ████████████████████ ████████████ (SSF ¶132.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LITIOC/2071344v3/102566-0001

3. **The parties did not finalize who would handle which account**

In a March 9 email, Mr. Pedersen stated that ███████████████ ████████████████████████████████████████████████ ██████████████████████████ (SSF ¶ 112.)  On March 26, 2009 Mr. Rios asked for clarification on ██████████ (SSF ¶ 119.)  Mr. Pedersen responded that ████████████████████ (SSF ¶ 120.)  Mr. Rios replied and asked that he advise as soon as he could about ██████████ (SSF ¶ 121.)  Mr. Pedersen never responded.

4. **The parties did not discuss whether Sport Dimension could sell a competing product**

The emails reflect, and T4K's President concedes, that the parties never discussed any other product, or whether under the arrangement, Sport Dimension would be prohibited from offering its own competing product line.  (SSF ¶ 148.)

E. **Sport Dimension was "good to go" on just one thing: purchasing samples**

On March 16, 2009, in order to evaluate the product, Mr. Rios asks for samples of the snow bikes and asked what are the differences between the models, and discussed sample pricing. (SSF ¶ 115.)  The following day, Mr. Rios followed up stating that "we are good to go" regarding purchasing snow bike samples and that an assistant will contact Mr. Pedersen regarding a credit card for the snow bike samples.  (SSF ¶ 116-117.)  Mr. Pedersen responded to Mr. Rios ████████████ █████████████████████████████████████████████████████ ██████████████████ (SSF ¶ 118.)

F. **The parties never memorialized the terms in writing**

On March 9, 2009 Mr. Pedersen stated, ████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ (SSF ¶ 113.)  The

- 6 -

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

parties however never got that far.  No MOU was negotiated, finalized or signed.
(SSF ¶ 123.)

### G.    The parties' subsequent actions reflect lack of agreement

#### 1.    Sport Dimension approached retailers to gauge market interest

To explore the feasibility of the arrangement, starting April 2009, Sport
Dimension made inquiries to gauge the market.  (SSF ¶¶ 124, 126.)  In April 2009,
Mr. Rios requested the ██████████████████████████████████
(SSF ¶¶ 124, 125.)  Mr. Rios also asked Todd Richards, Sport Dimension's VP of
sales to contact various potential customers in the U.S. regarding T4K's snow
bikes including ██████████████████ (SSF ¶126.)  Mr. Richards
followed up with preliminary calls but reported that T4K's price was an issue.
(SSF ¶ 127.)

Although Sport Dimension's representatives would usually get an in person
meeting with each potential buyer, in this case, Sport Dimension's phone calls
reflect its attempt to gauge the market to determine whether a relationship with
T4K was feasible.  (SSF 157.)

#### 2.    The parties part ways and cease communication

On July 10, 2009 Mr. Pedersen wrote stating that he assumes that nothing is
happening because of the lack of communication.  (SSF ¶128.)  Mr. Rios
responded that ██████████████████████████████████████
████ (SSF ¶ 60.)  Mr. Rios concludes by writing "[s]orry this did not work out
better for both of us, this is a good item, and maybe with a better retail climate we
will have better luck next year".  (SSF ¶ 149)  Mr. Rios also communicated that
there was no interest in the product and that ████████████████████
████████████████████████████████████████████████
████ (SSF ¶ 59).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 7 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

Following the parties' July 2009 email exchange, the parties ceased all communications until this T4K filed this lawsuit in December 2011.  (SSF ¶ 150.)

