1  **GREENBERG TRAURIG, LLP**
   Valerie W. Ho (SBN 200505) (hov@gtlaw.com)
2  Michael S. Lawrence (SBN 255897) (lawrencem@gtlaw.com)
   Robert S. Freund (SBN 287566) (freundr@gtlaw.com)
3  1840 Century Park East, Suite 1900
   Los Angeles, California 90067
4  Telephone: (310) 586-7700
   Facsimile: (310) 586-7800
5
6  Attorneys for Plaintiff
   Tech-4-Kids, Inc.
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **WESTERN DIVISION**

11

12 | TECH-4-KIDS, INC., | CASE NO. 2:12-CV-06769-PA-AJW |

13              Plaintiff,          **PLAINTIFF TECH-4-KIDS, INC.'S**
14 vs.                              **EVIDENTIARY OBJECTIONS TO**
                                    **SPORT DIMENSION, INC.'S**
15 SPORT DIMENSION, INC.,           **SEPARATE STATEMENT**

16              Defendant.          [Plaintiff Tech-4-Kids, Inc.'s Reply in
17                                  Support of Its Motion for Partial
                                    Summary Judgment, Response to Sport
18 SPORT DIMENSION, INC.,           Dimension's Separate Statement of
                                    Genuine Issues, and Declaration of
19              Counterclaimant,    Robert Freund, Filed Concurrently
20 vs.                              herewith]

21 TECH-4-KIDS, INC.,
                                    DATE:        June 3, 2013
22              Counterdefendant.   TIME:        1:30 p.m.
                                    CTRM:        15
23
24                                  Judge: Honorable Percy Anderson
25
26
27      ~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~
28

                                    1

1   Pursuant to this Court's Scheduling Order (Dkt. 50), Plaintiff and Counter-
2   Defendant Tech-4-Kids, Inc. ("T4K") hereby submits the following evidentiary
3   objections to Defendants Sport Dimension, Inc. ("SD") and Kurt Rios' ("Rios")
4   (collectively, "Defendants") Separate Statement of Additional Material Facts in
5   Opposition to T4K's Motion for Partial Summary Judgment.

6

7   ## EVIDENTIARY OBJECTIONS

8   Separate Statement Paragraph 16:  In disputing Paragraph 16, SD mischaracterizes
9   the contents of Brooks Decl. Ex. 9. Fed. R. Evid. 403.  In the same document, Pedersen
10  informs Rios that "I also want to be clear that if we were to consider this, our current acct
11  base would be off limits unless there was some compelling reason to consider otherwise.
12  The value add for us is getting better penetration into the US market beyond what we
13  have been able to achieve." (*See* Brooks Decl. Ex. 9, at SDI 001226.)  This supports
14  T4K's contention, in Paragraph 16 that "Pedersen explained to Rios that Tech-4-Kids
15  would only enter into a distribution agreement that exposed it to new U.S. retailers as
16  opposed to retailers with whom Tech-4-Kids had a preexisting relationship."

17

18  Separate Statement Paragraph 23:  In disputing Rios's acceptance of the specific
19  prices, SD mischaracterizes the contents of Lawrence Decl. Ex. G (SDI 001243). Fed. R.
20  Evid. 403.  In the expanded version of the same email exchange, Rios states "Brad, we
21  are good to go.  We accept your new higher prices listed below…". (Brooks Decl. Ex.
22  10.) The plain interpretation of the document reflects Rios's acceptance of the proposed
23  pricing.

24

25  Separate Statement Paragraph 25:  Mr. Rios's explanation that he believed that he
26  was accepting the price only on snow bike samples is irrelevant.  A party's belief as to
27  the terms of an agreement in hindsight is irrelevant.  *See Founding Members of the*
28  *Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th

2

944, 955 (2003) ("parties' undisclosed intent or understanding is irrelevant to contract interpretation.). Fed. R. Evid. 401, 402, 403. SD, and Rios's testimony, also mischaracterizes the underlying document. There is no indication that Rios was limiting his acceptance of the price terms to only the samples. The discussion between the parties clearly reflects a negotiation for the sale of the Snow Motos as part of a distribution agreement. Fed. R. Evid. 403.

