ORIGINAL

1   **GREENBERG TRAURIG, LLP**
2   Valerie W. Ho (SBN 200505) (hov@gtlaw.com)
    Michael S. Lawrence (SBN 255897) (lawrencem@gtlaw.com)
3   Robert S. Freund (SBN 287566) (freundr@gtlaw.com)
    1840 Century Park East, Suite 1900
4   Los Angeles, California 90067
    Telephone: (310) 586-7700
5   Facsimile: (310) 586-7800
6
    Attorneys for Plaintiff
7   Tech-4-Kids, Inc.



FILED
CLERK, U.S. DISTRICT COURT
MAY 14 2013
MAY 14 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

12   TECH-4-KIDS, INC.,                    CASE NO. 2:12-CV-06769-PA-AJW

13              Plaintiff,                 **PLAINTIFF TECH-4-KIDS'**
                                           **STATEMENT OF GENUINE**
14   vs.                                   **ISSUES IN OPPOSITION TO**
                                           **SPORT DIMENSION'S MOTION**
15   SPORT DIMENSION, INC.,                **FOR SUMMARY JUDGMENT**

16              Defendant.

17   ─────────────────────────            [Opposition, Evidentiary Objections,
                                           Declarations of Michael Lawrence, Brad
18                                         Pedersen and Thomas Neches Filed
                                           Concurrently herewith]
19   SPORT DIMENSION, INC.,

20              Counterclaimant,

21   vs.                                   DATE:      June 3, 2013
                                           TIME:      1:30 p.m.
22   TECH-4-KIDS, INC.,                    CTRM:      15

23              Counterdefendant.
                                           **Judge: Hon. Percy Anderson**
24

25

26

27   ~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

28

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT

*Block DocID*

Pursuant to Local Rule 56-2, Plaintiff and Counter-Defendant Tech-4-Kids, Inc. ("T4K"), hereby submits this Statement of Genuine Disputes In Opposition to Defendant and Counterclaimant Sport Dimension, Inc.'s ("Sport Dimension") Motion for Summary Judgment.

| | SPORT DIMENSION'S ALLEGED UNCONTROVERTED FACTS | OBJECTION AND RESPONSE |
|---|---|---|
| 1. | Tech-4-Kids, Inc. ("T4K" or "Plaintiff") filed the initial complaint in this action on December 6, 2011, in the District of Maryland, asserting claims of patent infringement and misappropriation of confidential business information against Sport Dimension and its customer Costco Wholesale Corp. ("Costco"). | Irrelevant. Fed. R. Evid. 401, 402, 403. |
| 2. | On August 17, 2012, T4K transferred this case to the Central District of California and filed the First Amended Complaint ("FAC") which dropped the claim for patent infringement and claims against Costco, and asserted for the first time common law claims of fraud and interference with prospective economic advantage, as well as misappropriation of trade secrets. | Irrelevant. Fed. R. Evid. 401, 402, 403. |
| 3. | On March 4, 2013, more than a year after filing its initial complaint, T4K's Second | Irrelevant. Fed. R. Evid. 401, 402, 403. |

| | | |
|---|---|---|
| | Amended Complaint ("SAC") was entered in this action. | |
| 4. | Through the SAC, T4K added four entirely new claims and the President of Sport Dimension, Kurt Rios, in his individual capacity. | Undisputed. |
| 5. | The SAC added an allegation that a contract existed between Sport Dimension and T4K, and that Sport Dimension breached that contract. | Undisputed. |
| 6. | The SAC also added claims for breach of the implied covenant of good faith and fair dealing and promissory estoppel and added a second claim for fraud. | Undisputed. |
| 7. | Sport Dimension has been in business for 16 years, and is located in Carson, California. | Irrelevant. Fed. R. Evid. 401, 402, 403. |
| 8. | The President of Sport Dimension is Kurt Rios. | Undisputed. |
| 9. | Sport Dimension's products include Body Glove™ wetsuits, Body Glove™ body boards, Body Glove personal floatation devices, Snow Slider, Yamaha™ Snow bike, and Sea-doo™ sea scooters. | Disputed: Sport Dimension did not sell products in the snow bike category until after seeing T4K's product. **SD's Evidence:** Rios Decl. ¶ 5. |

| | | | T4K's Evidence: Lawrence Decl. Ex. C (Rios Tr. 39:9-23). |
|---|---|---|---|
| 10. | Sport Dimension began selling snow-related products including snow sliders in 2002. | | Irrelevant. Fed. R. Evid. 401, 402, 403. Vague and ambiguous as to the term "snow-related products" and "snow sliders." Fed. R. Evid. 403. Disputed: Sport Dimension did not sell products in the snow bike category until after seeing T4K's product.<br>**SD's Evidence:** Rios Decl. ¶ 5.<br>**T4K's Evidence:** Lawrence Decl. Ex. C (Rios Tr. 39:9-23). |
| 11. | Sport Dimension has relationships with numerous retailers through which its products are sold, including Costco USA, Sam's Club, The Sports Authority, and Dick's Sporting Goods. | | Vague and ambiguous as to the term "relationship." The term "relationship" as used in this context is misleading, confusing and prejudicial. Fed. R. Evid. 403. Disputed: Sport Dimension did not have relationships with those retailers in the snow bike category. SD's Evidence: Rios Decl. ¶ 5. T4K's Evidence: Lawrence Decl. Ex. C (Rios Tr. 39:9-23). |
| 12. | Sport Dimensions relationships with the retailers listed above existed prior to Sport Dimension's initial contact with Plaintiff. | | Vague and ambiguous as to the term "relationship." The term "relationship" as used in this context is misleading, confusing and |

3

| | | |
|---|---|---|
| | | prejudicial. Fed. R. Evid. 403. Disputed: Sport Dimension did not have relationships with those retailers in the snow bike category. **SD's Evidence:** Rios Decl. ¶ 5. **T4K's Evidence:** Lawrence Decl. Ex. C (Rios Tr. 39:9-23). |
| 13. | T4K is a Canadian company that has been in business for 5 years. | Misstates the evidence, irrelevant and contradicts Alleged Fact No. 34. Fed. R. Evid. 403. |
| 14. | In early 2009, T4K sold snow bikes in various retail stores in Canada and the United States. | Undisputed. |
| 15. | The President of T4K is Brad Pedersen. | Undisputed. |
| 16. | T4K was established in 2009 after Sport Dimension started selling snow products. | Vague and ambiguous as to the terms "established" and "snow products"; irrelevant, contradicts Alleged Fact No. 30). Fed. R. Evid. 106, 401, 402, 403, 901, 1002. Disputed:  Sport Dimension did not sell products in the snow bike category until after seeing T4K's product.**SD's Evidence:** Rios Decl. ¶ 5. **T4K's Evidence:** Lawrence Decl. Ex. C (Rios Tr. 39:9-23). |
| 17. | T4K is a Canadian company that designs, | Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| 1 | | manufacturers, and sells toys and other products for children. | |
| 3 | 18. | The product at issue is a snow bike product for children, which is similar to snow sleds but have three skis. | Lacks foundation, argumentative, mischaracterizes testimony, best evidence. Fed. R. Evid. 106, 403, 901, 1002.<br><br>Disputed: Weenink's definition is much more detailed.<br><br>**SD's Evidence:** Brooks Decl. Ex. 2 at 67:9-68:9.<br><br>**T4K's Evidence:** Brooks Decl. Ex. 2 at 67:9-68:9. ("It's a tri-ski design of sled, metal frame, adjustable seat, handlebars licensed, nose piece, suspension, twin-tip skis, tow rope, licensed graphics."). |
| 17 | 19. | The Yamaha snow bike was intentionally designed to look different than T4K's snow bikes. | Lacks foundation, argumentative, improper lay witness opinion, mischaracterizes testimony. Fed. R. Evid. 106, 602, 701, 901.<br><br>**SD's Evidence:** Rios Decl. ¶ 13.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. V. (Rios Ex. 40) (SDI 001012-13). |
| 25 | 20. | The Yamaha snow bike is covered by U.S. Patent No. D662010 | Irrelevant. Fed. R. Evid. 401, 402, 403. |
| 27 | 21. | The parties explored the possibility of | Lacks foundation, argumentative, |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT**

| | | |
|---|---|---|
| | entering into a distributing agreement during March to July 2009. Most of these conversations took place by email and some by phone. The parties however do not recall what contract terms were proposed on the phone. | mischaracterizes testimony, best evidence. Fed. R. Evid. 106, 403, 901, 1002.<br><br>Disputed: All terms are contained in the parties' email exchange.<br><br>**SD's Evidence:** Brooks Decl. Ex. 1 at 271:20-274:24; Ex. 24 at 241:18-21.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. W. |
| 22. | Consumer Products Safety Improvement Act on 2008 testing and compliance is a requirement in the U.S. for the protection of children. | Irrelevant. Fed. R. Evid. 401, 402. Disputed: CPSIA did not apply to products manufactured before November 2008.  T4K's 2009 products were CISIA certified.<br><br>**SD's Evidence:** Brooks Decl. Ex. 3 at 126:11-128:3; Ex. 24 at 204:7-206:1.<br><br>**T4K's Evidence:** Consumer Products Safety Improvement Act of 2008; Pedersen Decl. ¶ 31. |
| 23. | T4K did not ask Sport Dimension to sign a non-disclosure agreement or expressly ask that any specific information be treated as a trade secret. | Vague and ambiguous as to the terms "expressly." Lacks foundation.  Fed. R. Evid. 403, 901. Disputed: T4K did ask that information be treated as a trade secret.<br><br>**SD's Evidence:** Rios Decl. ¶ 10. |

