| | | | |
|---|---|---|---|
| 1 2 3 | | bike in November 2009, only seven months after entering into the distribution agreement with Tech-4-Kids. | |
| 4 5 6 | 195. | Rios tried to sell Sport Dimension's competing snow bike product to Costco Canada. | Lawrence Ex. Z (Rios Ex. 45) (SDI 015735-43). |
| 7 8 9 | 196. | Tech-4-Kids lost U.S. sales opportunities in 2009 and 2010 because it relied on Sport Dimension to make those sales. | Pedersen Decl. ¶ 28. |
| 10 11 12 | 197. | Tech-4-Kids lost the Costco U.S. business because Costco was selling Sport Dimension's Yamaha snow bike instead. | Pedersen Decl. ¶ 29. |
| 13 14 15 16 17 | 198. | As a result of Sport Dimension's conduct, Tech-4-Kids sustained damage, including in the form of lost sales to U.S. retailers in 2009 and 2010 and lost sales to Costco U.S. in 2011. | Pedersen Decl. ¶ 30; Neches Decl. Ex. A. |
| 18 19 | 199. | The Snow Moto is patented under U.S. Patent No. US D647,427 S. | Lawrence Decl. Ex. B |
| 20 21 22 | 200. | Pedersen testified that T4K distribution deals are regularly entered into over email. | Lawrence Decl. Ex. D (Pedersen Tr. 112:13-15). |
| 23 24 25 26 27 | 201. | Rios also testified that SD's current agreement to distribute a safety water transmitter for another company is not memorialized in writing nor is there even an understanding regarding the duration | Lawrence Decl. Ex. C (Rios Tr. 68:4-71:24). |

|   |   |   |
|---|---|---|
|   | of the agreement. |   |
| 202. | After Richards went back to B.J.'s and indicated that he could not offer the product, SD did not try to sell any to any of the agreed "off limits" accounts, that is, until it came out with its own product less than a year later. | Lawrence Dec. Ex. BB (Responses to T4K's Interrogatory No. 17); Lawrence Decl. Ex. Z (SDI 015735-43). |
| 203. | Through 2009 and 2010, T4K almost exclusively marketed the Snow Moto to those retailers designated as T4K's actual or prospective customers in the Pedersen-Rios email. | Pedersen Decl. at ¶ 15. |
| 204. | Weenink testified that of all of the identified retailers in the U.S. who were potential customers of snow products, he focused on K-Mart, Wal-Mart, Costco and Dick's, the accounts that Pedersen had told Rios he was keeping in-house. | Lawrence Decl. Ex. L (Weenink Tr. 135:3; 136:5-7); Lawrence Decl. Ex. E (SDI 001243). |
| 205. | SD decided it could make more money selling a copycat product rather than distribute T4K's products, as it had promised to do. | Lawrence Decl. Ex. A (Lin Tr. 245:23-25; 246:1-3). |
| 206. | Pedersen provided Rios with proprietary information relating to the sale and marketing of the Snow Moto both during and after their contract negotiations. | Pedersen Decl. ¶ 18. |
| 207. | Pedersen provided Rios with T4K's cost | Lawrence Decl. Ex. E (SDI |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | |
|---|---|---|
| | for the Snow Moto, which was close to $30. | 001243); Pedersen Decl. ¶ 18(a). |
| 208. | Pedersen provided Rios with a list of specific retailers purchasing the Snow Moto or who were being targeted as potential customers. | Lawrence Decl. Ex. E (SDI 001245); Pedersen Decl. ¶ 18(b). |
| 209. | Pedersen provided Rios with special wholesale pricing of $33.50 to $35.50 which no other customer had received. | Lawrence Decl. Ex. E (SDI 001241); Pedersen Decl. ¶ 18(c). |
| 210. | Pedersen provided Rios with T4K's pricing strategy, i.e., persuading retailers that they can accept a 20% margin on the Snow Moto, as opposed to the usual 40-50% margin for sporting goods, because the Snow Moto was a higher price point product that would generate a higher return per square foot of retail space. | Lawrence Decl. Ex. E (SDI 001245); Pedersen Decl. ¶ 18(d). |
| 211. | Pedersen provided Rios with a sales pitch book reflecting a new Snow Moto product line with new features (all of which SD ultimately copied). | Lawrence Decl. Ex. T (SDI 001186-1192); Pedersen Decl. ¶ 18(e). |
| 212. | Pedersen provided Rios with confidential password-protected "point-of-sale," "sell-thru," and marketing information for Snow Moto sales at Wal-Mart U.S. and Canada containing metrics showing, among other things, the rate at which the | Pedersen Decl. ¶ 18(f). |

