1   YURI MIKULKA, SBN 185926
    (ymikulka@sycr.com)
2   SARAH S. BROOKS, SBN 266292
    (sbrooks@sycr.com)
3   STRADLING YOCCA CARLSON &
    RAUTH
4   660 Newport Center Drive, Suite 1600
    Newport Beach, CA  92660-6422
5   Telephone:  (949) 725-4000
    Facsimile:  (949) 725-4100
6
7   Attorneys for Defendants and
    Counter-Claimants
8   SPORT DIMENSION, INC. and KURT
    RIOS

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12  TECH-4-KIDS, INC.                CASE NO. 2:12-cv-06769-PA-AJW

13          Plaintiff,               Honorable Percy Anderson

14      vs.                          **DEFENDANT'S SEPARATE
                                     STATEMENT AND OBJECTIONS
15  SPORT DIMENSION, INC. and        TO PLAINTIFF'S SEPARATE
    KURT RIOS,                       STATEMENT**
16
            Defendants.
17                                   Hearing Date: June 3, 2013
                                     Time: 1:30 p.m.
18                                   Courtroom:  15

19
    SPORT DIMENSION, INC.,           **Initial Complaint Filed**:
20                                   December 6, 2011
            Counter-Claimant,
21                                   **First Amended Complaint Filed**:
        vs.                          August 17, 2012
22
    TECH-4-KIDS, Inc.,               **Second Amended Complaint Filed**:
23                                   March 4, 2013
            Counter-Defendant.
24
                                     Trial: August 6, 2013
25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

                                     1
    SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT
    DOCSOC/1622712v2/102566-0001

| Plaintiff's Statement of Allegedly Undisputed Fact | Defendant's Position and Supporting Evidence |
|---|---|
| 1. Tech-4-Kids' snow bikes, also referred to as the Snow Moto, were the first of their kind in that they are sleds featuring three small skis on the bottom and are designed and modeled after full-sized motorized snowmobiles. | Defendant disputes that Tech-4-Kids'snow bikes were the first sleds featuring three small skis.<br><br>Plaintiff's evidence:  Declaration of Brad Pedersen ("Pedersen Decl.") ¶ 2.<br><br>Defendant's evidence:  Declaration of Sarah S. Brooks in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Brooks Decl.") Ex. 2 (deposition transcript of Evert Weenink ("Weenink Tr.")) at 75:16-25. |
| 2. The Snow Moto has an adjustable seat, protective handle bars, a primarily decorative nose piece, suspension, braking system and licensed graphics. | Defendant does not dispute this fact. |
| 3. The Snow Moto is licensed under three brands: Ski-Doo, Polaris, and X-Games, and was named the 2007 Hardline Licensed Item of | Defendant does not dispute this fact. |

2

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | | |
|---|---|---|
| | the Year by the Licensing Industry Manufacturers Association. | |
| 4. | The Snow Moto was a highly successful product for Tech-4-Kids, which was a small company when the product first launched in 2007. At that time, Tech-4-Kids had only a few employees and generated a small amount of revenue. | Defendant disputes that Tech-4-Kids existed in 2007.<br><br>Plaintiff's evidence:  Pedersen Decl. ¶ 4,5.<br><br>Defendant's evidence:  Brooks Decl. Ex. 1 (deposition transcript of Brad Pedersen ("Pedersen Tr.")) at 14:2-14. |
| 5. | In 2009, Tech-4-Kids first sold the Snow Moto to Costco U.S. as part of a test sale program that was extremely successful. | Defendant does not dispute this fact. |
| 6. | The following year, in 2010, Costco U.S. originally purchased 30,000 Snow Moto units. Because it was on pace to sell out of its Snow Moto inventory, Costco U.S. subsequently ordered approximately 7,000 more Snow Moto units that same season. | Defendant does not dispute this fact. |
| 7. | Early point-of-sales statistics in 2010 indicated that Costco U.S. would sell out of the Snow Moto even before reaching the peak | Defendant does not dispute this fact. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| sales period in December. | |
| 8.  In order to meet demand, Costco U.S. ordered additional units at the last minute, purchasing a total of approximately 37,000 units of the Polaris model in 2010. | Defendant does not dispute this fact. |
| 9.  Sport Dimension is owned by Joseph Lin. | Defendant does not dispute this fact. |
| 10.  Defendant Kurt Rios is president of Sport Dimension. | Defendant does not dispute this fact. |
| 11.  Stallion Sport Ltd. is a Hong Kong company owned by Joseph Lin's brother. | Defendant disputes that Joseph Lin's brother is the sole owner of Stallion Sport Ltd.<br><br>Plaintiff's evidence:  Lawrence Decl. Ex. D (Lin Tr. 64:14-22).<br><br>Brooks Decl. Ex. 28 (deposition transcript of Joseph Lin ("Lin Tr.")) at 64:17-65:9. |
| 12.  Prior to being introduced to Tech-4- Kids' Snow Moto, Sport Dimension never had a snow bike product in its lineup. | Defendant disputes this statement to the extent Tech-4-Kids mischaracterizes Sport Dimension's product lineup as previously not including snow products and snow sleds. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | Plaintiff's evidence: Lawrence Decl. Ex. E (Rios Tr. 39:9-23) <br><br> Defendant's evidence: Brooks Decl. Ex. 4 (deposition transcript of Kurt Rios ("Rios Tr.")) at 37:23-38:11. |
| 13. On or about March 3, 2009, Kurt Rios, on behalf of Sport Dimension, contacted Brad Pedersen, the President of Tech-4-Kids. | Defendant does not dispute this fact. |
| 14. Rios told Pedersen that he had seen some of Tech-4-Kids's snow bike models at Canadian retailer Canadian Tire Corporation ("CTC") and was interested in exploring the possibility of becoming Tech-4-Kids' U.S. distributor of the Snow Moto. | Defendant disputes that Rios only suggested the parties explore a distributor relationship. <br><br> Plaintiff's evidence: Lawrence Decl. Ex. E (Rios Tr. 215:7-12); Lawrence Decl. Ex. F. (Rios Ex. 51). <br><br> Defendant's evidence: Brooks Decl. Ex. 12. |
| 15. By 2009, Tech-4-Kids had already experienced substantial success in selling its snow bike products in Canada, due in part to its existing relationship with Costco Canada and Canadian Tire Corporation. | Defendant does not dispute this fact. |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