**3.     T4K assumed there was no agreement and sold directly in the U.S.**

Mr. Pedersen testified that by late 2009 he assumed Sport Dimension was not interested in pursuing the business.  (SSF ¶ 129.)  Within months of his last email with Mr. Rios, Mr. Pedersen began selling directly in the U.S., ██████████ ████████████ T4K marketed to what would have ████████████ ████████████ had the parties agreed to a distribution agreement.  (SSF ¶¶ 133, 135.).  As T4K admits in its moving papers, ████████████████ ████████████████████████████████████████████████ (SSF ¶¶133, 134)

**a.     T4K increased its sales efforts in the U.S.**

T4K admits that ██████████████████████████████ ██████████ (SSF ¶54).  T4K also marketed to other customers, ████████ ████████████████ which would have been ████████████████ had there been a distribution agreement.  (SSF ¶ 135.)  Moreover, in April 2010, T4K submitted a quote to ██████████████ Sport Dimension's customer.  (SSF ¶136; 137.)  In ██████████ T4K submitted a quote ████████████ ████████████████████████████████████████████████ (SSF ¶¶ 138;139).

**b.     T4K's snow bike sales have drastically increased since 2009**

Despite the fact that T4K did not sell new snow bike units to Costco U.S. in 2011, T4K consistently sold its snow bike to ████████████████████ ████████████ (SSF ¶140.)[3]  T4K's sales have increased since its 2009

---

[3] Sport Dimension has never sold its Yamaha snow bike to Costco Canada.  (SSF ¶ 151).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LITIOC/2071344v3/102566-0001

1   discussions with Sport Dimension.  In fact, ███████████████████████

2   ████████ despite not having Costco U.S. business (other than buy backs).  (SSF ¶ 103.)

3   **H.   Two Years After The Discussions Between The Parties, Sport**

4   **Dimensions Introduces the Yamaha Snow Bike**

5   **1.   Sport Dimension saw the need for a better product at a**

6   **lower price point**

7   Although T4K claims that Sport Dimension launched its own competitive

8   product within months, in actuality, Sport Dimension did so 2 years later.

9   In 2010, Sport Dimension began designing its own snow bike that it could

10  sell at a better price point.  (SSF ¶¶ 72, 152)

11  Thereafter, Sport Dimension tried to find a contact at Yamaha to discuss a

12  potential licensing agreement.  (SSF ¶¶ 79, 153).  Eventually, around February,

13  2011 Sport Dimension signed a "deal memo" with Yamaha to design and develop

14  its own snow bike.  (SSF ¶ 154.)  Sport Dimension entered into a licensing

15  agreement with Yamaha, and in 2011, launched a Yamaha Snow Bike.  (SSF ¶¶

16  141, 142.)  Sport Dimension offered its Yamaha Snow Bike to retailers in spring of

17  2011, for sale in stores during the 2011/2012 snow season.  (SSF ¶ 142).

18  **I.   T4K files this action when it loses a bid to Sport Dimension**

19  In spring 2011, Sport Dimension sold the snow bikes to Costco U.S. for the

20  2011/2012 winter season.  (SSF ¶ 73).  Afterwards, T4K promptly filed this action

21  against both Sport Dimension and Costco, claiming patent infringement among

22  other things.  (SSF ¶83.)  This was the first time Sport Dimension heard from T4K

23  since July of 2009.

24  **IV.   STANDARD OF REVIEW**

25  Federal Rule of Civil Procedure 56(c) is designed to isolate and dispose of

26  factually unsupported claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24

27  (1986).  Summary judgment shall be granted "if the movant shows that there is no

28  genuine dispute as to any material fact and the movant is entitled to judgment as a

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 9 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1   matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate against a

2   party who has failed "to make a showing sufficient to establish the existence of an

3   element essential to that party's case, and on which that party will bear the burden

4   of proof at trial." *Celotex*, 477 U.S. at 322.

5   **V.    ARGUMENT**

6        **A.    Plaintiff Is Not Entitled To Summary Judgment On Its Breach Of**

7             **Contract Claim**

8        To state a claim for breach of contract under California law, T4K must prove

9   (1) the existence of the contract; (2) plaintiff's performance or excuse for

10  nonperformance of a contract; (3) defendant's breach of the contract; and (4)

11  resulting damages. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830, 69 Cal.