**Separate Statement Paragraph 26**: SD misstates the evidence. Fed. R. Evid. 403. Pedersen states "your list is correct except as it stands now we will also handle Costco." This obviously included Costco U.S. as Rios had previously included Costco Canada in his list. The correction would have only been warranted so that Pedersen could clarify that the list should include Costco generally and not just be limited to Costco Canada as Rios had attempted to do.

**Separate Statement Paragraph 27**: SD misstates the evidence. Fed. R. Evid. 403. Pedersen states "your list is correct except as it stands now we will also handle Costco." This obviously included Costco U.S. as Rios had previously included Costco Canada in his list. The correction would have only been warranted so that Pedersen could clarify that the list should include Costco generally and not just be limited to Costco Canada as Rios had attempted to do.

**Separate Statement Paragraph 28**: SD misstates the evidence. Fed. R. Evid. 403. Pedersen states "your list is correct except as it stands now we will also handle Costco." This obviously included Costco U.S. as Rios had previously included Costco Canada in his list. The correction would have only been warranted so that Pedersen could clarify that the list should include Costco generally and not just be limited to Costco Canada as Rios had attempted to do. T4K further objects to Defendant's reliance on Brooks Ex. 12 on the ground that SD mischaracterizes the contents of the document and lacks

foundation regarding the meaning of the document.  It is unclear what Pedersen is responding to when he says that he will "revert back" regarding Costco.  Moreover, Rios's statement on March 26 is irrelevant to the parties' clear agreement regarding the terms of the distribution agreement as reflected bon March 17, 2009.

Separate Statement Paragraph 29:  SD misstates the evidence.  Fed. R. Evid. 403.  Pedersen states "your list is correct except as it stands now we will also handle Costco."  This obviously included Costco U.S. as Rios had previously included Costco Canada in his list.  The correction would have only been warranted so that Pedersen could clarify that the list should include Costco generally and not just be limited to Costco Canada as Rios had attempted to do.

Separate Statement Paragraph 31:  Pedersen's Declaration stated clearly that in his "more than 15 years of experience in the toy and snow goods business, multi-year distribution relationships are standard.  As such, our outside sales representatives and distributors generally work under multi-year arrangements."  (Pedersen Decl. ¶ 8.)  Smick confirmed the multi-year nature of such sales and distribution relationships in his deposition.  SD did not present any evidence to dispute the accuracy of this evidence.

Separate Statement Paragraph 39:  SD misstates Richards' testimony.  Fed. R. Evid. 403.  In addition to the excerpts quoted by SD, Richards also testified as follows:

Q: And can you be more specific about that portion of your conversation with Mr. Rios?

A: ...specifics I guess would be . . . what accounts we potentially could sell this to which I identified and contacted."

Q: And what did you discuss in terms of . . . how you would have had a positive impact on the retailers' reactions?

1   A: What I recall is discussing the fact that the price that we were trying to

2   offer the item at was too high.

3   (Freund Decl. Ex. D  (Richards Tr. 115:21-116:19).)

4   **Separate Statement Paragraph 43**:  Brooks Decl. Ex. 5 (Richards Tr. 110:12-17) is

5   vague and ambiguous, especially as to the term "touching base with the buyer" and

6   "might have interest."  Moreover, Richards testimony as to how he would characterize

7   his own conduct is inadmissible hearsay because SD is relying on it for the truth of the

8   matter asserted. Fed. R. Evid. 801, 802, 1002.

9

10   **Separate Statement Paragraph 49**:  SD misstates the substance of Brooks Decl. Ex.

11   28. Fed. R. Evid. 403.  In response to the question "Does Sport Dimension need Tech-4-

12   Kids's permission to sell Tech-4-Kids's products in the United States," Lin responded

13   "Normally, yes." (Brooks Decl. Ex. 28 (Lin Tr. 240:13-18).)