6

| | | |
|---|---|---|
| | | **T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. 168:10-169:20; 177:13-15). |
| 24. | During the time of Costco's buying decision in 2011, however, another version of T4K's snow bike was subject to a safety product recall that required recall of T4K products that Costco U.S. sold in the U.S. | Foundation, irrelevant, argumentative, mischaracterizes evidence. Fed. R. Evid. 106, 401, 402, 403, 901, 1002. Disputed: Misstates document, which demonstrates that the Snow MX, the product subject to the voluntary recall, was still in the running for sale to Costco at that time that Costco decided not to purchase the Snow Moto. The recalled product was not a version of the snow bike, as SD admits in Alleged Fact No. 33. **SD's Evidence:** Brooks Decl. Ex. 28. **T4K's Evidence:** Brooks Decl. Ex. 28; SD's statement of uncontroverted fact no. 33 (listing all versions of the snow bike). |
| 25. | Since T4K's discussion with Sport Dimension, T4K's snow bike business in the U.S. has increased. Sales went from $2,130,626 in 2009 to $3,535,068 in 2011, and $4,275,187 in 2012 | Lacks foundation, argumentative, mischaracterizes evidence, best evidence. Fed. R. Evid. 106, 403, 901, 1002. Disputed:  T4K suffered lost sales. |

7

| | | | |
|---|---|---|---|
| | | | Declaration of Thomas Neches, Exh. A. |
| | 26. | In fact, at the time of filing this action in this district in 2012, T4K had its biggest year in sales. | Lacks foundation, irrelevant, argumentative, mischaracterizes evidence. Fed. R. Evid. 106, 401, 402, 403, 901, 1002.<br><br>Disputed:  T4K suffered lost sales. Declaration of Thomas Neches, Exh. A. |
| | 27. | In June 2012, T4K wrote to licensor Bombardier Recreational Products, Inc. ("BRP") from which T4K and Sport Dimension both license their Ski-Doo products, trying to persuade it to not license to Sport Dimension or its manufacturing sourcing agent, Stallion, citing a patent infringement claim against the companies. | Lacks foundation, irrelevant, argumentative, best evidence. Fed. R. Evid. 401, 402, 403, 901, 1002. Disputed: Cited testimony does not support the alleged fact. |
| | 28. | T4K served subpoenas Sport Dimension's customers, including Costco, Sam's Club, Big 5, Sports Chalet, Academy Sport, Michigan Sport, Target, and Yamaha. | Disputed:  Yamaha is a licensor, not a customer. |
| | 29. | T4K and Sport Dimension are competitors. | Disputed: T4K and SD were not competitors until SD began selling its snow bike. Lawrence Decl. Ex. A (Lin Tr. 227:11-22). |
| | 30. | In 2007 or 2008, T4K began selling a | Undisputed. |

| | | | |
|---|---|---|---|
| | | product for children called a snow bike. | |
| | 31. | These snow bikes are snow sleds for children that are designed to appear like a snowmobile, but are not motorized. | Undisputed. |
| | 32. | Sport Dimension became aware of Plaintiff's snow bike when Rios saw one at a retail store in early 2009. | Speculation, lack of personal knowledge, mischaracterizes testimony. Fed. R. Evid. 403, 602. Disputed: It was Lin who discovered T4K's snow bike and not Rios. **SD's Evidence:** Brooks Decl. Ex. 1 at 36:15-22. **T4K's Evidence:** Lawrence Decl. Ex. A (Lin Tr. 232:24-233:3). |
| | 33. | T4K sells three different versions of its snow bike — the X-Games, Ski-doo and Polaris. | Undisputed. |
| | 34. | Both the X-Games and Ski-doo snow bikes were on sale in 2007 or 2008 prior to discussions with Sport Dimension. | Undisputed. |
| | 35. | Around March 3, 2009, Rios contacted Plaintiff's President, Brad Pedersen ("Pederson") and the parties began exploring a potential distributor relationship whereby Sport Dimension would consider serving as Plaintiff's U.S. Distributor for Plaintiff's snow bike | Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT**

| | | | |
|---|---|---|---|
| | | product. | |
| | 36. | Mr. Rios proposed several different ideas of ways the companies could work together, including distributing T4K's product in the U.S., or obtaining a sub-license or buying directly from T4K at a pre-determined price. | Undisputed. |
| | 37. | On March 4, 2009, Mr. Pedersen replied to Mr. Rios' email and stated that while T4K had a "strong position in Canada," the U.S. had been "challenging." | Undisputed. |
| | 38. | Mr. Pedersen mentioned success at Wal-Mart U.S. who purchased the X- Games snow bike in 2008 and Dick's Sporting Goods who purchased the Ski-doo snow bike in 2008. | Undisputed. |
| | 39. | In a subsequent email, Mr. Pedersen tells Mr. Rios that the T4K snow bikes retails for between $79 - $120 and asks Mr. Rios tell him what Sport Dimension would need to purchase the snow bikes at to "make the numbers work." | Undisputed. |
| | 40. | At no time does Mr. Pedersen mention that the conversations or any of the information exchanged should be confidential or treated as a trade secret. | Vague and ambiguous as to the terms "the conversations" and "the information exchanged." Fed. R. Evid. 901. **Disputed:** |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT**

| | | |
|---|---|---|
| | | **SD's Evidence:** Rios Decl. ¶ 10. **T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. 168:11-169:20). |
| 41. | On March 8, 2009, Mr. Rios sends Mr. Pedersen an email stating that he had reviewed the "cost sheet" that Mr. Pedersen provided and worked backwards from retail to cost so that Sport Dimension would need to purchase the snow bike from T4K for $30 in order to "put some sort of a deal in place or arrangement." | Undisputed. |
| 42. | The cost sheet provided by Mr. Pedersen detailed the dimensions of the X-Games snow bike product, the carton size, container quantities, and factory information. | Argumentative, mischaracterizes content of Ex. 5, hearsay, best evidence. Fed. R. Evid. 106, 403, 802, 1002. Disputed: The document contained additional information including price and cost. **SD's Evidence:** Brooks Decl. Ex. 5. **T4K's Evidence:** Brooks Decl. Ex. 5. |
| 43. | Around 2010, T4K stopped using the factory disclosed in this "cost sheet." | Undisputed. |
| 44. | In addition, Mr. Pedersen did not agree to the price proposed by Mr. Rios in his March 8, 2009 email. | Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| 45. | On March 9, 2009, Mr. Pedersen replied suggesting several terms, including a minimum commitment whereby Sport Dimension would commit to a $100,000 advance that would be deducted from any orders that Sport Dimension would make or in other words a minimum purchase commitment of about 3200 pieces of the sled. | Undisputed. |
| 46. | Mr. Pedersen also stated that certain accounts are "off limits" but stated that he needed to check with his sales director regarding Costco. | Undisputed. |
| 47. | Mr. Pedersen stated that T4K was interested Sam's Club. Mr. Pedersen also says "if we can agree to these points, I will have a conversation with my chair to confirm the above and if he is in agreement, then I [sic] would draft up a simple MOU to sign. | Undisputed. |
| 48. | Mr. Rios did not accept this proposal and on March 10, 2009 stated that with respect to the $100,000 minimum commitment "this may be a sticking point as we cannot agree to this." Mr. Rios also stated "we will try to sell as much as we can." | Argumentative, mischaracterizes content of Ex. 6, hearsay, best evidence. Fed. R. Evid. 106, 403, 802, 1002. Disputed: Rios stated he would try to sell as much as he could and Pedersen accepted that counter-offer. |