|   |      | | |
|---|------|---|---|
|   |      | Snow Moto was flying off the shelves – something that no one walking through the stores can determine. A person in the retail business would recognize the Snow Moto's sell thru rate as being extremely rare and successful. | |
|   | 213. | Given the sensitivity of this information, Pedersen asked Rios to keep it confidential. | Lawrence Decl. Ex. D (Pedersen Tr. 168:11-169:20; 177:13-15). |
|   | 214. | Rios and Lin testified that they regarded some of the above categories of information as being proprietary, that is, they would not want their competitors to have it. | Lawrence Decl. Ex. C (Rios Tr. 170:11-21); Lawrence Decl. Ex. A (Lin Tr. 222:8-35, 223:1-5). |
|   | 215. | Lin testified that before entering a category, he would want to know the anticipated profit margin, consumer interest and retailer interest, all of which he was able to obtain from Pedersen without conducting any market research. | Lawrence Decl. Ex. A Lin Tr. 86:12-90:17. |
|   | 216. | The confidential Wal-Mart point of sale information indicated to SD that the Snow Moto was achieving an almost unprecedented retail sales rate. | Lawrence Decl. Ex. P (183:2-184:21). |
|   | 217. | The Wal-Mart metrics included the following: "POS qty ytd is 8342 on Snow Moto X Racers (57% sell thru)," "Product | Lawrence Decl. Ex. R (SDI 007034-35). |

53

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT**

| | | | |
|---|---|---|---|
| | | must arrive to stores earlier in 2009!," "Snow Moto X sell best on an end cap or pallet promotion," "Snow Moto X needs to be in stores prior to Nov. 1, 2009 and expect 90% to be sold through by Dec. 24, 2009," "43% of stores sold greater than 50% of their total shipped inventory in less than one week," and "Avg. unit sales per store were 11.3 units/$903.88 (each pallet holds 12 units." SD would not have known this information because it was not selling snow bikes at this time. | |
| | 218. | Based on SD's access to T4K's cost and special wholesale pricing, SD would have been able to calculate the profit margin that T4K earned from Snow Moto sales. | Lawrence Decl. Ex. E (SDI 001240-47). |
| | 219. | SD manufactured a near identical version of T4K's Snow Moto and licensed it under the Yamaha brand. | Lawrence Decl. Ex. V (SDI 001012-13). |
| | 220. | When Pedersen asked Rios what other snow products were being offered by SD, Rios only mentioned foam and molded sleds and helmets. | Pedersen Decl. ¶ 12; Lawrence Decl. Ex. E (SDI 001246). |
| | 221. | Pedersen relied on Rios's representations by (a) providing proprietary information to SD to assist it in its sales efforts, which SD then used to enter the market with its | Pedersen Decl. ¶ 14. |

| | | |
|---|---|---|
| | own product, (b) disclosing confidential pricing and cost information to SD, (c) agreeing to permit SD to hold itself out as T4K's U.S. distributor, which allowed SD to go on a "fact finding mission" to determine customer interest; and (d) reducing T4K's sales efforts in the U.S. | |
| 222. | Rios testified that it could take up to 18 months to develop a product. | Lawrence Dec. Ex. C (Rios Tr. 51:19-52:10). |
| 223. | Lin testified that it generally takes longer to develop a three-dimensional product. | Lawrence Dec. Ex. A (Lin Tr. 80:14-81:7; 263:5-13). |
| 224. | Based on T4K's experience, it generally takes at least a year to design a product and set up the tooling to manufacture samples and it actually took T4K _____ to develop the Snow Moto. | Pedersen Decl. ¶ 23. |
| 225. | Alex Fung of Stallion, SD's Hong Kong agent and alter ego, sent a picture of T4K's Ski-Doo snow bike to Rios stating, "See attached picture of the Ski-doo snow bike that we want to use Yamaha's brand on this item." | Lawrence Decl. Ex. V (SDI 001012-13). |
| 226. | Even though Lin received this email, he did not instruct Fung not to copy T4K's snow bike. | Lawrence Decl. Ex. A (Lin Tr. 67:15; 267:12-15). |
| 227. | When presented with the "90% completed" document at his deposition, | Lawrence Decl. Ex. A (Lin Tr. 85:5-8). |