5

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | | |
|---|---|---|
| 1<br>2<br>3 | Tech-4-Kids also successfully sold its snow bikes to Wal-Mart U.S. and Canada. | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16 | 16. When discussions began, Pedersen explained to Rios that Tech-4-Kids would only enter into a distribution agreement that exposed it to new U.S. retailers as opposed to retailers with whom Tech-4-Kids had a preexisting relationship. | Defendant disputes this statement on the grounds that Mr. Pederson only listed certain accounts that were off limits, including "Dicks, Walmart, Kmart, and BJ's and Costco Canada" and did not mention that only "new U.S. retailers"<br><br>Plaintiff's evidence: Lawrence Decl. Ex. G. (SDI 001240).<br><br>Defendant's evidence: Brooks Decl. Ex. 9 at SDI 1224. |
| 17<br>18<br>19 | 17. A two-week email dialogue ensued, with the subject line "USA Distribution." | Defendant does not dispute this fact. |
| 20<br>21<br>22<br>23<br>24<br>25<br>26 | 18. In his initial March 3, 2009 email, Rios stated to Pedersen that Sport Dimension "would hope that we could come to some agreement so that we could make sales calls this year before all commitments have been made." | Defendant does not dispute this fact. |
| 27 | 19. In a subsequent March 4, 2009 | Defendant does not dispute this fact. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH
DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| email in the same chain, Rios stated to Pedersen that Sport Dimension "would like to offer all three of [Tech-4-Kids' snow bike] brands as it makes sense for your existing distribution and where it would make sense to us if we had to offer an exclusive." Rios also stated that Sport Dimension "would like to get started as soon as [it] can." | |
| 20.  In the same email, Rios stated that "I look forward to us being able to speak tomorrow and hopefully put an agreement together." Rios also stated "We reviewed the cost sheet that you sent us and worked from Retail to a Cost or back to see if we could put some sort of deal in place or arrangement." | Defendant does not dispute this fact. |
| 21.  In a subsequent March 10, 2009 email, Rios again stated "I hope that we can put a deal together." | Defendant does not dispute this fact. |
| 22.  In a March 9, 2009 email, Pedersen rejected Rios's previous proposal of $30 per unit and counter-proposed $31.50 for the | Defendant does not dispute this fact. |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

7

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | | |
|---|---|---|
| | X-Games Snow Moto and $33.25 for the Ski-Doo and Polaris brands. | |
| 23. | On March 10, Rios accepted these prices. | Defendant disputes this statement on the grounds that Tech-4-Kids mischaracterizes Rios's email.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001243).<br><br>Defendant's evidence: Lawrence Decl. Ex. G (SDI 001243). |
| 24. | However, in light of Rios's refusal to pay an advance, Pedersen proposed increased pricing of $33.50 for the X-Games brand and $35.50 for the Ski-Doo and Polaris models. | Defendant does not dispute this fact. |
| 25. | Rios accepted the new pricing on March 17, 2009. | Defendant disputes this statement on the grounds that Tech-4-Kids mischaracterize Rios's testimony Rios testified he accepted Mr. Pedersen's higher prices for the snow bike samples plus a $3 service fee for shipping the samples.<br>Defendant further disputes this fact on the grounds that Tech-4-Kids |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | mischaracterizes the Rios's March 10 email. The email states, "[w]e accept your new higher prices listed below along with $3.00 service fee for shipping samples." |
| | Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001240). |
| | Defendant's evidence; Brooks Decl. Ex. 4 (Rios Decl.) at 254:4-21; Ex. 29.. |
| 26. In response to Pedersen's expressed intention to exclude from the distribution deal any U.S. retailers with whom Tech-4-Kids already had a relationship, in his March 9 email, Pedersen identified as "off limits" to Sport Dimension the following retailers: Costco, Dick's Sporting Goods, Wal-Mart, K-Mart, and B.J.'s Wholesale. | Defendant disputes this statement on the grounds that Pedersen identified Costco Canada, not Costco generally. <br><br> Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001243). <br><br> Defendant's evidence:  Brooks Decl. Ex 9 at SDI 1222. |
| 27. On March 10, Rios confirmed this list of off limit accounts with the single variation of specifying only Costco Canada as opposed to Pedersen's generic reference to | Defendant disputes this statement on the grounds that Pedersen specified Costco Canada as opposed to Costco generally. |