12  Rptr. 321, 442 P.2d 377 (1968).

13       To prove the existence of a contract, T4K must prove: (1) that the contract

14  terms were clear enough that the parties could understand what each was required

15  to do; (2) that the parties agreed to give each other something of value; and (3) that

16  the parties agreed to the terms of the contract. CACI §302.  T4K must prove that

17  there is no genuine issue of material fact on each of these claims.  T4K cannot do

18  so for the following reasons.

19            **1.    The undisputed evidence shows that there was never a**

20                 **contract between the parties**

21       T4K claims that the March 2009 emails reflect a binding distribution

22  agreement.  (T4K Motion, DE 112, pp. 4-7).  The emails establish the opposite:

23  that there can be no contract as a matter of law.

24            **a.    The Contract Claim is Barred by the Statute of**

25                 **Frauds**

26       The statute of frauds requires contracts intended to be performed for more

27  than a year to be in writing and include all pertinent terms.  Cal Civil Code Section

28  1624 provides that an agreement that by its terms is not to be performed within a

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 10 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1   year is "invalid, unless they, or some note or memorandum thereof, are in writing

2   and subscribed by the party to be charged or by the party's agent." *Thommeny v.*

3   *Paramount Pictures Corp.*, No. CV 10-6951, 2011 U.S. Dist. LEXIS 80291 *9-11

4   (C.D. Cal. July 13, 2011) (granting summary judgment where benefits,

5   termination, and dispute resolution were material terms of the contract).

6         Here, T4K admits that there was no discussion to limit the contract period to

7   a year, and in fact, it expected Sport Dimension to continue to sell T4K's snow

8   bikes in the following 2010 snow season as well.  (SSF ¶ 130.)  Indeed, T4K seeks

9   damages for breach of contract based on hypothetical performance through 2015.

10  (SSF ¶ 156.)  Therefore, the contract needed to be in writing and include all

11  pertinent terms.  The March 2009 emails, however, plainly show that the parties

12  never discussed essential terms, such as duration or termination, and sublicensing,

13  and that they never finalized discussions regarding quantity, which customers are

14  "off limits", and market readiness, among other things.  (SSF ¶¶ 130-132, 158.)

15  Hence, as a matter of law, T4K's breach of contract claim is barred by the statute

16  of frauds.

17                    **b.      There Is No Valid Contract Because The Parties**

18                            **Intended the Contract To be Written and Signed**

19        In contract law, when an understanding between parties is contingent upon

20  entering into a definitive written agreement, the understanding is not binding until

21  the written agreement is actually executed.  *See Banner Entm't, Inc. v. Super. Ct.,*

22  62 Cal. App. 4th 348, 359 (1998*); Apablasa v. Merrit & Co.*, 176 Cal. App. 2d

23  719, 730 (1959) (stating that preliminary negotiations leading up to the execution

24  of a contract must be distinguished from the contract itself).

25        Fatal to T4K's attempt to portray the March 2009 emails discussions as a

26  binding contract is Mr. Pederson's statement that if the parties reached an

27  agreement, T4K would draft a MOU to be signed by the parties.  Mr. Pederson

28  states: ████████████████████████████████████████████

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 11 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1    ████████████████████████████████████████████

2    ██████████ (SSF ¶ 113.)[4]  He did not, and none were provided to Sport

3    Dimension.  (SSF ¶ 123.)  Given the parties' understanding that the contract would

4    be contingent upon entering into a signed MOU, there can be no valid contract

5    without one.

6              c.        **There Was No Meeting of The Minds on Material**

7                       **Terms**

8         For a valid contract, there must be an offer and acceptance on all material

9    terms.  *See* 1 B.E. Witkin, *Summ. of Cal. Law, Contracts* §§ 116-17 (2010);

10   *Banner Entm't v. Super Ct.,* 62 Cal. App. 4th 348, 357-58 (1998) ("there is no

11   contract until there has been a meeting of the minds on all material points.");

12   *Bustamante v. Intuit, Inc.,* 141 Cal. App. 4th 199, 215 (2006).