14

15   **Separate Statement Paragraph 52**:  The phrases "testing market interest" and "not

16   offering Tech-4-Kids' product for sale" are vague and ambiguous.  The phrase "gauge

17   market interest" is also vague and ambiguous.  Rios and Richards statements that they

18   were purportedly "gauging market interest" is hearsay because SD is relying upon those

19   statements for the truth of the matter asserted.  Fed. R. Evid. 801, 802.  T4K further

20   objects to Brooks Decl. Ex. 28 because Lin's statement about what steps SD goes through

21   to sell a product is not relevant to whether SD needed T4K's permission to sell the Snow

22   Moto.

23

24   **Separate Statement Paragraph 53**:  SD's response is argumentative and misstates

25   the record. Fed. R. Evid. 403.  Costco U.S. was specifically identified as a retailer that

26   would be "off limits" to Sport Dimension and that T4K was free to pursue under the

27   distribution agreement.  As established in the Pedersen Decl. ¶ 11, T4K reduced its sales

28   to U.S. retailers that were not specifically identified as "off limits" to SD.  T4K did so to

allow SD to pursue those Snow Moto sales as discussed by the parties under the distribution agreement.  T4K further objects to the references to Ex. 4, Ex. 28, and Ex. 29 because they do not remotely support the proposition for which they are cited.

Separate Statement Paragraph 63:  SD mischaracterizes Brooks Decl. Ex. 5 which it claims rebuts the fact that "Richards testified that he never even saw the sample Snow Motos sent by Tech-4-Kids."  His exact testimony which is cited by SD to rebut this is "Q. In March 2009 are you aware of Sport Dimension obtaining possession of samples of Tech-4-Kids' snow bikes?  A.  No.  Q.  So you never saw a Tech-4-Kids snow bike at Sport Dimension's offices? . . . A. Not that I recall."  Despite SD's contention to the contrary, this testimony directly support's T4K's factual assertion that Richards never saw a sample snow bike before trying to sell it.

Separate Statement Paragraph 64:  The Richards deposition testimony cited by Sport Dimension does not at all stand for the proposition for which SD cited it.  SD asserts that it supports the proposition that "[t]he fact that Sport Dimension sometimes provided [marketing] materials does not mean it always does so."  The cited Richards deposition testimony relates to the fact that he generally presents a product "face-to-face with a buyer" and does not reference marketing materials at all.

Separate Statement Paragraph 65:  The fact asserted was that "Rios" offered the Snow Moto to only a single customer.  SD disputes this fact on the ground that Richards also offered the Snow Moto to additional customers.  Of course, this fails to respond to the factual assertion which related only to Rios, not to Richards.

Separate Statement Paragraph 68:  SD cites Pedersen's testimony, that there was no formal MOU, for the proposition that "SD was not obligated to sell Snow Motos."  Pedersen's testimony has nothing to do with SD's distribution obligation which was

1    memorialized in the March 2009 email between Rios and Pedersen.  (*See* Brooks Ex. 10.)

2    Moreover, the Pedersen testimony would also not be the best evidence of the agreement

3    between the parties which is memorialized in Brooks Ex. 10.  Fed. R. Evid. 106, 403,

4    901, 1002.  Rios repeatedly testified to SD's obligations under the March 2009 email.

5    *See* Fed. R. Evid. 106.

6

7        Separate Statement Paragraph 70:  In response to the assertion that SD never

8    informed T4K of SD's intention to develop a competing snow bike, SD cites Rios's

9    January 2013 Declaration for the proposition that "Sport Dimension was not

10   contemplating developing a competing product during the time the parties were having

11   discussions."  However, Rios says nothing of the sort in the cited paragraph.  Instead, he

12   simply states that "in 2009 and 2010, Plaintiff continued to sell its snow bike to Costco.

13   Two years after we had ceased discussions, Sport Dimension began discussions with

14   Yamaha Corporation to design and develop its own snow bikes.  In 2011, Sport

15   Dimension began offering snow bikes . . . which were designed in cooperation with

16   Yamaha."

17       Rios's Declaration fails to establish (1) when Sport Dimension first considered

18   competing with T4K; and (2) when SD began developing its competing product.

19   However, the factual record demonstrates that as early as January 2010, SD had already

20   offered a competing snow bike to Costco Canada.  SD's response to Paragraph 70 is,

21   therefore, misleading.  Fed. R. Evid. 403.  It is also not the best evidence of when SD

22   began competing with T4K which would be memorialized in contemporaneous

23   documents.  Fed. R. Evid. 106, 403, 901, 1002.  Finally, even if Rios's Declaration could

24   be interpreted to stand for the proposition for which it is cited, it would be inadmissible

25   hearsay because it is offered for the truth of the proposition that SD did not decide to

26   compete with T4K while the parties were still in discussions.  Fed. R. Evid. 801, 802.