12

| | | |
|---|---|---|
| | | **SD's Evidence:** Brooks Decl. Ex. 6 at 1224. **T4K's Evidence:** Brooks Decl. Ex. 6 at 1224, ¶¶ 1, 3; Brooks Decl. Ex. 21 at 67. |
| 49. | On March 10, 2009, Mr. Pedersen sent Mr. Rios an email stating that T4K wishes to keep Costco Canada in house. | Argumentative, mischaracterizes content of Ex. 6, hearsay, best evidence. Fed. R. Evid. 403, 802, 1002. Disputed: Pedersen wished to keep Costco Canada and Costco U.S. in house. **SD's Evidence:** Brooks Decl. Ex. 6. **T4K's Evidence:** Brooks Decl. Ex. 6. |
| 50. | On March 10, 2009, Mr. Rios emailed Mr. Pedersen and stated that they must be able to sell to Costco US for the same price as T4K is selling to Costco Canada. | Disputed: Pedersen wished to keep Costco Canada and Costco U.S. in house. **SD's Evidence:** Brooks Decl. Ex. 6. **T4K's Evidence:** Brooks Decl. Ex. 6. |
| 51. | On March 15, 2009 Mr. Pedersen emailed Mr. Rios stating that considering the late date of the season — they will forgo asking for a minimum commitment. | Undisputed. |
| 52. | Mr. Pedersen also proposed a higher price for the snow bikes plus a $3/snow bike | Undisputed. |

13

| | | | |
|---|---|---|---|
| 1 2 | | charge for shipping samples of the X-Games snow bike to Mr. Rios. | |
| 3 4 5 6 7 8 | 53. | On March 16, 2009 Mr. Rios replies to Mr. Pedersen's proposal by asking whether Sport Dimension can also obtain samples of the Polaris and Ski-doo snow bike and what are the differences between these models. | Undisputed. |
| 9 10 11 12 13 14 15 16 17 18 19 | 54. | On March 17, 2009 Mr. Rios emailed Mr. Pedersen and stated that "we are good to go." and states that an assistant will contact Mr. Pedersen regarding a credit card for the snow bike samples. | Argumentative, mischaracterizes content of Ex. 23. Fed. R. Evid. 106, 403. Disputed: Rios stated: "We are good to go. We accept your new higher prices listed below along with $3.00 service fee for shipping samples." **SD's Evidence:** Brooks Decl. Ex. 23. **T4K's Evidence:** Brooks Decl. Ex. 23. |
| 20 21 22 23 24 25 26 27 28 | 55. | Mr. Rios believed that he was accepting Mr. Pedersen's price on the snow bike samples. | A party's belief as to the terms of an agreement in hindsight is irrelevant. *See Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955 (2003) ("parties' undisclosed intent or understanding is irrelevant to contract interpretation.");Fed. R. |

14

| | | Evid. 402, 403. |
|---|---|---|
| | | Disputed: Sport Dimension contends it attempted to sell T4K's bike to several retailers following Rios's acceptance of the contract. |
| | | **SD's Evidence:** Brooks Decl. Ex. 24 at 254:4-21. |
| | | **T4K's Evidence:** Lawrence Decl. Ex. J (Richards Tr. 104:23-106:24); Ex. N. |
| 56. | On March 18, 2009 Mr. Pedersen sent an email to Mr. Rios informing him that T4K does not have enough samples of the Ski-doo snow bike and are going to Canadian Tire to purchase samples. | Undisputed. |
| 57. | On March 26, 2009 Mr. Rios sent an email to Mr. Pedersen asking for clarification on whether T4K is calling on Costco USA. | Lacks foundation, argumentative, mischaracterizes content of Ex. 7, hearsay. Fed. R. Evid. 403, 802, 901. Disputed:  Pedersen had already told Rios on multiple occasions that Costco was an off-limits account and Rios obviously understood this or he would not have sent the March 26, 2009 email to Pedersen. **SD's Evidence:** Brooks Decl. Ex. 7. **T4K's Evidence:** Lawrence Decl. Ex. E (SDI 001240-47). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | |
|---|---|---|
| 58. | On March 26, 2009 Mr. Pedersen responded to this email stating that "in regards to Costco I will revert back." | Lacks foundation, lacks authentication, argumentative, mischaracterizes content of Ex. 8. Fed. R. Evid. 106, 403, 901. Disputed:  The email does not indicate that it is in response to anything. **SD's Evidence:** Brooks Decl. Ex. 8. **T4K's Evidence:** Brooks Decl. Ex. 8. |
| 59. | Mr. Rios replied and asked Mr. Pedersen to let him know as soon as he could about Costco USA. | Lacks foundation, argumentative, mischaracterizes content of Ex. 9, hearsay, best evidence. Fed. R. Evid. 403, 802, 901, 1002. Disputed:  Pedersen had already told Rios on multiple occasions that Costco was an off-limits account and Rios obviously understood this or he would not have sent the March 26, 2009 email to Pedersen. **SD's Evidence:** Brooks Decl. Ex. 8. **T4K's Evidence:** Lawrence Decl. Ex. E (SDI 001240-47). |
| 60. | On March 26, 2009 Mr. Pedersen sends an email to Mr. Rios asking for Sport Dimension's corporate information so he can complete a memorandum of understanding ("MOU"). | Lacks foundation, misstates evidence. Fed. R. Evid. 106, 901. Disputed:  Pedersen testified that the email chain itself functioned as the MOU between the parties |

16

| | | |
|---|---|---|
| | | because it contained all of the material terms discussed, including products, price, accounts, quantity, and marketing support.<br><br>**SD's Evidence**:  Brooks Decl. Ex. 1 at 150:4-14; Ex. 7.<br><br>**T4K's Evidence**:  Lawrence Decl. Ex. D (Pedersen Tr. at 151:13-154:2). |
| 61. | Mr. Pedersen never completed an MOU or sent Mr. Rios a MOU. | Disputed: Pedersen followed up multiple times after the parties entered the contract and understood that an MOU was completed.<br><br>**SD's Evidence:** Brooks Decl. Ex. 1 at 151:24-152:2.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. at 151:13-154:2). |
| 62. | On March 27, 2009, Mr. Rios was emailed a power point presentation that contains an image and a short description of the key features of all three of T4K's snow bikes - the Ski-doo, X-Games and Polaris. | Misstates the evidence.  Fed. R. Evid. 403.<br><br>Disputed: The presentation contained information relating to T4K's unreleased, forthcoming products and their new features. Rios and Pedersen both testified that retailers do not share share one vendor's information with another vendor. |

17

| | | |
|---|---|---|
| | | **SD's Evidence:** Brooks Decl. Ex. 10.<br>**T4K's Evidence:** Brooks Decl. Ex. 10; Lawrence Decl. Ex. D (Pedersen Tr. 205:11-14; 245:8-246:7); Lawrence Decl. Ex. C (Rios Tr. 170:11-16). |
| 63. | On March 27, 2009, Mr. Pedersen emails Mr. Rios a "recap" of the X- Games snow bike performance at Wal-Mart Canada and Wal-Mart US. | Undisputed. |
| 64. | On March 31, 2009 Mr. Rios sent Mr. Pedersen an email asking whether the T4K snow bikes are CPSIA approved. | Lacks foundation, irrelevant, misleading and confusing, hearsay, incomplete evidence. Fed. R. Evid.403, 802, 901. |
| 65. | CPSIA testing and compliance is a requirement in the U.S. for the protection of children. | Irrelevant, misleading and confusing, improper expert opinion. Fed. R. Evid. 401, 402, 403, 702. Disputed: CPSIA was not required for products manufactured before November 2008.<br>**SD's Evidence:** Brooks Decl. Ex. 3 at 126:11-128:23.<br>**T4K's Evidence:** Brooks Decl. Ex. 12; The Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, 122 Stat. 3016; Pedersen Decl. ¶ 31. |