|     |                                                                                                                                                                                                                                                                                          |                                                                                   |
| --- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | --------------------------------------------------------------------------------- |
|     | Lin conveniently suggested that the product may have been a "stock" item from the factory.                                                                                                                                                                                               |                                                                                   |
| 228. | When asked why then was the product only 90% completed, Lin had no response.                                                                                                                                                                                                            | Lawrence Decl. Ex. A (Lin Tr. 263:21-264:11).                                     |
| 229. | Rios testified that Stallion in fact had designed the product and provided renderings to SD.                                                                                                                                                                                             | Lawrence Decl. Ex. C (Rios Tr. 41:17-25).                                         |
| 230. | The Moto X Recap document and cover email from Pedersen reflect Snow Moto sales history information for Walmart U.S. and Walmart Canada including (1) the "sell through rate") (sales success rate) for the X-Games snow bike; (2) future marketing strategies for selling the X-Games; and (3) future pricing. | Lawrence Decl. Ex. R (SDI 007034-35); Pedersen Decl. ¶ 18(f). |
| 231. | This document contains what is commonly known as "point of sale" or "POS" information which Pedersen described as the "extremely confidential . . . success rate of our product at retail."                                                                                              | Lawrence Decl. Ex. C Pedersen Tr. 183:12-15).                                     |
| 232. | This "POS" information is confidential because it would indicate to a would-be competitor whether an item was popular.                                                                                                                                                                   | Pedersen Decl. ¶ 20-21.                                                           |
| 233. | The "Quote Sheet" document contains shipping specifications, container                                                                                                                                                                                                                   | Lawrence Decl. Ex. CC (SDI 001235-39).                                            |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| # | Statement | Citation |
|---|---|---|
| | quantity information, and the name of the factory at which the Snow Moto was manufactured. | |
| 234. | Both Weenink and Smick testified that shipping information would be valuable to a competitor's determination of a vendor's underlying expenses such as shipping costs. | Lawrence Decl. Ex. L (Weenink Tr. 45:2-7); Lawrence Decl. Ex. G Smick Tr.95:21-96:20). |
| 235. | Such shipping information would not be voluntarily provided to a competitor. | Lawrence Decl. Ex. L (Weenink Tr. 45:2-7). |
| 236. | The fact that T4K may have provided the shipping information to its factory is irrelevant because T4K had a confidentiality agreement with its factory and, therefore, the Quote Sheet information would have remained protected. | Lawrence Decl. Ex. EE (T4KP001272-184). |
| 237. | | |
| 238. | The industry custom is that pricing and product information is understood to be confidential even without a formal confidentiality agreement. | Lawrence Decl. Ex. G (Smick Tr.21:24-22:4). |
| 239. | T4K employees are required to execute a "Confidential Disclosure Agreement" and an "Offer of Position" letter both of which require the employee to maintain the confidentiality of proprietary | Pedersen Decl. ¶ 22(a). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | | |
|---|---|---|---|
| 1 | | information. | |
| 2 | 240. | T4K's employment manual specifically requires that employees maintain the secrecy of all of T4K's products, sales and financial information. | Pedersen Decl. ¶ 22(b). |
| 3 | 241. | When T4K (or its affiliate) enters into a Manufacturing Agreement, the agreement contains express provisions requiring that the manufacturer protect T4K's broadly defined "Confidential Information." | Pedersen Decl. ¶ 22(c). |
| 4 | 242. | The T4K offices are accessible through a single door that can only be unlocked with a pass key and after the alarm has been disarmed with an employee's unique security code. An alarm monitors the premises during off hours. | Pedersen Decl. ¶ 22(d). |
| 5 | 243. | T4K's electronic files are maintained on secure file servers accessible only upon entry of an authorized unique login ID and password. | Pedersen Decl. ¶ 22(e). |
| 6 | 244. | Network folders accesses are granted based on the predefined network user group which is determined based on the job responsibilities. ERP user ID determines a user's level of access to be able to post entries and/or gather data from the system. | Pedersen Decl. ¶ 22(f). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | |
|---|---|---|
| 245. | T4K hard copy files containing proprietary information are generally maintained in locked desk drawers or file cabinets and are only accessible by an employee of T4K with authorization to access those files. | Pedersen Decl. ¶ 22(g). |
| 246. | Prior to sharing proprietary or potentially proprietary information with a third party, a T4K representative will admonish the third party recipient not to share such information with an unauthorized party or to make unauthorized use of such information, which includes using such information to compete with Tech-4-Kids. | Pedersen Decl. ¶ 22(h). |