9

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| "Costco." | Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001241).<br><br>Defendant's evidence:   Brooks Decl. Ex 9 at SDI 1223-24. |
| 28.  Later that same day, Pedersen corrected Rios's attempt to include only Costco Canada. | Defendant disputes this statement on the grounds that as late as March 26, 2009, Mr. Pedersen wrote, "with regards to Costco I will revert back."<br><br>Defendant further disputes this fact on the grounds that Mr. Pedersen referred only to "Costco" without further specification.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001241).<br><br>Defendant's evidence:  Brooks Decl. Ex. 12. |
| 29.  Pedersen stated that "your list of accounts is correct except as it stands now we will also handle Costco" (meaning Costco U.S.). | Defendant disputes this statement because Tech-4-Kids mischaracterizes Mr. Pedersen's response. He did not say that he meant Costco U.S., instead referring only to "Costco" without further specification. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001241).<br><br>Defendant's evidence: Same as Plaintiff's. |
| 30. In his March 9 email, Pedersen asked for a minimum purchase commitment of 3200 Snow Moto units. On March 10, Rios rejected the minimum purchase request but committed to "try and sell as much as we can." | Defendant objects to the use of the term "committed" as Mr. Rios did not say he was committing.<br><br>Plaintiff evidence: Lawrence Decl. Ex. G. (SDI 001243).<br><br>Defendant's evidence: Same as Plaintiff's. |
| 31. Multi-year distribution relationships are standard in the industry. | Defendant disputes this fact on the basis that no witness explicitly testified that multi-year distribution relationships are standard in the industry.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. C (Smick Tr. at 19:1-21:23); Pedersen Decl. ¶8.<br><br>Defendant's evidence: Same as Plaintiff's. |
| 32. Manufacturers and wholesalers | Defendant disputes this statement on |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| generally schedule their product pitches to retailers in December through March (sometimes going into May) for the next snow season. Winter products are typically shipped to retailers around August and the merchandise is generally shelved in September for the upcoming winter season. | the grounds that Mr. Weenink testified that most retailers make their decisions between December through January.<br><br>Pedersen Decl. Ex. 9.<br><br>Brooks Decl. Ex. 2 (Weenink Tr.) at 143: 9-14. |
| 33. Pedersen also offered to make marketing information available to assist Sport Dimension in its distribution efforts. Rios responded to the marketing information offer on March 10, stating: "Thanks and appreciated, any support to help us become experts in your category of products would be appreciated. In closing, we see this as a great opportunity to help get more exposure for your product in the market." | Defendant disputes this statement to the extent it misrepresents and mischaracterizes Mr. Pedersen's offer and his reason(s) for making said offer. Mr. Pedersen offered to "make available our marketing manager to assist with sales data."<br><br>Plaintiff's evidence: Lawrence Decl. Ex. G. (SDI 001244).<br><br>Defendant's evidence: Same as Plaintiff's. |
| 34. Following a request by Rios for samples of the various Snow Moto models, on March 17, 2009 Rios | Defendant disputes this statement on the grounds that Tech-4-Kids misquotes and wholly misrepresents |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | | |
|---|---|---|
| | wrote: "Brad, We are good to go. We accept your new higher prices listed below along with $3.00 service fee for shipping." | Rios's March 17, 2009 email. Mr. Rios wrote, "Brad, We are good to go. We accept your new higher prices listed below along with $3.00 service fee for shipping *samples*." (emphasis added).<br><br>Plaintiff's evidence: Lawrence Decl. Ex. G. (SDI 001240).<br><br>Defendant's evidence: Same as Plaintiff's. |
| 35. | In the same March 17, 2009 email, Rios stated "I will update [sic] you as we progress." | Defendant does not dispute this fact. |
| 36. | Pedersen responded to that March 17, 2009 email from Rios stating that he was "[g]lad to move forward." | Defendant does not dispute this fact. |
| 37. | The pricing that the parties ultimately agreed upon is, to date, the lowest special wholesale pricing that Tech-4-Kids has offered to any distributor or retailer for the Snow Moto product. | Defendant disputes this statement to the extent it claims Plaintiff and Sport Dimension came to an agreement.<br><br>Plaintiff's evidence: Pedersen Decl. ¶ 10.<br><br>Defendant's evidence: Brooks Decl. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | Ex. 9. |
| 38. On March 27, 2009, Sport Dimension prepared a Sam's U.S. quote sheet with the pricing for the Ski-Doo brand Snow Moto. | Defendant does not dispute this fact. |
| 39. Todd Richards, Vice President of Sales for Sport Dimension, testified that he attempted to sell Tech-4- Kids' products to several retailers, including B.J.'s Wholesale, Big 5 Sporting Goods, Sports Chalet, and Bass Pro. | Defendant disputes that Richards testified that he attempted to sell the products, as Richards actually stated that he "would have been touching base with the buyer, inquiring if they might have interest in this particular product." <br><br> Plaintiff's evidence: Lawrence Decl. Ex. I (Richards Tr. 108:21-109:17); Lawrence Decl. Ex. J (Sport Dimension's response to Tech-4-Kids' Interrogatory No. 17.) <br><br> Defendant's evidence: Brooks Decl. Ex 5 (deposition transcript of Todd Richards ("Richards Tr.")) 110:12-17. |
| 40. On April 2, 2009, Rios sent an email with a price quote for the Ski Doo Snow Moto to Sam's Club. | Defendant does not dispute this fact. |
| 41. In that email, Rios wrote: "Please see the quote sheet for the Ski-Doo | Defendant does not dispute this fact. |

14

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | |
|---|---|
| snow bike . . . As a vendor we are always being tasked with bringing Sam's new exciting items, this is one of those." Rios also proposed that Sam's Club sell the product in its "top 100 snow clubs between Thanksgiving and Christmas." | |
| 42.  When Rios told Pedersen in July 2009 that the Sam's Club sale had not gone through, he stated he hoped to "have better luck next year.". | Defendant disputes this statement on the grounds that Rios said: "Sorry this did not work out better for both of us, this is a good item, and maybe with a better retail climate we will have better luck next year."<br><br>Plaintiff's evidence: Lawrence Decl. Ex. H (T4KP000668); Lawrence Decl. Ex. E (Rios Tr. 269:20-25, 270:1-19).<br><br>Defendant's evidence: Same as Plaintiff's. |
| 43.  In late March 2009, Tech-4-Kids' Director of Sales, Evert Weenink, learned that Todd Richards had approached B.J.'s Wholesale, one of the retailers on the "off limits" list and offered for sale one of Tech-4-Kids' Snow Motos. | Defendant objects to Tech-4-Kids' use of the term "approached" because it is vague and ambiguous as used in this statement.<br><br>Furthermore, Defendant disputes that Richards offered to sell a Snow Motos |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | to B.J.'s Wholesale because Richards actual testimony was that he "would have been touching base with the buyer, inquiring if they might have interest in this particular product." Lawrence Decl. Ex. O (Richards Ex. 14) (T4KP000004-5). Brooks Decl. Ex. 5 (Richards Tr.) 110:12-17. |
| 44. In an email string dated March 26, 2009, Pedersen informed Rios that Richards had approached an "off limits" retailer and Rios apologized for the confusion stating that "it was clearly an error, we apologize and will clarify with the buyer that this is your business." | Defendant objects to Tech-4-Kids' use of the term "approached" because it is vague and ambiguous as used in this statement. |
| 45. Richards subsequently came to understand that Rios had agreed not to approach certain retailers including B.J.'s | Defendant disputes this statement to the extent it mischaracterizes Mr. Richards's testimony. Furthermore, Defendant objects to Tech-4-Kids' use of the term "approach" as vague and ambiguous. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | Plaintiff's evidence: Lawrence Decl. Ex. I (Richards Tr. 104:12-21) <br><br> Defendant's evidence:  Same as Plaintiff's. |
| 46.  At Rios's instruction, Richards went back to B.J.'s and indicated that he could not offer the product and, instead, the product could be procured from Tech-4-Kids. | Defendant does not dispute this fact. |
| 47.  Sport Dimension had hoped to earn a 30 to 35 percent profit margin on its sales. | Defendant disputes this statement to the extent it mischaracterizes Richards's testimony and Rios's March 4, 2009 email. <br><br> Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001246); Lawrence Decl. Ex. I (Richards tr. 142:13-17). <br><br> Defendant's evidence: Same as Plaintiff's. |
| 48. | [Left blank by Plaintiff] |
| 49.  Lin admitted that Sport Dimension could not have offered Tech-4-Kids' products to Sport Dimension's customers absent | Defendant disputes this statement to the extent it misrepresents and mischaracterizes Lin's testimony.  In addition to explaining the steps taken |