13        Here, there is no showing that there was meeting of the minds on key terms

14   of a distribution agreement.  In *Thommeny,* 2011 U.S. Dist. LEXIS 80291 *9-11,

15   the court granted summary judgment on plaintiff's breach of contract claim

16   because there was no meeting of the minds on the material terms of "benefits,

17   termination, and dispute resolution, were never discussed or agreed on by the

18   parties."  *see also Krasley v. Superior Court*, 101 Cal. App. 3d 425, 431 (Cal. App.

19   4th Dist. 1980) (granting a writ of mandate requiring the trial court to enter

20   summary judgment on the grounds that that contract at issue was unenforceable as

21   a matter of law because the parties failed to agree on key terms.)[5]

22   ─────────────────

     [4] Mr. Pedersen clarified that by ████████████████████████████
23   (SSF ¶122.)
     [5] T4K's MSJ cites cases that fail to support T4K's position that the parties' March
24   2009 correspondence could constitute a valid contact.  For example, in *E. & J.*
     *Gallo Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115, 1129 (E.D. Cal.
25   2006)(quoting *Westoil Terminals Co. v. Industrial Indemnity Co.*, 110 Cal. App.
     4th 139, 145-146 (2003)),  the parties entered into a written and signed distribution
26   agreement and both parties performed under the agreement for over 25 years.
27   Here, no material terms were discussed or finalized and no written agreement was
     prepared or signed.
28

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1    Similarly, the March 2009 emails, and the parties' conduct, do not reflect

2    material terms or rise to this level of clarity necessary to constitute "clear and

3    unambiguous" language sufficient to form a contract.

4    For instance, the parties never even discussed material terms such as

5    duration or termination, and sublicensing, and failed to finalize others regarding

6    quantity, which customers are "off limits," and market readiness.  (SSF ¶¶ 130-

7    132, 158.)  T4K cites to various statements by Sport Dimension as reflecting a

8    "mutual intent" to contract.  (DE 112 at 16).  To the contrary, they prove the

9    tentative nature of the discussions: ███████████████████████████████

10   ████████████████████████████████████████████████████████████████████

11   ██████████ (SSF ¶ 20); ██████████████████████████ (SSF ¶¶ 18, 19, 21)

12   (emphasis added).  Even T4K was cautious, stating ████████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████ (SSF ¶ 113.)    As

15   stated above, no MOU was offered or signed.  At most, the parties' discussions

16   were exploratory in nature regarding a potential re-distribution agreement, which

17   never came to fruition.

18   T4K also claims that Sport Dimension's comment on March 17, 2009, "good

19   to go" meant that the parties agreed to all necessary terms of a distribution

20   agreement – despite that they were never discussed or finalized.  In fact, the emails

21   prior to this comment plainly reveal, and Rios testified, that he was only "good to

22   go" on purchasing samples from T4K.  (SSF ¶¶ 116, 117).  T4K cannot transform

23   

24   In *Warehousemen's Union*, the parties sought to enter into a successor agreement
     to a collective bargaining agreement that had been in place for several years prior

25   (1981-1984).  821 F.3d 1348 at 1349.  Given the relationship between the parties,
     i.e., company and union, the creation of a contract was a foregone conclusion.  Of

26   course, no such relationship exists between T4K and Sport Dimension.
     Furthermore, it is without question that the new agreement in *Warehousemen's*

27   *Union* established a definite duration (1984-1986) and "[t]he company submitted
     its final offer for a new contract... the membership voted to accept the offer...

28   [and] [t]he company was advised of the acceptance." *Id.*  The factors which
     allowed the *Warehousemen's Union* court to find the existence of a contract are
     simply not present in this case.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 13 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1    this narrowly tailored comment into a binding contract whereby Sport Dimension

2    would be forced to indefinitely serve as T4K's distributor and not compete.