27

28

Separate Statement Paragraph 71:  The cited Pedersen, Weenink, and Smick testimony stands only for the proposition that 4K does not engage in the practice of having distributors sign confidentiality agreements.  This testimony fails to support SD assertion that T4K did not provide it with confidential information. Fed. R. Evid. 403. SD also cites the January 2013 Rios Declaration to support the assertion that SD was not T4K's distributor.  Rios's Declaration is inadmissible hearsay. Fed. R. Evid. 801, 802. It is also irrelevant because a party's belief as to the terms of an agreement in hindsight is irrelevant. *See Founding Members*, 109 Cal. App. 4th at 955 ("parties' undisclosed intent or understanding is irrelevant to contract interpretation.). The Rios Declaration is also not the best evidence available to establish the parties' contractual relationship. Fed. R. Evid. 106, 901, 1002.

Separate Statement Paragraph 72:  SD cites the January 2013 Rios Declaration to support the assertion that SD was not T4K's distributor.  Rios's Declaration is inadmissible hearsay.  Fed. R. Evid. 801, 802.  It is also irrelevant because a party's belief as to the terms of an agreement in hindsight is irrelevant.  *See Founding Members*, 109 Cal. App. 4th at 955 ("parties' undisclosed intent or understanding is irrelevant to contract interpretation.). The Rios Declaration is also not the best evidence available to establish the parties' contractual relationship.  Fed. R. Evid. 106, 901, 1002.

Separate Statement Paragraph 76: Richards' statement regarding SD's margin requirements is inadmissible hearsay.  Fed. R. Evid. 801, 802.

Separate Statement Paragraph 77:  SD cites the January 2013 Rios Declaration to support the assertion that SD was not T4K's distributor.  Rios's Declaration is inadmissible hearsay.  Fed. R. Evid. 801, 802.  It is also irrelevant because a party's belief as to the terms of an agreement in hindsight is irrelevant.  *See Founding Members*, 109 Cal. App. 4th at 955 ("parties' undisclosed intent or understanding is irrelevant to

1  contract interpretation.). The Rios Declaration is also not the best evidence available to

2  establish the parties' contractual relationship.  Fed. R. Evid. 106, 901, 1002.

3

4      Separate Statement Paragraph 80:  SD cites Brooks Decl. Ex. 17 to establish that

5  T4K did not rely on SD to make U.S. sales.  Yet, Weenink testified that he did not

6  attempt to sell to the vast majority of retailers listed on the document. (Freund Decl. Ex.

7  G (Weenink Tr. 131:17-136:9).).  Accordingly, SD mischaracterizes the evidence. Fed.

8  R. Evid. 403.  The document cited, therefore, does not stand for the proposition for which

9  it is cited and is also not the best evidence to determine T4K's reliance on SD's

10  agreement to distribute the Snow Moto.  Fed. R. Evid. 106, 901, 1002.

11

12      Separate Statement Paragraph 81:  SD cites the Nelson Declaration for the

13  proposition that "Costco U.S. chose not to purchase T4K's snow bike for a variety of

14  reasons" and not as a result of SD's competing Yamaha Snow bike.  Nelson's statement

15  is inadmissible hearsay.  Fed. R. Evid. 801, 802.  It is also conclusory and lacks

16  foundation.  It also fails to establish that SD was not a direct cause of T4K's loss of

17  business. Fed. R. Evid. 403.

18

19      Separate Statement Paragraph 82:  SD cites Weenink's deposition for its argument

20  that T4K sustained no damage.  Weenink's testimony relates to the fact that sales have

21  gone up over the past four years.  However, this is irrelevant to the question of damages

22  which could be present despite a revenue increase.  As demonstrated in T4K's damages

23  expert report, T4K has and continues to lose revenue as a result of SD's breach of

24  contract and other tortious conduct. (*See* Brooks Ex. 7, p. 16.)