18

| | | |
|---|---|---|
| 66. | A product would never be presented to a buyer or potential customer if it was not CPSIA approved. | Vague and ambiguous as to the term "a product." Lacks foundation, irrelevant, misleading and confusing, argumentative, speculative. Fed. R. Evid. 401, 402, 403, 702.<br><br>Disputed: CPSIA was not required for products manufactured before November 2008.  Moreover, SD contends it presented the products to its customers. **SD's Evidence:** Brooks Decl. Ex. 3 at 128:25-128:15; Ex. 24 at 204-205. **T4K's Evidence:** Brooks Decl. Ex. 12; The Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, 122 Stat. 3016; Pedersen Decl. ¶ 31; Lawrence Decl. Ex. J (Richards Tr. 104:23-106:24); Ex. N. |
| 67. | On April 8, 2009 Mr. Pedersen sent an email to Mr. Rios stating that the snow bikes are not CPSIA approved but that T4K planned on completing the approval for the coming year. | Lacks foundation, irrelevant, misleading, incomplete evidence. Fed. R. Evid. 401, 402, 403. Disputed: CPSIA was not required for products manufactured before November 2008.  SD's products were CPSIA approved for 2009. Moreover, SD contends it presented |

19

| | | the products to its customers. **SD's Evidence:** Brooks Decl. Ex. 23. **T4K's Evidence:** Brooks Decl. Ex. 12; The Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, 122 Stat. 3016; Pedersen Decl. ¶ 31; Lawrence Decl. Ex. J (Richards Tr. 104:23-106:24); Ex. N. |
|---|---|---|
| 68. | In April, 2009 Mr. Rios sent an email to Roger Stakley, the buyer at Sam's Club in the U.S. regarding T4K's Ski-doo snow bike. | Lacks foundation, hearsay. Fed. R. Evid. 802, 901. |
| 69. | On April 16, 2009 Mr. Rios emailed Mr. Pedersen stating that they are getting close to a 100 club test with the T4K Ski-doo snow bike in Sam's Club. | Lacks foundation, hearsay. Fed. R. Evid. 802, 901. Disputed: **SD's Evidence:** Brooks Decl. Ex. 14. **T4K's Evidence:** No evidence has been produced by SD or Sam's Club indicating that Sam's Club (division of Wal-Mart) was interested in a 100 club test. Lawrence Decl. Ex. FF. |
| 70. | Mr. Rios also asked Todd Richards, Sport Dimension's VP of sales contact various potential customers in the U.S. regarding T4K's snow bikes including Big 5, | Hearsay. Fed. R. Evid. 802. |

20

| | | | |
|---|---|---|---|
| 1 | | Academy Sport, and others. | |
| 2<br>3 | 71. | On May 6, Mr. Pedersen wrote to Mr. Rios asking for a status update. | Undisputed. |
| 4<br>5<br>6 | 72. | Mr. Rios responded that the price of the snow bike was an issue with potential customers. | Hearsay. Fed. R. Evid. 802. |
| 7<br>8<br>9<br>10 | 73. | On July 10, 2009 Mr. Pedersen sent an email to Mr. Rios stating that because of the lack of communication he assumes that nothing is happening. | Undisputed. |
| 11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20 | 74. | On July 10, 2009, Mr. Rios responded to Mr. Pedersen stating that Sam's decided not to go forward with the test of the snow bike, apologized and says "better luck next year." | Hearsay. Fed. R. Evid. 802.<br>Disputed: Rios said "Sorry this did not work out better for both of us, this is a good item, and maybe with a better retail climate we will have better luck next year."<br>**SD's Evidence:** Brooks Decl. Ex. 17.<br>**T4K's Evidence:** Brooks Decl. Ex. 17. |
| 21<br>22<br>23<br>24 | 75. | The parties did not have any other conversations between July, 2009 and the present lawsuit. | Vague and ambiguous as to the term "any other conversation." Mischaracterizes testimony. Fed. R. Evid. 106, 403. |
| 25<br>26<br>27 | 76. | Having not heard from Sport Dimension, Mr. Pedersen assumed that Sport Dimension was not interested in pursuing | Incomplete testimony, mischaracterizes testimony. Fed. R. Evid. 106, 403. |

28

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| | the business. | Disputed: Mr. Pedersen expected Mr. Rios to honor his obligations under the contract.<br>**SD's Evidence:** Brooks Decl. Ex. 1 at 289:21-290:5.<br>**T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. 290:10-295:7). |
| 77. | The parties never discussed or came to an agreement regarding the time frame of any potential agreement. | Incomplete testimony, mischaracterizes testimony, irrelevant. Fed. R. Evid. 106, 402, 403.<br>Disputed: Mr. Rios said "Sorry this did not work out better for both of us, this is a good item, and maybe with a better retail climate we will have better luck next year."<br>**SD's Evidence:** Brooks Decl. Ex. 1 at 123:19-124:3.<br>**T4K's Evidence:** Brooks Decl. Ex. 17. |
| 78. | Nor did the parties discuss or some [sic] to an agreement regarding termination of the potential agreement. | Irrelevant, incomplete testimony, mischaracterizes testimony.  Fed. R. Evid. 106, 401, 402, 403. |
| 79. | In addition, a minimum purchase quantity of 3,200 pieces was a key term of the potential agreement that was not agreed to by Mr. Rios. | Vague and ambiguous as to the term "key term." Irrelevant, argumentative, incomplete testimony, mischaracterize |

22

| | | |
|---|---|---|
| | | testimony. Fed. R. Evid. 106, 401, 402, 403.<br><br>Disputed:  The quantity was not a "key term" and Rios agreed to sell as much as he could.<br><br>**SD's Evidence:** Brooks Decl. Ex. 1 at 140:9-141:11.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. 140:9-141:21). |
| 80. | In the Fall 2009, T4K sold under 1000 units of its Ski-doo snow bike to Costco U.S. as a "test." | Undisputed. |
| 81. | Subsequently, Costco U.S. purchased T4K's Polaris snow bike for the 2010/2011 snow season. | Undisputed. |
| 82. | Costco U.S. did not purchase new units of T4K's snow bike. | Disputed: Costo U.S. purchased new units of T4K's snow bike in 2009 and 2010.<br><br>**SD's Evidence:** DE 84 ¶ 49.<br><br>**T4K's Evidence:** Pedersen Decl. ¶ 9. |
| 83. | Costco reviews its buying decisions every year. | Undisputed. |
| 84. | Costco U.S. did not tell T4K that it would purchase its snow bike for the 2011/2012 snow season. | Incomplete testimony, mischaracterizes testimony. Fed. R. Evid. 106, 403.<br><br>Disputed:  Under normal |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

|  |  | circumstances, Costco would re-purchase a product that had such a high level of success the preceding year.<br><br>**SD's Evidence:** Brooks Decl. Ex. 2 at 151:20-152:3; Ex. 3 at 129:19-130:4; Nelson Decl. ¶ 3.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. G (Smick Tr. 112:9-25). |
|---|---|---|
| 85. | Costco U.S. did buy back T4K's unsold Polaris snow bikes in 2011/2012. | Undisputed. |
| 86. | In February, 2010, T4K began marketing its snow products, including its snow bikes to U.S. customers, including Big 5, Sports Chalet and others. | Lacks foundation and misstates evidence. Fed. R. Evid. 403, 901. Disputed:  T4K did not market its snow bikes to Big 5, Sports Chalet or any of the sporting goods retailers with whom SD had relationships.<br><br>**SD's Evidence:** Brooks Decl. Ex. 18.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. L (Weenink Tr. 131:17-132:25.) |
| 87. | Around April 21, 2010, T4K submitted a quote to Blain's Supply, Inc. for its X-Games snow bike. | Lacks foundation. Fed. R. Evid. 901. |
| 88. | Blain's is located in Wisconsin. | Lacks foundation. Fed. R. Evid. 901. |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO**
**SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT**
**JUDGMENT**

| | | |
|---|---|---|
| 89. | Blain is also a Sport Dimension customer and purchased a snow bike from Sport Dimension in 2012. | Lacks foundation; hearsay. Fed. R. Evid. 802, 901. |
| 90. | On March 9, 2011, T4K submitted a quote to Academy Sport for its X-Games snow bike. | Lacks foundation. Fed. R. Evid. 901. |
| 91. | Academy is an account that Sport Dimension had previously called on in regarding T4K's snow bike. | Lacks foundation, hearsay. Fed. R. Evid. 802, 901. Disputed:  Rios verified under oath SD's initial interrogatory response which stated the only customer SD approached regarding T4K's products was Sam's Club. **SD's Evidence**:  Brooks Decl. Ex. 20. **T4K's Evidence**:  Lawrence Decl. Ex. W (Interrogatory No. 6). |
| 92. | T4K has also sold its snow bike to Costco Canada for six years in a row. | Undisputed. |
| 93. | After T4K and Sport Dimension had ceased their discussions, Sport Dimension began discussions with Yamaha Corporation ("Yamaha") to design and develop its own snow bikes. | Disputed: The parties reached an agreement in March 2009. By January 2010, SD already had a competing product 90% completed, and by February 2010, SD was already pursuing a license from Yamaha. **SD's Evidence:** Rios Decl. ¶ 12. |