| 247. | This includes the agreement between SpinMaster, a distributor, and Globe Dragon Technology Development, Ltd., an affiliate of Tech-4-Kids. | Lawrence Decl. Ex. GG (T4KP001946-60). |
| 248. | After unsuccessful attempts to steal T4K's business from Costco Canada, Richards dropped the pricing to Costco U.S. from $36.00 to $34.20, just below the $35.50 special wholesale pricing that T4K had offered to Sport Dimension – something that no one other than Sport Dimension knew about. | Lawrence Decl. Ex. V (SDI 001012-13). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | | |
|---|---|---|---|
| 1-3 | 249. | Richards admitted SD's plan to develop a competing product and sell it at a price lower than the Snow Moto. | Lawrence Dec. Ex. J (Richards Tr. 148:8-20). |
| 4-7 | 250. | SD's development of the Yamaha Snow Bike began prior to 2010 and SD began offering a competing snow bike in January 2010. | Lawrence Decl. Ex. Z (SDI 015735); Lawrence Decl. Ex. P (SDI 001132-35). |
| 8-11 | 251. | On April 16, 2009, Rios informed Pedersen that "[w]e are getting very close to a 100 club test with Ski-Doo" at Sam's Club. | Brooks Decl. Ex. 14. |
| 12-17 | 252. | There is no evidence that Sam's Club responded to Rios's April 2 email or any indication that it was seriously considering a test of the Snow Moto as Rios had represented to Pedersen over the course of several months. | Lawrence Decl. Ex. FF. |
| 18-19 | 253. | Sam's did not produce any such evidence in response to T4K's subpoena. | Lawrence Decl. Ex. FF. |
| 20-21 | 254. | In early 2011, SD offered the Yamaha to Costco Canada and Costco U.S. | Lawrence Decl. Ex. V. (SDI 001012-13). |
| 22-25 | 255. | During a meeting for the 2011 season, Costco U.S's head buyer, Jim Nelson, said that he was very happy with the 2010 Polaris sales. | Lawrence Decl. Ex. HH (T4KP-SMICK000001-02). |
| 26-27 | 256. | Gary Smick testified that under normal circumstances, Costco would repeat sell a | Lawrence Decl. Ex. G (Smick Tr. 144:21-145:6). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | |
|---|---|---|
| | | product that had a high level of success the preceding year. | |
| 257. | Costco Canada has sold the Polaris for six consecutive years given its high success rate. | Lawrence Decl. Ex. L (Weenink Tr. 1445:13-16). |
| 258. | T4K's expectation is demonstrated by the clear shock when they learned from Smick that they had lost the Costco U.S. business. | Lawrence Decl. Ex. HH (T4KP-SMICK000001-02). |
| 259. | Sport Dimension is owned by Joseph Lin. | Lawrence Decl. Ex. A (Lin Tr. 55:24-25). |
| 260. | During that initial call, Rios reassured Pedersen that SD was an honorable company that was genuinely interested in distributing T4K's Snow Motos. | Lawrence Decl. Ex. D (Pedersen Tr. 171:4-17). |
| 261. | Given Rios's reassurances and Pedersen's prior working relationship with SD's Vice President of Sales, Todd Richards, Pededrsen's concerns were put at ease. | Lawrence Decl. Ex. D (Pedersen Tr. 171:4-17). |
| 262. | Rios wrote on March 3 that he had seen T4K's bike at a Canadian retailer, Canadian Tire Corporation ("CTC"), and was interested in becoming T4K's U.S. distributor of the Snow Moto. | Lawrence Decl. Ex. E (SDI 001247). |
| 263. | In late March and the first week of April, SD began communicating with retailers regarding the Snow Moto, as Rios said | Lawrence Decl. Ex. I (SDI 015723). |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | | |
|---|---|---|---|
| | | they would once an agreement was reached. | |
| | 264. | Richards attempted, insincerely, to sell the Snow Moto to several retailers including B.J.'s Wholesale, Big 5 Sporting Goods, Sport Chalet, bass Pro, and the Sports Authority. | Lawrence Decl. Ex. J (Richards Tr. 111:2-25, 113:18-24, 114:218; 119:7-16). |
| | 265. | On Monday, March 3, 2009, Rios sent an email to Pedersen with the subject line "USA Distribution." | Lawrence Ex. E (SDI 001247). |
| | 266. | T4K would have continued pursuing opportunities with other U.S. retailers had it not entered into an agreement with SD. | Pedersen Decl. ¶ 17. |
| | 267. | Although T4K shipped samples to SD in late March, Richards did not see or use the samples even though Lin admitted that the samples were supposed to be used by Richards in Rios in their sales efforts with customers. | Lawrence Decl. Ex. A (Lin Tr. 244:16-19); Lawrence Decl. Ex. J (Richards Tr. 137:22-138:8). |
| | 268. | Pedersen would not have provided Rios with T4K's proprietary information but for his belief that SD was genuinely interested in distributing the Snow Moto. | Pedersen Decl. ¶ 19. |
| | 269. | Wal-Mart's computer program allows vendors to determine various metrics so they can track how well their products are doing, which products are selling or not | Pedersen Decl. ¶ 20. |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | | |
|---|---|---|---|
| | | selling, how they should market their products and how they should plan for future shipments. | |
| | 270. | While the presentation of T4K's future products was shown to Costco, both Pedersen and Rios testified that retailers do not share a vendor's information with other vendors. | Lawrence Decl. Ex. C (Rios Tr. 170:11-16); Lawrence Decl. Ex. D (Pedersen Tr. 309:20-310:3). |
| | 271. | Lin disputes that SD and T4K are competitors. | Lawrence Decl. Ex. A (Lin Tr. 227:11-22). |
| | 272. | The March email exchange between Rios and Perdersen reflects an understanding that certain proprietary product and marketing information would be provided for the specific purpose of selling T4K's products to U.S. retailers. | Lawrence Decl. Ex |
| | 273. | Nelson could not have known that the pricing submitted by SD was $1.30 below the special wholesale price of $35.50 given by Pedersen to Rios – a price that Pedersen had never offered to anyone else. | Lawrence Decl. Ex. Z (SDI 015735-43); Lawrence Decl. Ex. U (SDI 006971-94). |
| | 274. | The point of the distribution agreement, as both parties acknowledged at the time, was to enhance T4K's penetration into the U.S. market in exchange for sharing margin with SD. Therefore, T4K's | Pedersen Decl. ¶ 11. |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT

| # | Statement | Citation |
|---|---|---|
|  | pricing directly offered to retailers was higher than the special wholesale pricing given to SD. |  |
| 275. | SD had a product that was 90% complete in January 2010, had shipped samples to Costco Canada in early 2010 and was pursuing Yamaha for a license (and in the process telling Yamaha that its product will have all of the new features of T4K's products) in early 2010. | Brooks Decl. Ex. 10; Lawrence Decl. Ex. P (SDI 001132-35); Lawrence Dec. Ex. II (SDI 001052-57). |
| 276. | Rios's February 2010 presentation to Yamaha indicated that SD's product would also have "[f]ront flex suspension, . . . [m]etal snow brak, [i]nnovative seat and twin tip skis design [and] pro grip hand protectors." | Lawrence Dec. Ex. II (SDI 001052-57). |
| 277. | In his initial emails to Pedersen, Rios repeatedly indicated SD's interest in entering into a distribution agreement. | Lawrence Decl. Ex. E (SDI 001240-47). |
| 278. | Rios almost admitted that it was not interested in selling the Snow Moto when he stated that Richards was using the T4K snow bike to conduct market research. | Lawrence Dec. Ex. C (Rios Tr. 224:3-25). |
| 279. | Rios verified, under oath, SD's initial interrogatory response which stated the only customer SD approached regarding T4K's products was Sam's Club. | Lawrence Decl. Ex. W. |