17

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | |
|---|---|
| permission from Tech-4-Kids to do so. | before parties can work with each other, Lin testified that "'[p]ermission' is very broad. I don't know what kind of permission," and repeatedly asked for a definition the term.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. D (Lin Tr. 240:13-18).<br><br>Defendant's evidence:  Brooks Decl. Ex. 28 (Lin Tr.) at 240:13-241:20; 243:23-244:14. |
| 50.  Pedersen offered to make marketing information available to assist Sport Dimension in its distribution efforts. | Defendant disputes this statement to the extent it misrepresents and mischaracterizes Mr. Pedersen's offer and his reason(s) for making said offer. Mr. Pedersen offered to "make available our marketing manager to assist with sales data."<br><br>Plaintiff's evidence: Lawrence Decl. Ex. G (SDI 001244).<br><br>Defendant's evidence: Same as Plaintiff's. |
| 51.  Pedersen provided Rios and Sport Dimension with additional | Defendant objects to Tech-4-Kids' characterization of this fact because the |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA<br>CARLSON & RAUTH<br>LAWYERS<br>NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| materials meant to help Sport Dimension and market and sell the Snow Motos. | evidence does not make clear that the materials provided were "meant to help" Sport Dimension market and sell Snow Motos.<br><br>Plaintiff's evidence: Lawrence Decl. Ex P (Pedersen Ex. 5) (SDI 007034-35); Lawrence Decl. Ex. Q (Pedersen Ex. 3) (SDI 001203-4); Lawrence Decl. Ex. R (SDI 001186-92).<br><br>Defendant's evidence: Same as Plaintiff's |
| 52. Rios and Richards would have had no reason to offer Tech-4-Kids' product unless there were an agreement that obligated them to do so or provided them with guaranteed access to the product that they were selling. | Defendant objects to Tech-4-Kids' use of the term "offer" as vague and ambiguous. Both Richards and Rios testified that they were testing market interest – not offering Tech-4-Kids' product for sale.<br><br>Additionally, Defendant disputes this statement because both Rios and Richards provide the reason for contacting businesses regarding Tech-4-Kids' product – to gauge market interest. Furthermore, Lin testified that "generally, at the beginning, we would have to see if there is a market for this |

19

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | product…" <br><br> Plaintiff's evidence: Lawrence Decl. Ex. D (Lin Tr. 240:4-25). <br><br> Defendant's evidence: Brooks Decl Ex, 4. (Rios Tr). 224:9-25; Ex. 5 (Richards Tr.) 110:8-17; 111:20-112:3; Ex. 28 (Lin Tr.) 240:19-20. |
| 53.  After it entered into the distribution agreement with Sport Dimension, Tech-4-Kids substantially reduced its efforts to sell the Snow Moto to U.S. retailers because it believed that Sport Dimension was pursuing those opportunities. | Defendant disputes this statement because Sport Dimension and Tech-4-Kids did not enter into a distribution agreement. <br><br> Defendant further disputes this statement because the facts show Tech-4-Kids actually increased their U.S. customer base, adding at least Costco U.S. <br><br> Plaintiff's evidence: Pedersen Decl. ¶ 11. <br><br> Defendant's evidence: Brooks Decl. Ex. 1 (Pedersen Decl.) at 55:11-57:158; 78:21-79:14; Ex. 2 (Weenink Tr.) at 129:12-137:19; Ex. 3 (deposition transcript of Gary Smick ("Smick |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

DOCSOC/1622712v2/102566-0001

| | | |
|---|---|---|
| | | Tr.")) at 75:16- 76:10; 112:3-16; Ex. 4 (Rios Tr.) 224:9-25; Ex. 28 (Richards Tr.) 110:8-17; 111:20-112:3; Ex. 29. |
| 54. | During 2009 and 2010, Tech-4-Kids only quoted pricing for the Snow Moto to two additional U.S. retailers. | Defendant does not dispute this fact. |
| 55. | Gary Smick, one of Tech-4-Kids' outside sales representatives, primarily for Costco U.S. received an email blast from Tech-4-Kids to several of its sales representatives indicating that it would be selling the Snow Moto through a single U.S. distributor. | Defendant disputes this statement to the extent it mischaracterizes Mr. Smick's testimony.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. C (Smick Tr. 163:5-164:16).<br><br>Defendant's evidence:  Same as Plaintiff's. |
| 56. | Smick recalls being upset because he interpreted the email to mean that he would be replaced for the Costco U.S. sales efforts which he had been working on for several months. When Smick called Evert Weenink, Weenink reassured him that Costco U.S. was excluded from the distribution deal. | Defendant disputes this fact because Mr. Smick testified that "we had been working so hard for the Costco business" without specifying a timeframe.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. C (Smick Tr. 163:5-164:16).<br><br>Defendant's evidence:  Same as Plaintiff's. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| 57. On April 15, 2009, Pedersen emailed Rios with licensing information from X-Games and stated: "Could be interesting for sharing with your Sams buyer. I know you are looking at Ski Doo but we could do a different version for Sams of Xgames." | Defendant does not dispute this fact. |
| 58. On May 5, 2009, Pedersen wrote to Rios: "We are gearing up for production and I wanted to check in with you on the status of the program for year. Let me know how you are making out and when you intend to start placing orders for ship dates." Rios responded by indicating that Sport Dimension had some success in selling the Ski-Doo model to Sam's. | Defendant disputes this statement because Tech-4-Kids misrepresents and mischaracterizes Rios's response. Rios responded that he was waiting on Sam's response with respect to Sam's interest in including the Ski-Doo model in a 100 club test.<br><br>Plaintiff's: Lawrence Decl. Ex. M (T4KP000614).<br><br>Defendant's evidence:  Same as Plaintiff's. |
| 59. On May 6, 2009, Pedersen asked Rios: "How are you making out at the other [accounts]?" Rios responded that "Price has been an issue" but asked Richards to provide a more complete update. | Defendant does not dispute this fact. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| Richards responded on May 8 by telling Pedersen that he had done "presentations" with "several" accounts who "all noted the same thing. There is not enough margin in the item and $99 is definitely the ceiling retail place. Most buyers commented that they liked the item." | |
| 60. On July 10, 2009, Pedersen asked Rios about the status of the Sam's Club Test. Rios responded: "Sorry for the lack of communication, the response time from Sam's club has been very slow as well. They only confirmed last week that they will not be going forward with a test of the snow bike." | Defendant does not dispute this fact. |
| 61. Richards testified that under normal circumstances, when he is trying to sell an item to a retailer, he visits the potential customer in person and presents them with a picture or sample of the product. | Defendant does not dispute this fact. |
| 62. Richards admitted that he failed to make the same efforts when he attempted to sell the Snow Moto. | Defendant objects on the grounds that Richards did not state that his efforts were "half-hearted," nor did he testify |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| Richards testified that he made a single call to a limited number of retailers with whom he had relationships, never conducted any follow-up, and even failed to present the buyers that he contacted with a picture of the product that he was selling, and made an effort that he, himself, admitted to be half-hearted. | that he "failed" to do anything.<br><br>Plaintiff's evidence:<br>Lawrence Decl. Ex. I (Richards Tr. 111:2-25, 113:18-24, 114:218).<br><br>Defendant's evidence:  Same as Plaintiff's. |
| 63.  Richards testified that he never even saw the sample Snow Motos sent by Tech-4-Kids. | Defendant disputes this statement to the extentTech-4-Kids mischaracterizes Richards's testimony.<br><br>Richards did not testify that he never even saw the sample Snow Motos sent by Tech-4-Kids.  Rather, Richards testified that, in March 2009, he was unaware of Sport Dimension obtaining possession of samples of Tech-4-Kids' snow bikes and that he did not recall ever seeing a Tech-4-Kids snow bike at Sport Dimension's offices.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. I (Richards Tr. 137:25, 138:8).<br><br>Defendant's evidence: Brooks Decl. Ex |