3        Finally, T4K claims that consideration was given when T4K offered ████████

4    ████████████████████████████ to Sport Dimension. (DE 112 at18-19.)  Providing

5    product information and pricing, however, fails to constitute "value" sufficient to

6    demonstrate a contract. *See* CACI 302.  If it did, every time a vendor pitches to a

7    potential customer with product information and discounted price, it would

8    constitute "consideration" sufficient to establish a contract.

9        T4K should not be permitted to mischaracterize the tentative email exchange

10   between the parties as a contract that would bind Sport Dimension to undefined

11   terms and terms not discussed, and effectively foreclose competition.

12           **d.**     **The Parties' Subsequent Conduct Demonstrates the**

13                  **Lack of Contract and Performance**

14       The history of this case is telling.  Instead of demonstrating the existence of

15   contract, as T4K contends, the parties' subsequent conduct shows that even T4K

16   did not believe a contract existed between the parties.

17       If so, T4K would have attempted to perform under the contract.  Instead,

18   when Sport Dimension stated the customers were uninterested in July 2009, T4K

19   ceased any communication with Sport Dimension, and within months, ████████████

20   ████████████████████████████ – which would have constituted breach of the

21   alleged U.S. distribution agreement with Sport Dimension.  Even T4K admits that

22   ████████████████████████████████████ (SSF ¶ 54).  To

23   justify its conduct, Mr. Pederson admitted that ██████████████████████████████

24   ████████████████████████████████████ (SSF ¶ 129).

25       The procedural history is also telling.  Had T4K believed a contract was

26   breached, it would have also asserted a breach of contract claim from the very

27   start.  Yet, it did not do so.  Instead, T4K claimed there was a contract for the first

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LITIOC/2071344v3/102566-0001

1   time in 2013, some four years after the alleged discussions and its direct sales to

2   the U.S., and more than a year after the filing of the original complaint.

3       T4K cannot establish that no disputed facts exist that the parties entered into

4   a contract or that it performed under the contract.

5           **e.**    **The Contract is Unenforceable under California**

6              **Statutory Bar Against Non-Compete Covenants**

7       It is considered a fundamental policy of the State of California that

8   agreements in restraint of competition are to that extent void. *See California*

9   *Business and Professions Code Section 16600; see also Color Match Pool Fittings,*

10  *Inc. v. Aquastar Pool Prods.*, No. CV 06-781, 2007 U.S. Dist. LEXIS 98094, *9-

11  10 (C.D. Cal. Aug. 10, 2007) (granting summary judgment to defendants and

12  noting that with respect to the noncompetition clause of the distribution agreement,

13  plaintiffs "cannot claim fraud in the inducement as to a provision which has been

14  declared void and unenforceable by state statute", *i.e.* 16600).  T4K's contract

15  claim largely depends on its allegation that the contract prohibited Sport

16  Dimension from (1) selling a competitive snow bike at all, or (2) selling Sport

17  Dimension's snow bike to Costco when it was allegedly off limits pursuant to the

18  agreement.  In other words, the distribution agreement with T4K prohibited Sport

19  Dimension from offering its own Yamaha Snow Bike to anyone, anywhere, or

20  alternatively, to Costco U.S. or Costco Canada, the biggest potential customer of

21  snow bikes.  This would effectively foreclose Sport Dimension from competing in

22  the snow bike business.  Even if Sport Dimension agreed to such oppressive and

23  restrictive covenant, any such covenant would be rendered void under Cal. Bus. &

24  Prof. Code Section 16600.

25          **2.**    **There is No Evidence of Breach**

26      T4K claims Sport Dimension breached the alleged agreement between the

27  parties by: (1) not using best efforts to sell T4K's snow bikes; (2) offering a

28  competitive snow bike; and (3) selling Sport Dimension's snow bike to Costco

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1    ████████████████████████████████████ (DE 112 at 21-
2    25.)   These theories fail for the following reasons.