25

26      Separate Statement Paragraph 83:  When and where T4K filed the initial complaint

27  in this matter, and the claims asserted in it, are irrelevant to T4K's Motion for Partial

28  Summary Judgment regarding its pending breach of contract claim.  Fed. R. Evid. 401,

402, 403.  Moreover, the initial complaint is no longer operative as T4K filed its Second Amended Complaint ("SAC") upon the Court's grant of leave to do so.

Separate Statement Paragraph 84:  The claims included in, and dropped from the first amended complaint is irrelevant to T4K's ground that the first amended complaint is irrelevant as it is no longer operative in this case. Fed. R. Evid. 401, 402, 403.  The date of filing of the first amended complaint is also irrelevant because a party's belief as to the terms of an agreement in hindsight is irrelevant. *See Founding Members*, 109 Cal. App. 4th at 955 ("parties' undisclosed intent or understanding is irrelevant to contract interpretation.). The Rios Declaration is also not the best evidence available to establish the parties contractual relationship.

Separate Statement Paragraph 85:  The filing date of the SAC is irrelevant to any issue raised in Plaintiff's Motion aside from the fact that T4K seeks summary judgment on the breach of contract claim asserted in the SAC.  Fed. R. Evid. 401, 402, 403. Moreover, although the second amended complaint was entered on March 4, 2013, Tech-4-Kids had moved to amend on January 14, 2013. (Dkt. 56.)

Separate Statement Paragraph 86:  Whether the claims asserted in the SAC were new is irrelevant to any issues raised in Plaintiff's Motion aside from the fact that T4K seeks summary judgment on the breach of contract claim asserted in the SAC.  Fed. R. Evid. 401, 402, 403.

Separate Statement Paragraph 87:  The claims that the SAC "added" are irrelevant to any issues raised in Plaintiff's Motion aside from the fact that T4K seeks summary judgment on the breach of contract claim asserted in the SAC.  Fed. R. Evid. 401, 402, 403.

Separate Statement Paragraph 88:  The claims that the SAC "added" are irrelevant to any issues raised in Plaintiff's Motion aside from the fact that T4K seeks summary judgment on the breach of contract claim asserted in the SAC.  Fed. R. Evid. 401, 402, 403.

Separate Statement Paragraph 89:  The amount of time that SD has been in business irrelevant to any issues raised in Plaintiff's Motion.  Fed. R. Evid. 401, 402, 403.

Separate Statement Paragraph 90:  Aside from the Yamaha Snow Bike, SD's products are irrelevant to any issues raised in Plaintiff's Motion.  Fed. R. Evid. 401, 402, 403.

Separate Statement Paragraph 91:  The year that SD began selling snow related products is irrelevant to any issues raised in Plaintiff's Motion.  Fed. R. Evid. 401, 402, 403.  Moreover, the timing of Tech-4-Kids' formation or that Tech-4-Kids was "established" after Sport Dimension began selling unspecified "snow products" is irrelevant to any issue raised in Defendants' motion.  Fed. R. Evid. 401, 402.  It is undisputed that Sport Dimension did not begin selling the snow bikes at issue until after it had seen Tech-4-Kids' products and had entered into a distribution agreement with Tech-4-Kids.

Separate Statement Paragraph 92:  Objection on the ground that the term "relationships" is misleading, vague and ambiguous so that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, and misleading the court.  Fed. R. Evid. 402, 403.

Separate Statement Paragraph 93:  Objection on the ground that the term "relationships" is misleading, vague and ambiguous so that its probative value is

11

substantially outweighed by the danger of unfair prejudice, confusion of the issue, and misleading the court. Fed. R. Evid. 403.

Separate Statement Paragraph 93: The term "relationship" in this context is vague and ambiguous. As used in this context the phrase is misleading, confusing and prejudicial. Fed. R. Evid. 403. Moreover, whether SD had relationships with retailers prior to its initial contact with T4K is irrelevant to any issues raised in Plaintiff's Motion.