| | | **T4K's Evidence:** Lawrence Decl. Ex. E (SDI 001240-47); Lawrence Decl. Ex. P (Rios Ex. 37) (SDI 001132); Lawrence Decl. Ex. Q (SDI 001008-09). |
|---|---|---|
| 94. | In 2011, Sport Dimension offered its snow bikes ("the Yamaha Snow Bike") which were designed in cooperation with Yamaha. | Disputed: SD offered a different competing snow bike to Costco in January 2010. SD was pursuing the Yamaha license in February 2010. **SD's Evidence: SD's Evidence:** Rios Decl. ¶ 12. **T4K's Evidence:** Lawrence Decl. Ex. Z (SDI 015735); Lawrence Decl. Ex. P (Rios Ex. 37) (SDI 001132 – 35); Lawrence Decl. Ex. Q (SDI 001008); Ex. V (SDI 0012-13). |
| 95. | The Yamaha Snow Bike is manufactured by factories obtained by Sport Dimension's sourcing agent, Stallion. Stallion and Sport Dimension work together on manufacturing, shipment, and Quality Control and Assurances. | Undisputed. |
| 96. | T4K identifies the following as the trade secret information that Mr. Pedersen conveyed to Mr. Rios: 1) an email with attachment titled "Moto X Recap.doc;" 2) an email chain with attachment titled | Disputed: T4K's trade secret information also included pricing, cost, margin, customer lists, and unreleased product information. **SD's Evidence:** Brooks Decl. Ex. |

26

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| | "Quote Sheet.xls;" and 3) Contents of email chain with subject line "USA Distribution." | 11; Ex. 5; Ex. 21; Ex. 22. **T4K's Evidence:** Lawrence Decl. Ex. AA (T4K's Response to SD's Interrogatory No. 1); Brad Decl. ¶ 18; Lawrence Decl. Ex. D (Pedersen Tr. 221:5-224:10; 257:5-262:23). |
| 97. | The Ski-doo and X-Games snow bikes were already being sold at retail and the Polaris snow bike was already being offered to potential customers and may have been shown at trade shows. | Vague and ambiguous as to time frame. Lack of personal knowledge, mischaracterize testimony, incomplete testimony. Fed. R. Evid. 106, 403, 602. Disputed: The Polaris was not on the market at the time, and the Ski-doo information highlighted new features not yet on the market. **SD's Evidence:** Brooks Decl. Ex. 3 at 50:14-52:17; Ex. 2 at 75:9-77:18. **T4K's Evidence:** Brooks Decl. Ex. 6; Pedersen Decl. ¶ 18; Lawrence Decl. Ex. C (Rios Tr. 147:12-18; 170:11-21.), Ex. D (Pedersen Tr. 249:1-21). |
| 98. | The Quote Sheet provided by Mr. Pedersen detailed the dimensions of the X-Games snow bike product, the carton size, container quantities, and factory information. | Mischaracterizes content of Ex. 5, hearsay, best evidence. Fed. R. Evid. 403, 802, 1002. |
| 99. | SDI 1201 contains a retail price of $99.99 | Lacks foundation, hearsay, no |

| | | | |
|---|---|---|---|
| 1 | | and a purchase price of $30 which was supplied by Mr. Rios. | evidence. Fed. R. Evid. 403, 802, 901. |
| | | | Disputed: The document contains additional retail pricing of $79.99 and $59.99. |
| | | | **SD's Evidence:** Brooks Decl. Ex. 26. |
| | | | **T4K's Evidence:** Brooks Decl. Ex. 26. |
| 10 | 100. | SDI 1201 contains the dimensions of the product itself and dimensions that are provided by the buyer, not T4K. | Disputed: These dimensions are often provided by T4K. |
| | | | **SD's Evidence:** Brooks Decl. Ex. 3 at 179:19-185:10. |
| | | | **T4K's Evidence:** Lawrence Decl. Ex. G (Smick Tr. 57:10-60:7). |
| 16 | 101. | T4K's witness testified that the buyer will specify how containers are loaded. | Disputed: This information will often be provided by T4K. |
| | | | **SD's Evidence:** Brooks Decl. Ex. 3 at 185:2-7. |
| | | | **T4K's Evidence:** Lawrence Decl. Ex. G (Smick Tr. 57:10-60:7). |
| 22 | 102. | The Moto X Recap document is information obtained from Wal-Mart and not from T4K. T4K testified that the information in the Moto X Recap document "Walmart allows you access Retail Link to be able to generate this information." | Disputed: This document contains detailed metrics about the sell-thru rate of T4K's product, average number of units sold at stores, and marketing information. |
| | | | **SD's Evidence:** Brooks Decl. Ex. 2 at 124:3-125:7. |

28

| | | T4K's Evidence: Lawrence Decl. Ex. D (Pedersen Tr. 183:2-186:8; 189:17-190:5); Pedersen Decl. ¶ 18. |
|---|---|---|
| 103. | T4K's witnesses testified that T4K was able to calculate the cost that Sport Dimension sold its Yamaha snow bike to Costco based on working back from the retail price of the bike sold. | Disputed: T4K's witness stated that it would be guesswork to attempt to calculate cost based on retail price. **SD's Evidence:** Brooks Dec. Ex. 3 at 92:12-99:20. **T4K's Evidence:** Lawrence Decl. Ex. G (Smick Tr. 97:17-98:5). |
| 104. | Mr. Pedersen testified that he was skeptical of Sport Dimension from Mr. Rios' initial contact because it was a competitor and had a reputation for being predatory. | Vague and ambiguous as to the term "competitor." Mischaracterizes testimony, incomplete testimony. Fed. R. Evid. 403. Disputed: Pedersen testified that he was initially skeptical of Sport Dimension but then he felt more comfortable after Rios eased his concerns, and he learned that Todd Richards would be involved, because Pedersen had worked with Richards previously. **SD's Evidence:** Brooks Decl. Ex. 1 at 36:18-41:8. **T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. 42:2-19). |
| 105. | Representatives for T4K testified that the type of information that was provided to | Vague and ambiguous as to the term "confidentiality agreement." |

| | | |
|---|---|---|
| | Sport Dimension is routinely provided to retailers and distributors without confidentiality agreements. | Mischaracterizes testimony, incomplete testimony. Fed. R. Evid. 403.<br><br>Disputed: Both Pedersen and Rios agree that retailers do not share vendor information with other vendors.<br><br>**SD's Evidence:** Brooks Decl. Ex. 1 at 333:12-16; Ex. 2 at 20:10-18; Ex. 3 at 32:14-18.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. 309:22-310:3); Lawrence Decl. Ex. C (Rios Tr. 170:11-6). |
| 106. | In addition, the information may be presented at trades shows attended by members of the press and where anyone walking by can see or hear the presentation. | Speculative, lack of personal knowledge, mischaracterizes testimony, incomplete testimony. Fed. R. Evid. 403, 602.<br><br>Disputed: Weenink only testified that vice presidents or merchandise managers from retailers would attend the trade shows.<br><br>**SD's Evidence:** Brooks Decl. Ex. 3 at 28:12-25; 50:23-51:3.<br><br>**T4K's Evidence:** Brooks Decl. Ex. 3 at 28:12-25; 50:23-51:3. |
| 107. | T4K maintains that it is an industry practice to provide this information without | Mischaracterizes testimony, incomplete testimony. Fed. R. Evid. |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | |
|---|---|---|
| | a confidentiality agreement, a T4K witness acknowledged that written agreements used to be common in the industry and such written agreements would include confidentiality agreements. In fact, he currently has at least one such agreement with a company | 403.<br><br>Disputed:  In this industry, retailers do not share one vendor's information with another vendor.<br><br>**SD's Evidence**:  Brooks Decl. Ex. 3 at 22:7-24:10; 31:12-32:18.<br><br>**T4K's Evidence**: Lawrence Decl. Ex. D (Pedersen Tr. 309:22-310:3); Lawrence Decl. Ex. C (Rios Tr. 170:11-6). |
| 108. | The Yamaha snow bike was sold two years after the brief discussions with T4K. | Disputed: T4K and SD entered into an agreement in March 2009. In February 2010, it began pursuing Yamaha for a license.<br><br>**SD's Evidence:** Rios Decl. ¶ 12.<br><br>**T4K's Evidence:** Lawrence Decl. Ex. E (SDI 001240-47); Ex. Q (SDI 001008).; Ex. V (SDI 0012-13); Ex. KK (SDI 1015).. |
| 109. | Costco U.S. affirmed that no confidential T4K information was provided to it from Sport Dimension in its bid for Costco's business. | Lacks foundation, lack of personal knowledge, improper lay witness opinion, improper legal conclusion. Fed. R. Evid. 403, 602, 701, 704.<br><br>Disputed:  SD's pricing to Costco was $34.20, right below the special wholesale pricing of $35.50 that Pedersen had extended to SD.<br><br>**SD's Evidence**:  Nelson Decl. ¶ 8. |