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT JUDGMENT

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | 280. | The record demonstrates that T4K did not approach any of the customers who Rios said SD had relationships with and only sold a small number of snow bikes to two new U.S. retailers in 2010 – Shopco, a company SD had not approached and an online wholesaler. | Pedersen Decl. ¶ 16. |
| 8<br>9<br>10 | 281. | There is no evidence to support SD's contention that T4K approached "Big 5, Sport Chalet and other customers." | Lawrence Decl. Ex. L (Weenink Tr. 131:17-132:125). |
| 11<br>12<br>13<br>14 | 282. | Weenink testified that Exhibit 10 to his deposition was simply a wish list and he was focusing his sales efforts on Wal-Mart, K-Mart, B.J.'s, and Dick's | Lawrence Decl. Ex. L (Weenink Tr. 134:25-136:19). |
| 15<br>16<br>17<br>18<br>19<br>20 | 283. | Gary Smick, who has been selling to Costco for approximately thirty years, testified that under normal circumstances, Costco would re-purchase a product that had a high level of success the preceding year. | Lawrence Decl. Ex. G (Smick Tr. 144:21-145:6). |
| 21<br>22<br>23 | 284. | Costco ended up buying a virtually identical product to T4K's snow bike – only from SD at a lower price. | Lawrence Decl. Ex. Z (SDI 015735-43). |
| 24<br>25<br>26<br>27 | 285. | T4K's expectation of additional sales to Costco is demonstrated by (a) its 2011 forecast for Costco sales; and (b) the clear shock when it learned from Smick that it | Lawrence Decl. Ex. KK (SDI 01015); Lawrence Decl. Ex. HH T4KP-SMICK000001-02). |

28

PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

| | | |
|---|---|---|
| | | had lost the Costco U.S. business. | |
| 286. | Pedersen testified that the email chain itself functioned as the MOU between the parties because it contained all of the material terms discussed, including products, price, accounts, quantity, and marketing support. | Lawrence Decl. Ex. D (Pedersen Tr. at 151:13-154:2). |
| 287. | On March 26, Rios confirmed that T4K was "calling on Costco U.S.A." | Brooks Decl. Ex. 7 (SDI 001251). |
| 288. | When Rios inquired, Pedersen told him that the 2009 products would be CPISA certified and they were. | Pedersen Decl. ¶ 31. |
| 289. | It is undisputed that T4K remained ready and willing to extend the special wholesale pricing to SD. | Brooks Decl. Ex. 16. |
| 290. | The parties never negotiated exclusivity and it is not mentioned in the email discussions between the parties. | Lawrence Decl. Ex. E (SDI 001240-47). |
| 291. | Nelson states that one of the reasons he chose SD's snow bike over T4K's was its price. | Nelson Decl. ¶ 6. |
| 292. | T4K lost the bulk of its U.S. snow bike business. | Neches Decl. Ex A. |

66
PLAINTIFF'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT
JUDGMENT

DATED: May 13, 2013

GREENBERG TRAURIG, LLP

By: _____
Valerie W. Ho
Attorneys for Plaintiff and Counter-Defendant
Tech-4-Kids, Inc.

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, Suite 1900, Los Angeles, California 90067.

On May 14, 2013, I served the document described as **PLAINTIFF TECH-4-KIDS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO SPORT DIMENSION'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action addressed as follows:

Yuri Mikulka, Esq.
E-mail: ymikulka@sycr.com
Sarah S. Brooks, Esq.
E-mail: sbrooks@sycr.com
Stradling Yocca Carlson & Rauth
100 Wilshire Blvd, Suite 440
Santa Monica, CA 90401

☒ **(BY E-MAIL)**

On May 14, 2013, I transmitted the foregoing document(s) by E-mail to the parties at their respective e-mail addresses as indicated above. The document was served electronically and the transmission was reported complete and without error.

☐ **(BY PERSONAL SERVICE)**
I caused such envelope to be delivered by hand to the offices of the addressees as indicated above. Executed on May 14, 2013, at Los Angeles, California.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 14, 2013, at Los Angeles, California.

*Monica A. Solorzano*
Monica A. Solorzano