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | 5 (Richards Tr.) 137:25-138:8. |
| 64. When Sport Dimension was selling its own competing product to retailers, it provided the retailers with detailed presentation materials. | Defendant disputes this fact on the grounds that there is no evidence that Sport Dimension always provides retailers with detailed presentation materials.  The fact that Sport Dimension sometimes provided such materials does not mean it always does so.<br><br>Plaintiff's evidence:<br>Lawrence Decl. Ex. Y (SDI 006996-7003).<br><br>Defendant's evidence:  Brooks Decl. Ex. 5 (Richards Tr.) at 119:9-16. |
| 65. Rios offered the Snow Moto to only a single customer, Sam's Club, and priced the product at $47.00. | Defendant disputes this fact on the grounds that representatives for Sport Dimension testified that they called multiple retailers regarding T4K's snow bikes.<br><br>Plaintiff's evidence:<br>Lawrence Decl. Ex. L (Rios Ex. 50) (SDI0015731-33).<br><br>Defendant's evidence:  Brooks Decl. |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | Ex. 5 (Richards Tr.) at 111:2-114:8. |
| 66. Richards admitted that Sport Dimension still could have made a profit if it had offered a price lower than $47.00. | Defendant disputes this fact on the grounds that Richards never testified that Sport Dimension could have made a profit if it offered a price lower than $47. Instead, in response to a hypothetical question using figures provided by T4K's counsel, Richards testified that it was "possible" that Sport Dimension could have made a profit if it offered the $47 price. |
| | Plaintiff's evidence: Lawrence Decl. Ex. I (Richards Tr. 188:10-19). |
| | Defendant's evidence: Same as Plaintiff's. |
| 67. When Pedersen asked Rios for an update on sales, Rios stated that the retailers to whom Sport Dimension offered the product liked the product but felt "price was an issue." | Defendant does not dispute this fact. |
| 68. In the end, Sport Dimension failed to sell a single Snow Moto to any of Sport Dimension's customers. | Defendant disputes this fact on the grounds that it mischaracterizes the evidence as Sport Dimension was not |

26

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | | |
|---|---|---|
| 1 | | obligated to sell Snow Motos. |
| 2 | | |
| 3 | | Plaintiff's evidence: |
| 4 | | Pedersen Decl. ¶ 13. |
| 5 | | |
| 6 | | Defendant's evidence:  Brooks Decl |
| 7 | | Ex. 1 (Pedersen Tr.) at 151:24-152:2. |
| 8 | 69.  When Sport Dimension attempted | Defendant disputes this fact on the |
| 9 | to sell its own Yamaha product to | grounds that it mischaracterizes the |
| 10 | Sam's Club, it offered the snow | evidence. |
| 11 | bike for the substantially lower | |
| 12 | price of $36.00. | Plaintiff's evidence: |
| 13 | | Lawrence Decl. Ex. V (SDI 013449). |
| 14 | | |
| 15 | | Defendant's evidence:  Same as |
| 16 | | Plaintiff's. |
| 17 | 70.  At no time from March 2009 to | Defendant disputes this fact on the |
| 18 | December 2009 did Rios or | grounds that Sport Dimension was not |
| 19 | anyone at Sport Dimension | contemplating developing a competing |
| 20 | disclose to Tech-4-Kids that Sport | product during the time the parties |
| 21 | Dimension was contemplating | were having discussions. |
| 22 | developing a competing product. | |
| 23 | | Plaintiff's evidence:  Pedersen Decl. ¶ |
| 24 | | 14. |
| 25 | | |
| 26 | | Defendant's evidence: Docket Entry |
| 27 | | ("DE" 61, Rios Decl., ¶ 12. |
| 28 | | |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| 71. Had Tech-4-Kids known of Sport Dimension's duplicity, it never would have allowed Sport Dimension to pass itself off as Tech-4-Kids' distributor, much less provide it with confidential and commercially sensitive information. | Defendant objects to this statement on the grounds that it mischaracterizes the evidence.  Defendant objects to the term "duplicity." Defendant also objects on the grounds that Sport Dimension was not T4K's distributor. Further, Defendant objects on the grounds that T4K did not provide confidential information.<br><br>Plaintiff's evidence: Pedersen Decl. ¶ 15.<br><br>Defendant's evidence:  Brooks Decl. Ex 1 (Pedersen Tr.) at 333:12-16, Ex. 2 (Weenink Tr.) at 20: 10-18; Ex. 3 (Smick Tr.) at 32:14-18. DE 61, Rios Decl., ¶ 11. |
| 72. In January 2010, less than nine months after the parties entered into the distribution agreement and only five months after Rios told Pedersen that not a single retailer in the United States was interested in Tech-4-Kids' snow bikes, Sport Dimension had completed 90% of its development of a competing snow bike. | Defendant disputes this statement on the grounds that the parties never entered into a distribution agreement. Defendant also objects on the grounds that Defendant never claims to have spoken to every retailer in the U.S.<br><br>Plaintiff's evidence: Lawrence Decl. Ex. S (Rios Ex. 37) (SDI 001132). |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| | Defendant's evidence:  Same as Plaintiff's.  DE 61, Rios Decl., ¶ 11. |
| 73.  In early 2010, Sport Dimension shipped samples to Costco Canada, but because it was unable to brand the product in time, it did not successfully sell the Yamaha snow bike to Costco U.S. until the 2011 season. | Defendant disputes this statement on the grounds that T4K makes unsupported assumptions regarding Sport Dimension ability to sell an un-branded snow bike product in 2010.

Plaintiff's evidence:
Lawrence Decl. Ex. S (Rios Ex. 37) (SDI001132 -35); Lawrence Decl. Ex. AA (SDI 001008).

Defendant's evidence:  Same as Plaintiff's. |
| 74.  Once it had a branded product for Costco, Costco stopped buying from Tech-4-Kids. | Defendant objects to this statement on the grounds that it mischaracterizes the evidence as it improperly assumes that Costco stopped buying T4K's snow bikes because Defendant provided a snow bike.