     **a.    There was no obligation to use best efforts**

4         T4K spends nearly two pages outlining how Sport Dimension failed to use
5    commercially reasonable efforts to sell the snow bikes, to distract from the
6    fundamental fact that Sport Dimension had no obligation to sell T4K's snow bikes
7    at all.  In fact, the March 2009 emails plainly show that Sport Dimension never
8    agreed to use "commercially" reasonable efforts or "best efforts" to sell T4K's
9    Snow Bikes.

10        Moreover, although T4K complains about Sport Dimension's failure to
11   make satisfactory efforts to sell T4K's snow bikes, there was a simple reason for
12   this: Sport Dimension was not trying to sell T4K's snow bikes, it was simply
13   gauging market interest – which one can reasonably expect from anyone
14   considering the feasibility of a distribution arrangement.  (SSF ¶¶ 124, 126, 157)

15        T4K's subsequent conduct reveals that it was aware of this, and that there
16   was no contract.  When Sport Dimension informed T4K that no buyers were
17   interested in purchasing T4K's products in 2009, T4K never contacted Sport
18   Dimension again.  (SSF ¶ 129.)  Had T4K believed Sport Dimension was
19   perpetually obligated to distribute its snow bikes, T4K would have at least
20   contacted Sport Dimension the next selling season instead of pursuing the U.S.
21   accounts itself.

     **b.    There can be no breach based on selling competing
            snow bike**

24        There can be no breach for selling competing snow bikes because the parties
25   never discussed Sport Dimension's ability to sell a competing snow bike.  Indeed,
26   T4K's President admitted that █████████████████████████████████████
27   ████████  (SSF ¶ 148.)  Also, the March 2009 emails show that T4K never
28   confirmed whether ████████████████████  In a March 9 email, Mr. Pedersen

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LITIOC/2071344v3/102566-0001

1  stated that ███████████████████████████████████████████
2  ██████████████████████ (SSF ¶ 112.)  When on March 26, 2009 Mr.
3  Rios asked for clarification on ██████████ Mr. Pedersen responded that ██████████
4  ████████████████████ (SSF ¶¶ 119, 120.)  Mr. Rios replied and asked that
5  he advise as soon as he could about ████████████ (SSF ¶121.)  Mr. Pedersen never
6  did.

7      In any case, even if Sport Dimension did agree to not sell competing snow
8  bikes, as discussed above, the agreement would be unenforceable pursuant to Cal.
9  Bus. & Prof. Code Section 16600.

10  **B.    T4K FAILS TO PRESENT EVIDENCE OF CAUSATION**

11      T4K's Motion should be denied because there is no evidence that T4K was
12  harmed by Sport Dimension's alleged breach of contract.

13      T4K claims that it lost its sales to Costco.  There is no evidence that T4K
14  lost this business as a result of Sport Dimension.  As discussed above, to the extent
15  T4K bases its damages claim on Sport Dimension's offer of a competing product,
16  it fails as illegal restraint on trade.  To the extent T4K bases its damages claim on
17  Sport Dimension's failure to offer T4K's own snow bike, that also fails because
18  selling T4K's snow bikes to ██████ was allegedly not permissible.

19      Furthermore, T4K cannot demonstrate that Sport Dimension's alleged
20  breached caused damage or harm, particularly when T4K's snow bike business
21  subsequently increased, ████████████████████████████████████
22  ████████████████████████████████████████ (SSF ¶¶
23  103, 133, 134, 54 ).

24  **VI.   CONCLUSION**

25      Based on the foregoing, T4K cannot maintain a claim for breach of contract
26  and Defendant Sport Dimension respectfully submit that this Court deny T4K's
27  Motion for Summary Judgment.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 17 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001

1  Dated:  May 13, 2013                    Respectfully submitted,

2                                          STRADLING YOCCA CARLSON & RAUTH
                                           A Professional Corporation
3

4                                          By: /s/ Sarah S. Brooks
                                               Yuri Mikulka
5                                              Sarah S. Brooks
                                               Attorneys for Defendant SPORT
6                                              DIMENSIONS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 18 -

OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
LITIOC/2071344v3/102566-0001