Separate Statement Paragraph 94: T4K's location and the amount of time that it has been in business is irrelevant to any issues raised in Plaintiff's Motion. Fed. R. Evid. 401, 402, 403. Moreover, the timing of Tech-4-Kids' formation or that Tech-4-Kids was "established" after Sport Dimension began selling unspecified "snow products" is irrelevant to any issue raised in Defendants' Motion. Fed. R. Evid. 401, 402. It is undisputed that Sport Dimension did not begin selling the snow bikes at issue until after it had seen Tech-4-Kids' products and had entered into a distribution agreement with Tech-4-Kids.

Separate Statement Paragraph 97: When T4K was "established" and whether SD had been selling snow products prior to that time is irrelevant to any issue raised in Defendants' Motion. Fed. R. Evid. 401, 402, 403. Moreover, the timing of Tech-4-Kids' formation or that Tech-4-Kids was "established" after Sport Dimension began selling unspecified "snow products" is irrelevant to any issue raised in Defendants' Motion. Fed. R. Evid. 401, 402. It is undisputed that Sport Dimension did not begin selling the snow bikes at issue until after it had seen Tech-4-Kids' products and had entered into a distribution agreement with Tech-4-Kids.

Separate Statement Paragraph 99: The Rios testimony that exists in the record is far more detailed and describes the "snow bike" as being "a tri-ski design of sled, metal

1    frame, adjustable seat, handlebars licensed, nose piece, suspension, twin-tip skis, tow

2    rope, licensed graphics." (Brooks Decl. Ex. 2 at 67:9-68:9). Fed. R. Evid. 106, 403, 901,

3    1002.

4

5        Separate Statement Paragraph 100:  Whether SD intended to design the Yamaha

6    snow bike as to look differently than T4K's snow bikes is irrelevant because (1) the

7    Yamaha still does look almost identical to T4K's snow bikes; and (2) the extent to which

8    the bikes were intended to be similar in appearance is irrelevant to any issue raised in

9    Defendants' Motion. Fed. R. Evid. 401, 402, 403.

10

11       Separate Statement Paragraph 101:  Whether the Yamaha snow bike is covered by

12   a patent is irrelevant to any issue raised in Defendant's Motion. Fed. R. Evid. 401, 402,

13   403.  Indeed, whether the Yamaha was covered by a patent or not, SD and T4K still

14   entered into a distribution agreement with SD breached in a number of material ways.

15

16       Separate Statement Paragraph 102: The best evidence of the parties discussions,

17   and the complete contract terms discussed and agreed upon by the parties, are set forth in

18   the March 2009 email exchange between Rios and Pedersen. Fed. R. Evid. 106, 403, 901,

19   1002.

20

21       Separate Statement Paragraph 103:  T4K suffered lost sales to Costco U.S. and

22   other retailers as the result of SD's conduct.  (SUF ¶ 82).  Accordingly, this statement

23   lacks foundation, is argumentative and mischaracterizes testimony.  Fed. R. Evid. 106,

24   403, 901, 1002.

25

26       Separate Statement Paragraph 104:  Whether SD and T4K were competitors bears

27   no relevance to the question of whether the two parties entered into an agreement or

28   whether SD breached that agreement.

Separate Statement Paragraph 112:  This is a mischaracterization of the document which later indicates that Pedersen clarified that "your list is correct except as it stands now we will also handle Costco" meaning Costco U.S.  Fed. R. Evid. 403.

Separate Statement Paragraph 114:  The statement misstates the contents of the document because the email exchange indicates that Rios expressly agreed that SD would try to sell as much as it could and that Pedersen accepted this counteroffer.  Fed. R. Evid. 403.  The email exchange also cannot be used to prove the truth of the matters it asserts. Fed. R. Evid. 802, 1002.

Separate Statement Paragraph 116:  The Separate Statement mischaracterizes the full contents of Exhibit 6 and is argumentative.  Fed. R. Evid. 403, 802, 1002.  The entirety of Rios's statement was "We are good to go. We accept your new higher prices listed below along with $3.00 service fee for shipping samples."

Separate Statement Paragraph 117:  Mr. Rios's explanation that he believed that he was accepting the price only on snow bike samples is irrelevant.  A party's belief as to the terms of an agreement in hindsight is irrelevant. *See Founding Members*, 109 Cal. App. 4th at 955 ("parties' undisclosed intent or understanding is irrelevant to contract interpretation.). Fed. R. Evid. 401, 402, 403.