31

| | | |
|---|---|---|
| | | **T4K's Evidence**: Lawrence Decl. Ex. U, JJ. |
| 110. | The parties did not execute a memorandum of understanding because they never agreed on key terms. | Vague and ambiguous as to the term "key terms." Fed. R. Evid. 403. Disputed: The parties memorialized their agreement in March 2009. **SD's Evidence:** Rios Decl. ¶ 11. **T4K's Evidence:** Lawrence Decl. Ex D (Pedersen Tr. 150:24-155:19). |
| 111. | In February, 2010, T4K began marketing its snow products, including its snow bikes to U.S. customers, including Big 5, Sports Chalet and others | Lacks foundation and misstates evidence. Fed. R. Evid. 403, 901. Disputed: T4K did not market its snow bikes to Big 5, Sports Chalet and other sporting goods retailers with whom SD had relationships. **SD's Evidence:** Brooks Decl. Ex. 18, 19. **T4K's Evidence:** Lawrence Decl. Ex. L (Weenink Tr. 131:17-132:25.) |
| 112. | T4K's promissory estoppel claim is based on the same email exchange that is the basis for Plaintiffs contract claim. | Best evidence. Fed. R. Evid. 1002. Disputed: The *promise* underlying T4K's promissory estoppel claim is based on the March 2009 email chain. **SD's Evidence:** DE 84 at ¶¶ 82-88. **T4K's Evidence:** DE 84 at ¶¶ 82-88. |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| 113. | In April, 2009 Mr. Rios sent an email to Roger Stakley, the buyer at Sam's Club in the U.S. regarding T4K's Ski-doo snow bike. | Lacks foundation, hearsay. Fed. R. Evid. 802, 901. |
| 114. | Indeed, Costco renews buying decisions every year, and T4K was never told that Costco would purchase the snow bike for the 2011/2012 snow season. | Vague and ambiguous, incomplete testimony, mischaracterizes testimony. Fed. R. Evid. 106, 403. Disputed: Costco gave every indication that it would purchase T4K's snow bike for the 2011/2012 season. **SD's Evidence:** Brooks Decl. Ex. 2 at 142:24-143:1 and 151:20-152:6; Ex. 3 at 113:16-114:7; Nelson Decl. ¶ 3. **T4K's Evidence:** See responses to SD's undisputed facts no. 84. |
| 115. | Mr. Pederson testified that he assumed that he told Mr. Rios to generally keep their discussion information confidential, or he would not have shared the formation. | Incomplete testimony, mischaracterizes testimony. Fed. R. Evid. 106, 403. Disputed: Pedersen asked Rios to keep the information confidential. **SD's Evidence:** Brooks Decl. Ex. 1 at 271:20-274:24. **T4K's Evidence:** Lawrence Decl. Ex. D (Pedersen Tr. 168:11-169:20; 177:13-15). |
| 116. | T4K claims that the parties entered into an | Disputed: The parties had telephone |

| | | | |
|---|---|---|---|
| | | agreement by way of emails and oral discussions. | conversations but the agreement itself is contained in the March 2009 email exchange.<br>**SD's Evidence:** DE 84 at ¶¶ 51-59.<br>**T4K's Evidence:** Lawrence Decl. Ex. E (SDI 001240-47). |
| | 117. | T4K's first claim for fraud is based on the following representations that Mr. Rios allegedly made during his negotiations with T4K: (1) that Sport Dimension was interested in partnering with T4K to distribute its snow bikes; (2) that Sport Dimension would distribute Plaintiff's snow bikes in the United States; and (3) that Sport Dimension would not market the snow bikes to certain retailers, including Costco U.S. and Costco Canada. | Undisputed. |
| | 118. | T4K's second claim for fraud is (1) that Sport Dimension was making efforts to market and sell T4K's snow bike to U.S. retailers; (2) that Sport Dimension had made efforts to sell T4K's snow bike to Sam's Club; (3) that Sam's Club was interested in conducting a 100 club test of the snow bike; (4) that there was no interest in T4K's products; and (5) that Sam's Club ultimately decided that it was uninterested. | Undisputed. |
| | 119. | www.alibaba.com is a website where | Lacks foundation, lack of personal |

34

| | | |
|---|---|---|
| | anyone can look up a product and its factory information. | knowledge, hearsay. Fed. R. Evid. 901, 602, 802.<br><br>Disputed:  T4K's factory information is not shown on this document. |
| 120. | As Mr. Pedersen acknowledged, the only products that the parties discussed were T4K's snow bikes, not Sport Dimension's snow bikes. | Incomplete testimony, mischaracterizes testimony. Fed. R. Evid. 106, 403.<br><br>Disputed:  Pedersen never would have talked to Rios had he known SD was contemplating a snow bike of its own.<br><br>**SD's Evidence**:  Brooks Decl. Ex. 1 at 103:15-105:6.<br><br>**T4K's Evidence**:  Pedersen Decl. ¶ 27. |