Plaintiff's evidence:  Pedersen Decl. ¶ 17.

Defendant's evidence:  DE 116-2, |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | | |
|---|---|---|
| 1 | | Nelson Decl. ¶¶ 3-9. |
| 2 | 75. In his March 9, 2009 email, Pedersen offered terms to Rios under specific headings which Pedersen intended to constitute the proposed terms of an agreement. | Defendant disputes this statement on the grounds that the intent of Pedersen is not an undisputed fact. |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | Plaintiff's evidence: |
| 7 | | Lawrence Decl. Ex. A (Pedersen Tr. 150:15-23); Lawrence Decl. Ex. G (SDI001243). |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | Defendant's evidence: Same as Plaintiffs. |
| 12 | | |
| 13 | 76. When Sport Dimension sold the Yamaha to Costco U.S. in early 2011, it did so at a price that would have earned Sport Dimension significantly less than a 35 percent profit margin. | Defendant disputes the characterization of this fact on the grounds that Richards testified that, while generally the minimum margin requirement for products is 30%, Sport Dimension's minimum margin requirement for Costco is 20%. |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | Plaintiff's evidence: |
| 22 | | Lawrence Decl. Ex. I (Richards Tr.212:12-18). |
| 23 | | |
| 24 | | |
| 25 | | Defendant's evidence: Brooks Decl. |
| 26 | | Ex. 5 (Richards Tr.) at 142:9-17 |
| 27 | 77. Rios claimed that he and Lin made | Defendant disputes this fact on the |
| 28 | | |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| the decision to develop a competing snow bike in November 2009, only seven months after entering into the distribution agreement with Tech-4¬Kids. | grounds that the parties never entered into a distribution agreement.<br><br>Plaintiff's evidence:<br>Lawrence Decl. Ex. E (Rios Tr. 39:11-13)<br>Defendant's evidence:  DE 61, Rios Decl., ¶ 11. |
| 78. Rios tried to sell Sport Dimension's competing snow bike product to Costco Canada. | Defendant does not dispute this fact. |
| 79. Sport Dimension began pursuing Yamaha for a license in February 2010. | Defendant does not dispute this fact. |
| 80. Tech-4-Kids lost U.S. sales opportunities in 2009 and 2010 because it relied on Sport Dimension to make those sales. | Defendant disputes that T4K relied on Sport Dimension to make sales on its behalf, as T4K attempted to sell its snow bikes in the U.S. only months after the parties last communications in July of 2009.  On the same grounds, Defendant disputes that T4K lost sales opportunities in the U.S. due to T4K's reliance on Sport Dimension.<br><br>Plaintiff's evidence:  Pedersen Decl. ¶ 16. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | Defendant's evidence: Brooks Decl. Ex. 17; see also Plaintiff's ¶54 above. |
|---|---|
| 81. Tech-4-Kids lost the Costco U.S. business because Costco was selling Sport Dimension's Yamaha snow bike instead. | Defendant's dispute this statement on the grounds that the evidence shows that the buyer for Costco U.S. chose not to purchase T4K's snow bike for a variety of reasons.<br><br>Plaintiff's evidence: Pedersen Decl. ¶ 17.<br><br>Defendant's evidence: DE 116-2, Nelson Decl. ¶ 6. |
| 82. As a result of Sport Dimension's conduct, Tech-4-Kids sustained damage, including in the form of lost sales to U.S. retailers in 2009 and 2010 and lost sales to Costco U.S. in 2011. | Defendant disputes that Plaintiff sustained any damages on the grounds that Plaintiff's snow bike sales have increased.<br><br>Plaintiff's evidence: Pedersen Decl. at ¶18.<br><br>Defendant's evidence: Brooks Decl. Ex. 2, Weenink Tr. P. 164:18-168:11. |

**Defendant's Additional Material Facts**

| Undisputed Material Fact | Supporting Evidence |
|---|---|
| 83. Tech-4-Kids, Inc. ("T4K" or "Plaintiff") filed the initial | Docket Entry ("DE") 1. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | | |
|---|---|---|
| 1 2 3 4 5 6 7 8 9 | complaint in this action on December 6, 2011, in the District of Maryland, asserting claims of patent infringement and misappropriation of confidential business information against Sport Dimension and its customer Costco Wholesale Corp. ("Costco"). | |
| 10 11 12 13 14 15 16 17 18 19 20 21 22 | 84. On August 17, 2012, T4K transferred this case to the Central District of California and filed the First Amended Complaint ("FAC") which dropped the claim for patent infringement and claims against Costco, and asserted for the first time common law claims of fraud and interference with prospective economic advantage, as well as misappropriation of trade secrets. | DE 29. |
| 23 24 25 26 27 | 85. On March 4, 2013, more than a year after filing its initial complaint, T4K's Second Amended Complaint ("SAC") was entered in this action. | DE 84. |