Separate Statement Paragraph 118:  The Separate Statement mischaracterizes, in argumentative fashion, the specific contents of the email exchange between the parties. Fed. R. Evid. 403.  The email exchange also cannot be used to prove the truth of the matters it asserts.  Fed. R. Evid. 802, 1002.

Plaintiff Tech-4-Kids, Inc.'s Evidentiary Objections to Defendants' Separate Statement

1   Separate Statement Paragraph 119: This statement lacks foundation, is
2   argumentative and mischaracterizes the content of Exhibit 7 because Pedersen had
3   already told Rios on multiple occasions that Costco was an off-limits account and Rios
4   obviously understood this or he would not have sent the March 26, 2009 email to
5   Pedersen.  (Lawrence Decl. Ex. G (SDI 001240-47).)

6

7   Separate Statement Paragraph 120: This statement mischaracterizes the contents
8   of Exhibit 11 because the document does not reflect the specific question to which
9   Pedersen is responding.  Fed. R. Evid. 106, 403, 901.

10

11   Separate Statement Paragraph 121: This statement lacks foundation, is
12   argumentative and mischaracterizes the content of Exhibit 13 because Pedersen had
13   already told Rios on multiple occasions that Costco was an off-limits account and Rios
14   obviously understood this or he would not have sent the March 26, 2009 email to
15   Pedersen. Fed. R. Evid. 403, 802, 901, 1002.

16

17   Separate Statement Paragraph 122: This statement lacks foundation and misstates
18   the evidence because Pedersen testified that the email chain itself functioned as the MOU
19   between the parties because it contained all of the material terms discussed, including
20   products, price, accounts, quantity, and marketing support. Fed. R. Evid. 106, 901.

21

22   Separate Statement Paragraph 124: This statement lacks foundation, and the email
23   exchange cannot be used to prove the truth of the matters it asserts. Fed. R. Evid. 802,
24   901.

25   Separate Statement Paragraph 125: This statement lacks foundation, and the email
26   cannot be used to prove the truth of the matters it asserts. No evidence has been produced
27   by SD or Sam's Club indicating that Sam's Club (division of Wal-Mart) was interested in
28   a 100 club test. Fed. R. Evid. 802, 901.

Separate Statement Paragraph 126:  This statement cannot be used to prove the truth of the matter it asserts. Fed. R. Evid. 802.

Separate Statement Paragraph 127:  This statement lacks foundation, and the email cannot be used to prove the truth of the matters it asserts. Fed. R. Evid. 802, 901.

Separate Statement Paragraph 129:  This statement references incomplete testimony and mischaracterizes the testimony because Pedersen expected Rios to honor his obligations under the contract but at some point had to mitigate. Fed. R. Evid. 106, 403.

Separate Statement Paragraph 130:  Whether the parties discussed the "time frame" of a "potential agreement" is irrelevant because duration is not required for contract formation. This statement references incomplete testimony and mischaracterizes the testimony because Mr. Rios said "Sorry this did not work out better for both of us, this is a good item, and maybe with a better retail climate we will have better luck next year." Fed. R. Evid. 106, 402, 403.

Separate Statement Paragraph 131: Whether the parties discussed "an agreement regarding termination" is irrelevant because duration or termination is not required for contract formation. This statement references incomplete testimony and mischaracterizes the testimony. Fed. R. Evid. 106, 401, 402, 403.

Separate Statement Paragraph 132:  This statement and vague and ambiguous as to the term "key term." Whether Rios agreed to the "minimum purchase quantity" is irrelevant to the formation of the contract at issue. This statement is argumentative, references incomplete testimony, and mischaracterizes the testimony because after Rios

16

1   rejected Pedersen's request for a guaranteed minimum of 3,200 pieces, Pedersen
2   increased the wholesale pricing and Rios accepted this new pricing and said he would sell
3   as many units as possible.

4

5       <u>Separate Statement Paragraph 135</u>:  This statement lacks foundation and misstates
6   the evidence because T4K did not approach these customers.  Exhibit 17 was merely a
7   wish list of all potential customers who could be interested in snow products.  Weenink
8   testified that he only focused on the customers who the parties would be approached by
9   T4K, e.g., BJ's and Dick's.  Fed. R. Evid. 403, 901.