| | **ADDITIONAL MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 121. | Tech-4-Kids' snow bikes, also referred to as the Snow Moto, were the first of their kind in that they are sleds featuring three small skis on the bottom and are designed and modeled after full-sized motorized snowmobiles. | Pedersen Decl. ¶ 2. |
| 122. | The Snow Moto has an adjustable seat, | Pedersen Decl. ¶ 4. |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| | protective handle bars, a primarily decorative nose piece, suspension, braking system and licensed graphics. | |
| 123. | The Snow Moto was named the 2007 Hardline Licensed Item of the Year by the Licensing Industry Manufacturers Association. | Lawrence Decl. Ex. DD (T4KP001305-06); Pedersen Decl. ¶ 5. |
| 124. | The Snow Moto was a highly successful product for Tech-4-Kids, which was a small company when the product first launched in 2007. At that time, Tech-4-Kids had only a few employees and generated a small amount of revenue. | Pedersen Decl. ¶ 6. |
| 125. | In 2009, Tech-4-Kids first sold the Snow Moto to Costco U.S. as part of a test sale program that was extremely successful. | Lawrence Decl. Ex. D (Pedersen Tr. 52:18-53:7); Ex. L (Weenink Tr.137:16 -138:4); Ex. G (Smick Tr. 112:7-25); Pedersen Decl. ¶ 9. |
| 126. | The following year, in 2010, Costco U.S. originally purchased 30,000 Snow Moto units. Because it was on pace to sell out of its Snow Moto inventory, Costco U.S. subsequently ordered approximately 7,000 more Snow Moto units that same season. | Pedersen Decl. ¶ 9. |
| 127. | Early point-of-sales statistics in 2010 indicated that Costco U.S. would sell out of the Snow Moto even before reaching | Lawrence Decl. Ex. L (Weenink Tr. 154:5-12); Pedersen Decl. ¶ 9. |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | the peak sales period in December. | |
|---|---|---|---|
| 128. | In order to meet demand, Costco U.S. ordered additional units at the last minute, purchasing a total of approximately 37,000 units of the Polaris model in 2010. | Lawrence Decl. Ex. L (Weenink Tr. 154:1-12). |
| 129. | Stallion Sport Ltd. is a Hong Kong company owned by Joseph Lin's brother. | Lawrence Decl. Ex. A (Lin Tr. 64:14-22). |
| 130. | Prior to being introduced to Tech-4-Kids' Snow Moto, Sport Dimension never had a snow bike product in its lineup. | Lawrence Decl. Ex. C (Rios Tr. 39:9-23). |
| 131. | By 2009, Tech-4-Kids had already experienced substantial success in selling its snow bike products in Canada, due in part to its existing relationship with Costco Canada and Canadian Tire Corporation.  Tech-4-Kids also successfully sold its snow bikes to Wal-Mart U.S. and Canada. | Pedersen Decl.  ¶ 8. |
| 132. | On Friday February 27, 2009, Rios contacted Pedersen about entering into a possible business relationship. | Lawrence Decl. Ex. D (Pedersen Tr. 40:17-42:20). |
| 133. | At first, Pedersen was wary of SD's overture because of its reputation in the industry for predatory business practices and "knocking off" other companies' products. | Lawrence Decl. Ex. D (Pedersen Tr. 40:17-42:20). |
| 134. | When discussions began, Pedersen | Lawrence Ex. E (SDI 001240). |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | | |
|---|---|---|---|
| | | explained to Rios that Tech-4-Kids would only enter into a distribution agreement that exposed it to new U.S. retailers as opposed to retailers with whom Tech-4-Kids had a preexisting relationship. | |
| | 135. | A two-week email dialogue ensued, with the subject line "USA Distribution." | Lawrence Ex. E (SDI 001240-47). |
| | 136. | In his initial March 3, 2009 email, Rios stated to Pedersen that Sport Dimension "would hope that we could come to some agreement so that we could make sales calls this year before all commitments have been made." | Lawrence Ex. E (SDI 001247). |
| | 137. | In a subsequent March 4, 2009 email in the same chain, Rios stated to Pedersen that Sport Dimension "would like to offer all three of [Tech-4-Kids' snow bike] brands as it makes sense for your existing distribution and where it would make sense to us if we had to offer an exclusive." Rios also stated that Sport Dimension "would like to get started as soon as [it] can." | Lawrence Ex. E (SDI001246). |
| | 138. | In the same email, Rios stated that "I look forward to us being able to speak tomorrow and hopefully put an agreement together." Rios also stated "We reviewed | Lawrence Ex. E (SDI 001244). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | | |
|---|---|---|---|
| | | the cost sheet that you sent us and worked from Retail to a Cost or back to see if we could put some sort of deal in place or arrangement." | |
| | 139. | In a subsequent March 10, 2009 email, Rios again stated "I hope that we can put a deal together." | Lawrence Ex. E (SDI 001242). |
| | 140. | In a March 9 email, Pedersen wrote: "Assuming we get there [i.e., reach agreement], before the end of the week, we can arrange some samples to be sent to you." | Lawrence Decl. Ex. E (SDI 001244). |
| | 141. | In a March 9, 2009 email, Pedersen rejected Rios's previous proposal of $30 per unit and counter-proposed $31.50 for the X-Games Snow Moto and $33.25 for the Ski-Doo and Polaris brands. | Lawrence Decl. Ex. E (SDI 001243). |
| | 142. | On March 10, Rios accepted these prices. | Lawrence Decl. Ex. E (SDI 001243). |
| | 143. | However, in light of Rios's refusal to pay an advance, Pedersen proposed increased pricing of $33.50 for the X-Games brand and $35.50 for the Ski-Doo and Polaris models as well as a $3.00 fee for shipping samples. | Lawrence Decl. Ex. E (SDI 001241). |
| | 144. | Rios accepted the new pricing and shipping fee on March 17, 2009. | Lawrence Decl. Ex. E (SDI 001240). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| 145. | In response to Pedersen's expressed intention to exclude from the distribution deal any U.S. retailers with whom Tech-4-Kids already had a relationship, in his March 9 email, Pedersen identified as "off limits" to Sport Dimension the following retailers:  Costco, Dick's Sporting Goods, Wal-Mart, K-Mart, and B.J.'s Wholesale. | Lawrence Decl. Ex. E (SDI 001243). |
|---|---|---|
| 146. | On March 10, Rios confirmed this list of off limit accounts with the single variation of specifying only Costco Canada as opposed to Pedersen's generic reference to "Costco." | Lawrence Decl. Ex. E (SDI 001242). |
| 147. | Later that same day, Pedersen corrected Rios's attempt to include only Costco Canada. | Lawrence Decl. Ex. E (SDI 001242). |
| 148. | Pedersen stated that "your list of accounts is correct except as it stands now we will also handle Costco" (meaning Costco U.S.). | Lawrence Decl. Ex. E (SDI 001241). |
| 149. | In his March 9 email, Pedersen asked for a minimum purchase commitment of 3200 Snow Moto units. On March 10, Rios rejected the minimum purchase request but committed to "try and sell as much as we can." | Lawrence Decl. Ex. E (SDI 001243). |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT**

| | | |
|---|---|---|
| 150. | Multi-year distribution relationships are standard in the industry. | Lawrence Decl. Ex. G (Smick Tr. 19:1-21:23); Pedersen Decl. ¶ 24. |
| 151. | Manufacturers and wholesalers generally schedule their product pitches to retailers in December through March (sometimes going into May) for the next snow season. Winter products are typically shipped to retailers around August and the merchandise is generally shelved in September for the upcoming winter season. | Pedersen Decl. ¶ 25. |
| 152. | Pedersen also offered to make marketing information available to assist Sport Dimension in its distribution efforts.  Rios responded to the marketing information offer on March 10, stating: "Thanks and appreciated, any support to help us become experts in your category of products would be appreciated. In closing, we see this as a great opportunity to help get more exposure for your product in the market." | Lawrence Decl. Ex. E (SDI 001244); Pedersen Decl. ¶ 10. |
| 153. | Following a request by Rios for samples of the various Snow Moto models, on March 17, 2009 Rios wrote: "Brad, We are good to go. We accept your new higher prices listed below along with $3.00 service fee for shipping." | Lawrence Decl. Ex. E (SDI 001240). |

41

| | | |
|---|---|---|
| 154. | In the same March 17, 2009 email, Rios stated "I will update [sic] you as we progress." | Lawrence Decl. Ex. E (SDI 001240). |
| 155. | Pedersen responded to that March 17, 2009 email from Rios stating that he was "[g]lad to move forward." | Lawrence Decl. Ex. E (SDI 001240). |
| 156. | The pricing that the parties ultimately agreed upon is, to date, the lowest special wholesale pricing that Tech-4-Kids has offered to any distributor or retailer for the Snow Moto product. | Pedersen Decl. ¶ 13. |
| 157. | On March 27, 2009, Sport Dimension prepared a Sam's U.S. quote sheet with the pricing for the Ski-Doo brand Snow Moto. | Lawrence Decl. Ex. N (SDI 015731). |
| 158. | On April 2, 2009, Rios sent an email with a price quote for the Ski Doo Snow Moto to Sam's Club. | Lawrence Decl. Ex. I (SDI 015723). |
| 159. | In that email, Rios wrote: "Please see the quote sheet for the Ski-Doo snow bike . . . As a vendor we are always being tasked with bringing Sam's new exciting items, this is one of those." Rios also proposed that Sam's Club sell the product in its "top 100 snow clubs between Thanksgiving and Christmas." | Lawrence Decl. Ex. I (SDI 015724). |
| 160. | When Rios told Pedersen in July 2009 | Lawrence Decl. Ex. H |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT**

| | | | |
|---|---|---|---|
| | | that the Sam's Club sale had not gone through, he stated: "Sorry this did not work out better for both of us, this is a good item, and maybe with a better retail climate we will have better luck next year," thus confirming to Pedersen that the distribution agreement would continue into the 2010 sales season. | (T4KP000668); Lawrence Decl. Ex. C (Rios Tr. 269:20-270:19). |
| | 161. | In late March 2009, Tech-4-Kids' Director of Sales, Evert Weenink, learned that Todd Richards had approached B.J.'s Wholesale, one of the retailers on the "off limits" list and offered for sale one of Tech-4-Kids' Snow Motos. | Lawrence Decl. Ex. K (Richards Ex. 14) (T4KP000004-5). |
| | 162. | In an email string dated March 26, 2009, Pedersen informed Rios that Richards had approached an "off limits" retailer and Rios apologized for the confusion stating that "it was clearly an error, we apologize and will clarify with the buyer that this is your business." | Lawrence Decl. Ex. K (Richards Ex. 14) (T4KP000004-5). |
| | 163. | Richards subsequently came to understand that Rios had agreed not to approach certain retailers including B.J.'s | Lawrence Decl. Ex. J (Richards Tr. 104:12-21). |
| | 164. | At Rios's instruction, Richards went back to B.J.'s and indicated that he could not offer the product and, instead, the product | Lawrence Decl. Ex. J (Richards Tr. 106:12-24). |