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

33

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | |
|---|---|
| 86. Through the SAC, T4K added four entirely new claims and the President of Sport Dimension, Kurt Rios, in his individual capacity. | DE 84 at ¶¶ 51-72. Declaration of Sarah Brooks In Support Of Defendant's Opposition to Plaintiff's Motion For Summary Judgment ("Brooks Decl.") ¶ 7, Ex. 6. |
| 87. The SAC added an allegation that a contract existed between Sport Dimension and T4K, and that Sport Dimension breached that contract. | DE 84 at ¶¶ 73-81. |
| 88. The SAC also added claims for breach of the implied covenant of good faith and fair dealing and promissory estoppel and added a second claim for fraud. | DE 84 at ¶¶ 60-72; 82-88; and 89-96; |
| 89. Sport Dimension has been in business for 16 years, and is located in Carson, California. | DE 61 ("Rios Decl.") ¶ 2. |
| 90. Sport Dimension's products include Body Glove™ wetsuits, Body Glove™ body boards, Body Glove personal floatation devices, Snow Slider, Yamaha™ Snow bike, and Sea-doo™ sea scooters. | Rios Decl. ¶ 3. |
| 91. Sport Dimension began selling snow-related products including | Rios Decl. ¶ 4. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| snow sliders in 2002. | |
| 92. Sport Dimension has relationships with numerous retailers through which its products are sold, including Costco USA, Sam's Club, The Sport Authority, and Dick Sporting's Goods. | Rios Decl. ¶ 5. |
| 93. Sport Dimensions relationships with the retailers listed above existed prior to Sport Dimension's initial contact with Plaintiff. | Rios Decl. ¶ 5. |
| 94. T4K is a Canadian company that has been in business for 5 years. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 14:2-14. |
| 95. In early 2009, T4K sold snow bikes in various retail stores in Canada and the United States. | Brooks Decl. Ex. 2 (Weenink Tr.) at 77:11-18; 101: 23-25; 120: 21-23. |
| 96. The President of T4K is Brad Pedersen. | DE 84 at ¶ 23 |
| 97. T4K was established in 2009 after Sport Dimension started selling snow products. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 14:2-14. |
| 98. T4K is a Canadian company that designs, manufacturers, and sells toys and other products for children. | DE 84 at ¶19. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| 99. The product at issue is a snow bike product for children, which is similar to snow sleds but have three skis. | Brooks Decl. Ex. 2 (Weenink Tr.) at 67:9-68:10. |
| 100. The Yamaha snow bike was intentionally designed to look different than T4K's snow bikes. | Rios Decl. ¶ 13. |
| 101. The Yamaha snow bike is covered by U.S. Patent No. D662010 | Rios Decl. ¶ 13. |
| 102. The parties explored the possibility of entering into a distributing agreement during March to July 2009. Most of these conversations took place by email and some by phone. The parties however do not recall what contract terms were proposed on the phone. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 271:20-274:24; Ex. 4 (Rios Tr.) at 241:18-21. |
| 103. Since T4K's discussion with Sport Dimension, T4K's snow bike business in the U.S. has increased. Sales went from $2,130,626 in 2009 to $3,535,068 in 2011, and $4,275,187 in 2012. | Brooks Decl. Ex. 5. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| 104.    T4K and Sport Dimension are competitors. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 37:14-24. |
| 105.    In 2007 or 2008, T4K began selling a product for children called a snow bike. | Brooks Decl. Ex. 2 (Weenink Tr.) at 75: 9-14; 76:21-77:18. |
| 106.    T4K sells three different versions of its snow bike – the X-Games, Ski-doo and Polaris. | DE 84 at ¶20. |
| 107.    Both the X-Games and Ski-doo snow bikes were on sale in 2007 or 2008 prior to discussions with Sport Dimension. | Brooks Decl. Ex 2 (Weenink Tr.) at 76:21 -77:18. |
| 108.    Around March 3, 2009, Rios contacted Plaintiff's President, Brad Pedersen ("Pederson") and the parties began exploring a potential distributor relationship whereby Sport Dimension would consider serving as Plaintiff's U.S. Distributor for Plaintiff's snow bike product. | DE 84 at ¶ 23. Brooks Decl. Ex. 8. Rios Decl. ¶ 8. |
| 109.    Mr. Rios proposed several different ideas of ways the companies could work together, including distributing T4K's | Brooks Decl. Ex. 8. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| product in the U.S., or obtaining a sub-license or buying directly from T4K at a pre-determined price. | |
| 110.       On March 4, 2009, Mr. Pedersen replied to Mr. Rios' email and stated that while T4K had a "strong position in Canada," the U.S. had been "challenging." | Brooks Decl. Ex. 8. |
| 111.       On March 9, 2009, Mr. Pedersen replied suggesting several terms, including a minimum commitment whereby Sport Dimension would commit to a $100,000 advance that would be deducted from any orders that Sport Dimension would make or in other words a minimum purchase commitment of about 3200 pieces of the sled. | Brooks Decl. Ex. 9. at 1224. |
| 112.       Mr. Pedersen also stated that certain accounts are "off limits" but stated that he needed to check with his sales director regarding Costco. | Brooks Decl. Ex. 9. at 1224. |
| 113.       Mr. Pedersen stated that | Brooks Decl. Ex. 10 at 1210. |

38

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | |
|---|---|
| T4K was interested Sam's Club. Mr. Pedersen also says "if we can agree to these points, I will have 1 [sic] conversation with my chair to confirm the above and if he is in agreement, then I would draft up a simple MOU to sign. | |
| 114.  Mr. Rios did not accept this proposal and on March 10, 2009 stated that with respect to the $100,000 minimum commitment "this may be a sticking point as we cannot agree to this."  Mr. Rios also stated "we will try to sell as much as we can." | Brooks Decl. Ex. 9. at 1224. |
| 115.  On March 16, 2009 Mr. Rios replies to Mr. Pedersen's proposal by asking whether Sport Dimension can also obtain samples of the Polaris and Ski-doo snow bike and what are the differences between these models. | Brooks Decl. Ex. 10. |
| 116.  On March 17, 2009 Mr. Rios emailed Mr. Pedersen and | Brooks Decl. Ex. 10. |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