10

11       <u>Separate Statement Paragraph 136</u>:  This statement lacks foundation and is
12   irrelevant to the extent that SD relies on the referenced document to show there was no
13   contract formed in March 2009. SD was entitled to mitigate damages resulting from
14   T4K's breach.  Fed. R. Evid. 403.

15

16       <u>Separate Statement Paragraph 137</u>:  This document lacks foundation and the
17   document cannot be used to prove the truth of the matters it asserts. That Blain bought
18   snow bikes from SD in 2012 is irrelevant except to show breach because there is no
19   evidence that SD had offered T4K's snow bikes to Blain in 2009, 2010 or 2011.  Fed. R.
20   Evid. 403.

21

22       <u>Separate Statement Paragraph 138</u>:  This document lacks foundation and is
23   irrelevant to the extent SD relies on it to show there was no contract formed in March
24   2009.  SD was entitled to mitigate damages resulting from T4K's breach.  Fed. R. Evid.
25   403.

26

27

28

1    <u>Separate Statement Paragraph 139</u>:  This statement lacks foundation, and the

2    document cannot be used to prove the truth of the matters it asserts. Fed. R. Evid. 802,

3    901.

4

5    <u>Separate Statement Paragraph 143</u>:  This statement is vague and ambiguous as to

6    the term "key terms." Fed. R. Evid. 403.

7

8    <u>Separate Statement Paragraph 144</u>:  This statement is irrelevant because it is the

9    *promise* underlying T4K's promissory estoppel claim that is based on the March 2009

10   email chain. The best evidence of T4K's claim is contained in the Second Amended

11   Complaint.  Fed. R. Evid. 401, 402, 403, 1002.

12

13   <u>Separate Statement Paragraph 146</u>:  It is irrelevant that T4K "took a run" at selling

14   foam sleds to Costco. Fed. R. Evid. 401, 402, 403.

15

16   <u>Separate Statement Paragraph 147</u>:  It is irrelevant that Weenink saw a "snow bike

17   type product" in Europe. This statement misstates the evidence because Weenink testified

18   that although he saw pictures of a "snow bike type product" available for sale in Europe,

19   "[T4K's] is unique in the fact that it's a miniature version of a large snowmobile. So to

20   that degree, I don't recall seeing anything."

21

22   <u>Separate Statement Paragraph 150</u>:  This statement mischaracterizes the evidence

23   because the parties were in communication after July 2009. Fed. R. Evid. 106, 403.

24

25   <u>Separate Statement Paragraph 153</u>:  This statement misstates the evidence because

26   in February 2010, SD sent to Yamaha an application to license its brand for SD's snow

27   bike.  Fed. R. Evid. 403.

28

1        Separate Statement Paragraph 154:  This statement is irrelevant and misstates the

2    evidence because in February 2010, SD sent to Yamaha an application to license its

3    brand for SD's snow bike.

4

5        Separate Statement Paragraph 156:  This statement is irrelevant for purposes of this

6    Motion which seeks partial summary judgment of liability only. Fed. R. Evid. 401, 402,

7    403.

8

9        Separate Statement Paragraph 157:  This statement is irrelevant because a party's

10   belief as to the terms of an agreement in hindsight is irrelevant. *See Founding Members*,

11   109 Cal. App. 4th at 955 ("parties' undisclosed intent or understanding is irrelevant to

12   contract interpretation.). Fed. R. Evid. 401, 402, 403.  The statement also

13   mischaracterizes the evidence because there was no mention of "gauging market

14   interest." Fed. R. Evid. 403.

15

16       Separate Statement Paragraph 158:  This statement is irrelevant for purposes of this

17   Motion because a discussion of "sublicensing" is not required for contract formation.

18   Fed. R. Evid. 401, 402, 403.

19

20

21

22   Dated: May 20, 2012                 **GREENBERG TRAURIG, LLP**

23

24                              By:  */s/ Valerie W. Ho*
                                 Valerie W. Ho

25                                    Jeffrey F. Yee
                               Michael S. Lawrence

26                                    Robert S. Freund

27                                  Attorneys for Plaintiff and Counterdefendant

28                                  TECH-4-KIDS, INC.