43

| | | | |
|---|---|---|---|
| | | could be procured from Tech-4-Kids. | |
| | 165. | Sport Dimension had hoped to earn a 30 to 35 percent profit margin on its sales. | Lawrence Decl. Ex. E (SDI 001246); Lawrence Decl. Ex. J (Richards Tr. 142:13-17). |
| | 166. | Lin admitted that Sport Dimension could not have offered Tech-4-Kids' products to Sport Dimension's customers absent permission from Tech-4-Kids to do so. | Lawrence Decl. Ex. A (Lin Tr. 240:13-18; 244 16-22). |
| | 167. | Pedersen offered to make marketing information available to assist Sport Dimension in its distribution efforts. | Lawrence Decl. Ex. E (SDI 001244). |
| | 168. | Pedersen provided Rios and Sport Dimension with additional materials meant to help Sport Dimension and market and sell the Snow Motos. | Lawrence Decl. Ex. R (Pedersen Ex. 5) (SDI 007034-35); Lawrence Decl. Ex. S (Pedersen Ex. 3) (SDI 001203-4); Lawrence Decl. Ex. T (SDI 001186-92). |
| | 169. | Rios and Richards would have had no reason to offer Tech-4-Kids' product unless there were an agreement that obligated them to do so or provided them with guaranteed access to the product that they were selling. | Lawrence Decl. Ex. A (Lin Tr. 240:13-18; 244:16-22). |
| | 170. | After it entered into the distribution agreement with Sport Dimension, Tech-4-Kids substantially reduced its efforts to sell the Snow Moto to U.S. retailers because it believed that Sport Dimension | Pedersen Decl. ¶ 15. |

44

| | | |
|---|---|---|
| | was pursuing those opportunities. | |
| 171. | During 2009 and 2010, Tech-4-Kids only sold the Snow Moto to two additional U.S. retailers. | Pedersen Decl. ¶ 16. |
| 172. | Gary Smick, one of Tech-4-Kids' outside sales representatives, primarily for Costco U.S. received an email blast from Tech-4-Kids to several of its sales representatives indicating that it would be selling the Snow Moto through a single U.S. distributor. | Lawrence Decl. Ex. G (Smick Tr. 163:5-164:16). |
| 173. | Smick recalls being upset because he interpreted the email to mean that he would be replaced for the Costco U.S. sales efforts which he had been working on for several months. When Smick called Evert Weenink, Weenink reassured him that Costco U.S. was excluded from the distribution deal. | Lawrence Decl. Ex. G (Smick Tr. 163:5-164:16). |
| 174. | On April 15, 2009, Pedersen emailed Rios with licensing information from X-Games and stated: "Could be interesting for sharing with your Sams buyer. I know you are looking at Ski Doo but we could do a different version for Sams of Xgames." | Lawrence Decl. Ex. M (T4KP000615). |
| 175. | On May 5, 2009, Pedersen wrote to Rios: | Lawrence Decl. Ex. M |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| | "We are gearing up for production and I wanted to check in with you on the status of the program for year. Let me know how you are making out and when you intend to start placing orders for ship dates." Rios responded by indicating that Sport Dimension had some success in selling the Ski-Doo model to Sam's. | (T4KP000614). |
| 176. | On May 6, 2009, Pedersen asked Rios: "How are you making out at the other [accounts]?" Rios responded that "Price has been an issue" but asked Richards to provide a more complete update. Richards responded on May 8 by telling Pedersen that he had done "presentations" with "several" accounts who "all noted the same thing. There is not enough margin in the item and $99 is definitely the ceiling retail place. Most buyers commented that they liked the item." | Lawrence Decl. Ex. M (T4KP000615); Lawrence Decl. Ex. J (Richards Tr. 121:25, 127:1-7). |
| 177. | On July 10, 2009, Pedersen asked Rios about the status of the Sam's Club Test. Rios responded: "Sorry for the lack of communication, the response time from Sam's club has been very slow as well. They only confirmed last week that they will not be going forward with a test of the snow bike." | Lawrence Decl. Ex. H (Richards Ex. 16) (T4KP00667-68). |

46

| | | |
|---|---|---|
| 178. | Richards testified that under normal circumstances, when he is trying to sell an item to a retailer, he visits the potential customer in person and presents them with a picture or sample of the product. | Lawrence Decl. Ex. J (Richards Tr. 119:9-11, 15-16). |
| 179. | Richards admitted that he failed to make the same efforts when he attempted to sell the Snow Moto. Richards testified that he made a single call to a limited number of retailers with whom he had relationships, never conducted any follow-up, and even failed to present the buyers that he contacted with a picture of the product that he was selling, and made an effort that he, himself, admitted to be half-hearted. | Lawrence Decl. Ex. J (Richards Tr. 111:2-25, 113:18-24, 114:218). |
| 180. | Richards testified that he never even saw the sample Snow Motos sent by Tech-4-Kids. | Lawrence Decl. Ex. J (Richards Tr. 137:25, 138:8). |
| 181. | When Sport Dimension was selling its own competing product to retailers, it provided the retailers with detailed presentation materials. | Lawrence Decl. Ex. Y (SDI 006996-7003). |
| 182. | Rios offered the Snow Moto to only a single customer, Sam's Club, and priced the product at $47.00. | Lawrence Decl. Ex. N (Rios Ex. 50) (SDI 015731-33). |
| 183. | Richards admitted that Sport Dimension | Lawrence Decl. Ex. J (Richards Tr. |

47

| | | | |
|---|---|---|---|
| | | still could have made a profit if it had offered a price lower than $47.00. | 149:14-150:13). |
| | 184. | When Pedersen asked Rios for an update on sales, Rios stated that the retailers to whom Sport Dimension offered the product liked the product but felt "price was an issue." | Lawrence Decl. Ex. M (T4KP000613). |
| | 185. | In the end, Sport Dimension failed to sell a single Snow Moto to any of Sport Dimension's customers. | Pedersen Decl. ¶ 26. |
| | 186. | When Sport Dimension attempted to sell its own Yamaha product to Sam's Club, it offered the snow bike for the substantially lower price of $36.00. | Lawrence Decl. Ex. O (SDI 013449). |
| | 187. | At no time from March 2009 to December 2009 did Rios or anyone at Sport Dimension disclose to Tech-4-Kids that Sport Dimension was contemplating developing a competing product. | Pedersen Decl. ¶ 12. |
| | 188. | Had Tech-4-Kids known of Sport Dimension's duplicity, it never would have allowed Sport Dimension to pass itself off as Tech-4-Kids' distributor, much less provide it with confidential and commercially sensitive information. | Pedersen Decl. ¶ 27. |
| | 189. | In January 2010, less than nine months after the parties entered into the | Lawrence Decl. Ex. P (Rios Ex. 37) (SDI 001132). |

48

| | | |
|---|---|---|
| | distribution agreement and only five months after Rios told Pedersen that not a single retailer in the United States was interested in Tech-4-Kids' snow bikes, Sport Dimension had completed 90% of its development of a competing snow bike. | |
| 190. | In early 2010, Sport Dimension shipped samples to Costco Canada, but because it was unable to brand the product in time, it did not successfully sell the Yamaha snow bike to Costco U.S. until the 2011 season. | Lawrence Decl. Ex. P (Rios Ex. 37) (SDI 001132 – 35); Lawrence Decl. Ex. Q (SDI 001008). |
| 191. | Once it had a branded product for Costco, Costco stopped buying from Tech-4-Kids. | Pedersen Decl. ¶ 29-30. |
| 192. | In his March 9, 2009 email, Pedersen offered terms to Rios under specific headings which Pedersen intended to constitute the proposed terms of an agreement. | Lawrence Decl. Ex. D (Pedersen Tr. 150:15-23); Lawrence Decl. Ex. E (SDI 001243). |
| 193. | When Sport Dimension sold the Yamaha to Costco U.S. in early 2011, it did so at a price that would have earned Sport Dimension significantly less than a 35 percent profit margin. | Lawrence Decl. Ex. H (Richards Tr. 212:12-18). |
| 194. | Rios claimed that he and Lin made the decision to develop a competing snow | Lawrence Decl. Ex. C (Rios Tr. 39:11-13). |

49

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO**
**SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT**
**JUDGMENT**