39

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | |
|---|---|
| stated that "we are good to go." and states that an assistant will contact Mr. Pedersen regarding a credit card for the snow bike samples. | |
| 117.    Mr. Rios believed that he was accepting Mr. Pedersen's price on the snow bike samples. | Brooks Decl. Ex. 4 (Rios Tr.) at 254:4-21. |
| 118.    On March 18, 2009 Mr. Pedersen sent an email to Mr. Rios informing him that T4K does not have enough samples of the Ski-doo snow bike and are going to Canadian Tire to purchase samples. | Brooks Decl. Ex. 10. |
| 119.    On March 26, 2009 Mr. Rios sent an email to Mr. Pedersen asking for clarification on whether T4K is calling on Costco USA. | Brooks Decl. Ex. 11. |
| 120.    On March 26, 2009 Mr. Pedersen responded to this email stating that "in regards to Costco I will revert back." | Brooks Decl. Ex. 12. |
| 121.    Mr. Rios replied and asked Mr. Pedersen to let him know as soon as he could about | Brooks Decl. Ex. 13. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| Costco USA.  [59 | |
| 122.      On March 26, 2009 Mr. Pedersen sends an email to Mr. Rios asking for Sport Dimension's corporate information so he can complete a memorandum of understanding ("MOU"). | Brooks Decl. Ex. 1 (Pedersen Tr.) at 150:4-14; Ex. 11. |
| 123.      Mr. Pedersen never completed an MOU or sent Mr. Rios a MOU. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 151:24-152:2. |
| 124.      In April, 2009 Mr. Rios sent an email to Roger Stakley, the buyer at Sam's Club in the U.S. regarding T4K's Ski-doo snow bike. | Brooks Decl. Ex. 14. |
| 125.      On April 16, 2009 Mr. Rios emailed Mr. Pedersen stating that they are getting close to a 100 club test with the T4K Ski-doo snow bike in Sam's Club. | Brooks Decl. Ex. 15. |
| 126.      Mr. Rios also asked Todd Richards, Sport Dimension's VP of sales contact various potential customers in the U.S. regarding T4K's snow bikes including Big | Brooks Decl. Ex. 5 at (Richards Tr.) at 108:1-109:17; Ex. 15. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| 5, Academy Sport, and others. | |
| 127.     Mr. Rios responded that the price of the snow bike was an issue with potential customers. | Brooks Decl. Ex. 16. |
| 128.     On July 10, 2009 Mr. Pedersen sent an email to Mr. Rios stating that because of the lack of communication he assumes that nothing is happening. | Brooks Decl. Ex. 15. |
| 129.     Having not heard from Sport Dimension, Mr. Pedersen assumed that Sport Dimension was not interested in pursuing the business. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 289:21-290:6. |
| 130.     The parties never discussed or came to an agreement regarding the time frame of any potential agreement. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 123:19-124:3. |
| 131.     Nor did the parties discuss or some to an agreement regarding termination of the potential agreement or sublicensing. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 136:9-12. |
| 132.     In addition, a minimum purchase quantity of 3,200 | Brooks Decl. Ex. 1 (Pedersen Tr.) at 140:9-141:11. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| pieces was a key term of the potential agreement that was not agreed to by Mr. Rios. | |
| 133.    In the Fall 2009, T4K sold under 1000 units of its Ski-doo snow bike to Costco U.S. as a "test." | Brooks Decl. Ex. 1 (Pedersen Tr.) at 55:11-57:15; Ex. 2 (Weenink Tr.) at 137:2-22; Ex. 3 (Smick Tr.) at 75:16-76:10; 112:3-13. |
| 134.    Subsequently, Costco U.S. purchased T4K's Polaris snow bike for the 2010/2011 snow season. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 78:21-79:14; Ex. 2 (Weenink Tr.) at 137:23-138:6; Ex. 3 (Smick Tr.) at 112:9-16. |
| 135.    In February, 2010, T4K began marketing its snow products, including its snow bikes to U.S. customers, including Big 5, Sports Chalet and others. | Brooks Decl. Ex. 17. |
| 136.    Around April 21, 2010, T4K submitted a quote to Blain's Supply, Inc. for its X-Games snow bike. | Brooks Decl. Ex. 18. |
| 137.    Blain is also a Sport Dimension customer and purchased a snow bike from Sport Dimension in 2012. | Brooks Decl. Ex 19. |
| 138.    On March 9, 2011, T4K submitted a quote to Academy | Brooks Decl. Ex. 20. |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

43

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | |
|---|---|
| Sport for its X-Games snow bike. | |
| 139.     Academy is an account that Sport Dimension had previously called on in regarding T4K's snow bike. | Brooks Decl. Ex. 21. |
| 140.     T4K has also sold its snow bike to Costco Canada for six years in a row. | Brooks Decl. Ex. 2 (Weenink Tr.) at 144:4-7. |
| 141.     After T4K and Sport Dimension had ceased their discussions, Sport Dimension began discussions with Yamaha Corporation ("Yamaha") to design and develop its own snow bikes. | Rios Decl, ¶ 12. |
| 142.     In 2011, Sport Dimension offered its snow bikes ("the Yamaha Snow Bike") which were designed in cooperation with Yamaha. | Rios Decl, ¶ 12. |
| 143.     The parties did not execute a memorandum of understanding because they never agreed on key terms. | Rios Decl. ¶ 11. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| 144.    T4K's promissory estoppel claim is based on the same email exchange that is the basis for Plaintiff's contract claim. | DE 84 at ¶¶82-88. |
| 145.    T4K claims that the parties entered into an agreement by way of emails and oral discussions. | DE 84 at ¶¶ 51-59. |
| 146. T4K "took a run" at selling foam sleds to Costco when it knew that Sport Dimension was already supplying Costco with foam sleds. | Brooks Decl. Ex. 3 (Smick Tr.) at 135:12-136:9; Ex. 22. |
| 147. Weenink testified that he saw similar snow bikes for sale in Europe. | Brooks Decl. Ex. 2 (Weenink Tr.) at 75:15-25. |
| 148. The parties never expressly discussed whether Sport Dimension was permitted to sell its own competing snow bike, or snow bikes sold by parties other than T4K. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 279:1-281:25. |
| 149. Mr. Rios wrote, "[s]orry this did not work out better for both of us, this is a good item, and maybe with a better retail climate we will have better luck next year." | Brooks Decl. Ex. 23. |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

45

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

| | |
|---|---|
| 150. Following the parties July 2009 email exchange, the parties did not communicate until this lawsuit was filed in December of 2012. | Brooks Decl. Ex. 1 (Pedersen Tr.) at 288:2-17.) |
| 151. Sport Dimension has never sold its Yamaha snow bike in Costco Canada. | Brooks Decl. Ex. 4 (Rios. Tr.) at 173:23-174:4. |
| 152. In early 2010, Sport Dimension began designing its own bike that it could sell at a better price point, | Brooks Decl. Ex. 1 (Richards Tr.) at 145:21-148:7. |
| 153. For months, Sport Dimension tried to find a contact at Yamaha to discuss a potential licensing agreement. | Brooks Decl. Exs. 24, 25. |
| 154. Around February of 2011, Sport Dimension signed a "deal memo" with Yamaha to design and develop its own snow bike. | Brooks Decl. Ex. 26. |
| 155. T4K asked for of limit accounts so that Sport Dimension would not try to sell T4K snow bikes to retailers who were already selling T4K snow bikes, as "[t]he value add for [T4K] is getting better penetration into the US market beyond what we have been able to achieve." | Brooks Decl. Ex. 27. |

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DOCSOC/1622712v2/102566-0001

| | |
|---|---|
| 156.    T4K seeks damages for breach of contract based on performance through 2015. | Brooks Decl. Ex. 7. |
| 157.    Representatives for Sport Dimension attempted to gauge market interest to determine whether a relationship with T4K was feasible. | Brooks Decl. Ex, 4. (Rios Tr.) at 224:9-25; Ex. 5 (Richards Tr.) at 110:8-17; 111:20-112:3; Ex. 28 (Lin Tr.) at 240:19-20. |
| 158.    Rios testified that neither he nor Mr. Pedersen proposed terms regarding sublicensing and that there was no discussion regarding sublicensing. | Brooks Decl. Ex. 30 (Rios. Tr.) at 197:19-198:6. |

DATED:  May 13, 2013            STRADLING YOCCA CARLSON & RAUTH


                               By:  /s/Sarah S. Brooks
                                    YURI MIKULKA
                                    SARAH S. BROOKS
                                    Attorneys for Defendants and
                                    Counter-Claimants SPORT
                                    DIMENSION, INC. and KURT
                                    RIOS

SEPARATE STATEMENT AND OBJECTIONS TO SEPARATE STATEMENT
DOCSOC/1622712v2/102566-0001

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH